1  Tatyana Evgenievna Drevaleva

2  1099 Fillmore St., Apt. 5N, San Francisco, CA, 94115

3  Cell 628-688-6167, tdrevaleva@gmail.com

4  Plaintiff in Pro Per

RECEIVED

2022 MAR 28 P 4: 37

CLERK, US DISTRICT COURT
NO. DIST. OF CA.

F I L E D

MAR 28 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



5          THE UNITED STATES DISTRICT COURT

6      FOR THE NORTHERN DISTRUCT OF CALIFORNIA

7                                          C22-01984

SK

8  Tatyana Evgenievna. Drevaleva          )   Complaint for Damages,
                                          )
9          *Plaintiff - Petitioner*        )   1) Deprivation me of the Protection by
                                          )      of the Eighth, the Thirteenth, and the
10              vs.                         )      Fourteenth Amendments (both the
                                          )      Substantive and the Procedural Due
11  1) Ms. Doris Ng in her both official and )      Process Clauses) to the U.S.
12      individual capacities as an Attorney of )      Constitution, 42 U.S.C. § 1983;
        the California Department of Industrial )
13      Relations                          )   2) Deprivation of my Civil Rights
14  2) The California Department of Industrial )      Because I am Russian, 42 U.S.C. §
        Relations (the DIR)                )      1981;
15  3) The California Department of Industrial )
16      Relations, the Division of Labor   )   3) Civil Conspiracy that was Aimed to
        Standards Enforcement (the DLSE)   )      Deprive me of the Protection of the
17  4) Ms. Catherine Daly in her both official )      U.S. Constitution and Federal Laws,
18      and individual capacities as an     )      42 U.S.C. § 1985;
        Investigator of the California     )
19      Department of Industrial Relations (the )   4) Fraud, Penal C. § 484; Civ. C. § 1572
        DIR), the Division of Labor Standards )
20      Enforcement (the DLSE)             )   5) Harassment, C.C.P. § 527.6
21  5) Mr. Bobit Santos in his both official and )   6) The Intentional Infliction of Emotional
        individual capacities as an Investigator )      Distress,
22      of the California Department of     )
        Industrial Relations (the DIR), the )   7) The Intentional Interference with a
23      Division of Labor Standards        )      Prospective Economic Advantage,
        Enforcement (the DLSE)             )
24  6) Ms. Joan Healy as a Supervisor of the )   8) Loss of Consortium
25      California Department of Industrial )   9) Violations of the Racketeer
        Relations (the DIR), the Division of )      Influenced and Corrupt Organizations
26      Labor Standards Enforcement (the   )      Act ("RICO"), 18 U.S.C. § 1962.
        DLSE)                              )
27  7) Mr. Eric Rood as am Assistant Chief of )
28      the California Department of Industrial )
        Relations (the DIR), the Division of )

Complaint for Damages.

Labor Standards Enforcement (the
DLSE)

Defendants.

Demand for a Jury Trial.

1. Comes now Plaintiff Tatyana Evgenievna Drevaleva and submits a Complaint for Damages against the following Defendants:

1) Ms. Doris Ng in her official and individual capacities as an Attorney of the California Department of Industrial Relations

2) The California Department of Industrial Relations

3) The California Department of Industrial Relations, the Division of Labor Standards Enforcement (the DLSE)

4) Ms. Catherine Daly in her both official and individual capacities as an Investigator of the California Department of Industrial Relations (the DIR), the Division of Labor Standards Enforcement (the DLSE)

5) Mr. Bobit Santos in his both official and individual capacities as an Investigator of the California Department of Industrial Relations (the DIR), the Division of Labor Standards Enforcement (the DLSE)

6) Ms. Joan Healy as a Supervisor of the California Department of Industrial Relations (the DIR), the Division of Labor Standards Enforcement (the DLSE)

7) Mr. Eric Rood as a Assistant Chief of the California Department of Industrial Relations (the DIR), the Division of Labor Standards Enforcement (the DLSE)

Complaint for Damages.

2. **Original Jurisdiction.** The U.S. District Court for the Northern District of California has a Federal question jurisdiction over my Complaint because multiple Federal statutes are involved.

3. **Supplemental Jurisdiction**. Because the U.S. District Court has an original jurisdiction over my Petition, the District Court also has Supplemental Jurisdiction over my State of California claims pursuant to 28 U.S. Code § 1367. Supplemental jurisdiction.

4. **Venue** is appropriate in this Court because the Alameda Health System and the Department of Industrial Relations are located at the Alameda County.

5. Administrative remedies are not required, see the California Labor Code Section 98.7, "(g) In the enforcement of this section, there is no requirement that an individual exhaust administrative remedies or procedures.

*(Amended by Stats. 2020, Ch. 344, Sec. 1. (AB 1947) Effective January 1, 2021.)*"

Because my underlying lawsuit No. 3:16-cv-07414-LB involved the California Labor Code Section 98.7, and because Attorney Ms. Doris Ng criminally conspired with the California Department of Industrial Relations, the Division of Labor Standards Enforcement, and with Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood, and because Attorney Ms. Ng criminally prevented me from obtaining relief pursuant to Labor Code Section 98.7, I am not required to undergo the administrative remedies before filing this current lawsuit.

6. Plaintiff Tatyana Drevaleva is a former Part Time employee (a Monitor or a Telemetry Technician) of the Alameda Health System, a claimant at the California Department of Industrial Relations, the Division if Labor Standards Enforcement, and a Plaintiff in the lawsuit No. 3:16-cv-07414-LB *Drevaleva v. 1) Alameda Health System, 2) Department of Industrial Relations.*

7. **Related case** is No. 3:22-cv-01585-JCS *Drevaleva v. 1) Alameda Health System, 2) The California Department of Industrial Relations (the DIR.)*

8. For the purpose of this pleading, I will cite the Record in case No. 3:16-cv-07414-LB *Drevaleva v. 1) Alameda Health System and 2) Department of Industrial Relations.*

Complaint for Damages.

**Statement of Facts.**

9. On December 29, 2016, I filed an Original Complaint No. 3:16-cv-07414-LB *Drevaleva v. 1) Alameda Health System and 2) Department of Industrial Relations* at the U.S. District Court for the Northern District of California. I consented to the jurisdiction of Magistrate Judge Ms. Laurel Beeler. Together with my Original Complaint No. 3:16-cv-07414-LB, I filed an Application to Proceed *in forma pauperis* that Ms. Beeler granted.

10. Please, read my Original December 29, 2016 Complaint (**ER 07414, Vol. 1, pages 3-11**),

"I, Tatyana Drevaleva, am filing a lawsuit against both Alameda Health System and Department of Industrial Relations, the Retaliation Unit.

<u>Why I am filing this lawsuit.</u>

I was hired as a Monitor Technician by Alameda Health System. My starting day was April 1st, 2013. My job was to observe cardiac monitors. In the offer letter, I was hired for 8-hour shifts on a 0,8 FTE (part-time benefit eligible) status with applicable shift differentials such as 11% for evenings, 15.5% for nights & 5% for weekends (please, see enclosed Attachment 1 – Offer Letter).

When I was hired, I signed paper in Human resources that I agree to be represented by the Union. However, after my employment started, I was informed that my position of a Monitor Technician was not represented by the Union. All my questions about it remained unanswered. The managers of Step Down Unit where I worked refused to give me any explanation. They told me that the paper with signature was destroyed, so I couldn't obtain a copy of that paper. Therefore, I can't attach this document to my lawsuit.

After the initial orientation at Alameda Health System for a few weeks and working for 8 (eight) hour shifts, I was informed by the management that only 12 (twelve) hour shifts were available for Monitor Technicians. I was scheduled to work for three 12 hour shifts per week which is 36 (thirty six) hours per week. According to the policy of Alameda Health System, working for 36 hours a week is considered a full time employment with getting retirement and benefits such as retirement, vacation, educational leave, holiday and suck leave. I worked for 36

hours per week for over three months but I was still considered a part time employee, and I was not getting my retirement and the benefits listed above. Also, I was not getting promised shift differentials such as 11% for evenings, 15.5% for nights & 5% for weekends according to written policies of Alameda Health System.

While performing my duties as a Monitor Technician, I was entitled for breaks. According to written policies of Alameda Health System, I was entitled for three (3) fifteen (15) minute paid breaks and one (1) thirty (30) minute unpaid meal break. Moreover, because I worked with cardiac monitors constantly observing video display screens, I was entitled to 10(ten) minute breaks every hour. In reality, I got only 30 minute unpaid lunch break and 30 minute paid breaks when I worked with Charge Nurses Beverly, Kim and Vera. When I worked with Charge Nurse Nidia, I got one 30 minute unpaid lunch break and three 15 minute paid breaks. However, no one Charge Nurse gave me 10 minute breaks every hour according to written policies of Alameda Health System.

I approached Manager of Step Down Unit Mr. Verrilien Clerve and asked him verbally about these issues. I asked Mr. Clerve to update my status to a status of a full-time employee because I was working full time. Mr. Clerve listened to me but never solved these issues. In August 2013, I approached new Director of Step Down Unit Mr. Gilbert Harding and I asked him verbally about the same issues. Mr. Harding promised to think about it. However, I was still considered as a part-time employee, and I was not getting shift differentials.

On September 5th, 2013, I sent a letter to Mr. Harding where I listed all these questions and asked him to answer them and upgrade my status to the status of a full-time employee (see Attachment 2. Please, also see Attachment 2/1 – printouts of selected pages of Alameda County Medical Center, Human Resources, Policy and Procedure Manual and Memorandum of Understanding between SEIU Local 1021 – General Chapter and the Alameda County Medical Center, January 1, 2013 to march 31, 2014).

Two days later, on September 7th, 2013, I was fired in twenty minutes after the beginning of my shift (please, see Attachment 3 – Termination Letter). In the Termination Letter, Mr. Harding said that my employment had been terminated due to discrepancies between acceptable

Complaint for Damages.

1  employment standards and those I exhibited during my employment with Alameda Health
2  System. I was totally at a loss. To my understanding, I did everything the best I could for
3  Alameda health System and its patients and staff. When I asked Mr. Harding to give me
4  examples of these alleged discrepancies, his answer was, "we are not talking about it today." So,
5  He didn't give me any examples of what I did wrong.

6      I filed a claim with the Department of Industrial Relations in September 2013. My case
7  number is 32741 Drevaleva v. Alameda Health System. Deputy of the Labor Commissioner Ms.
8  Catherine Daly was assigned to work on my case. Due to my health issues, I went to Russia in
9  2014, and I communicated with Ms. Daly via email.

10      Alameda Health System misinformed Ms. Daly about the reasons of my termination.
11  They said that I had been fired because my negligence seriously harmed the patient. It is a pure
12  lie. I received a letter from Ms. Daly dated June 16, 2014 via email (please, see Attachment 4/1 –
13  Ms. Daly's letter to me regarding the reasons of my termination). I wrote a letter to Ms. Daly
14  dated June 18, 2014 (please, see attachment 4/2 – my letter to Catherine Daly dated June 18,
15  2014). I emailed it to her because I was in Russia and could not have submitted this letter in
16  person in the USA. Alameda Health System didn't say what patient s/he was. I guess he was Mr.
17  X (this is a fake name). I wrote about what happened with that patient. I wrote that I had shown
18  the patient's EKG to one of the residents of Alameda Health System Dr. Rachmani who agreed
19  with my interpretation. I reported about it to Mr. Harding. After the patient's death. Alameda
20  Healgh System had three root cause analysis (RCA) meetings where the commission discussed
21  what happened with that patient. At all three RCA meetings, I said that I had shown the patient's
22  EKG to Dr. Rachmani who agreed with my interpretation. The incident with the patient
23  happened in the ,idle of July (I don't remember the exact day but to my best knowledge it was
24  the middle of July 2013). After the patient's death and three RCAs, I was allowed to perform my
25  duties as a Monitor Technician, and I worked until September 7th. 2013.

26      I returned back to the United States in June 2016.I submitted the same letter to Ms.
27  Daly's office in San Francisco in early August 2016.

28      <u>The reaction of the Department of Industrial relations to my retaliation claim.</u>

Deputy of the Labor Commissioner Ms. Daly expressed total negligence to my case. On June 16, 2014, she sent me a letter saying that my employment had been terminated due to my negligence to the patient. She gave me only two days to respond.[1] She asked me to provide her with a list of witnesses. I responded on June 18, 2014.Despite I sent her my detailed explanation and a list of witnesses, she never contacted all these witnesses and she didn't obtain their statements. She ignored my case for another more than two years. On August 25, 2016, Ms. Daly attempted to force me to withdraw my case. She emailed me a withdrawal form which she demanded me to sign (please, see Attachment 5). In this form, it was written that I was going to withdraw my case on my own free will. This statement is a false. I filed a case with the Department of Industrial Relations in hope to find truth and justice but Ms. Daly ignored anything I said.In August 2016, I submitted a letter to the Department of Industrial Relations where I asked to re-assign my case to another Deputy and where I demanded to set a hearing date(please, see Attachment 6). However, that letter remained unanswered. I started to communicate with Ms. Joan Healy who is a Supervisor. I sent her an email dated December 12, 2016 where I asked when my case will be processed and finished (please, see Attachment 7). In her email dated December 19, 2016, Ms. Healy informed me about her intention to dismiss my case. The reason she listed was my evidence was not sufficient for the retaliation case. This is not true. Neither Ms. Daly nor Ms. Healy never made any attempt to contact any of the witnesses whom I listed in my letters dated June 18, 2014 and August 6, 2016. Also, Ms. Healy accused me in not coming to my alleged appointment with Ms. Daly in September 13, 2016 which is a lie because I was never invited to come to that appointment (please, see Attachment 8). I asked Ms. Healy to send me a proof that I was invited to an appointment with Ms. Daly on September 13, 2016. I never got Ms. Healy's answer on this question. However, Ms. Healy informed me that I

---

[1] In my December 29,2016 Complaint No. 3:16-cv-07414-LB, I mistakenly asserted that Ms. Daly gave me only two days to respond to the June 16, 2014 letter, It was my mistake. Ms. Daly gave me over a month to respond to her June 16, 2014 letter. But I responded within two days.

Complaint for Damages.

had a right to file a lawsuit which I am doing now. I am filing this lawsuit because I couldn't find truth and justice through the Department of Industrial Relations for over three years.

The reasons of my termination from my point of view.

I was fired by Alameda Health System due to retaliation because I had requested to upgrade my status from a part-time employee to a full-time employee. Alameda health System is lying that I was fired because my negligence seriously harmed the patient.I didn't demonstrate any negligence to that patient, and a Medical Doctor agreed with my EKG interpretation.

In their communication with Ms. Daly, Alameda Health System said that I had been fired due to neglgence I demonstrated toward the patient. This is a pure lie. Below, I am listing evidence why this statement is a lie.

Evidence that Alameda Health System is lying about the reasons of my termination.

Let is suggest that I exhibited negligence and really seriously harmed the patient. At this case (if it was REALLY my fault) I would be immediately fired for a cause. In this case:

1) After the incident with the patient, I would not be allowed to perform my duties as a Monitor Technician at Alameda Health System. It means, I would be terminated for a cause immediately after the incident. Let us see the facts. The incident with the patient happened approximately in the middle of July 2013. I was fired on September 7th, 2013. I actually performed my duties as a Monitor Technician observing cardiac monitors from the middle of July to the beginning of September. It is the discrepancy #1 that Alameda Health System (later AHS) exhibited.

2) If I were fired for a cause, Mr. Harding would write it in his termination letter. However, he didn't write it down and he didn't tell me verbally on the day of the termination. This is the discrepancy #2 that AHS exhibited.

3) If I were fired for a cause, I would not be eligible to get unemployment insurance benefits. However, I was actually getting unemployment insurance benefits. This is a discrepancy #3 that AHS exhibited.

4) If I were fired for a cause, my CCT (Certified Cardiographic Technician) certificate would be immediately suspended or revoked as well as my EKG Technician

Complaint for Damages.

certificate/ However, my CCT and EKG Technician certificates were valid after my termination. My EKG Technician certificate is still valid, and my CCT certificate is expired in 2015 because I didn't pay for the renewal on time. This is the discrepancy #4 that AHS exhibited.

5) If I were fired for a cause, I would not be eligible for another employment as an EKG or Monitor Technician at any other hospital. Actually, after my termination from AHS I was hired for the position of an EKG technician at Children's Hospital in Oakland through the H.E.L.P. staffing agency. I actually got a job offer after getting fully checked by the agency. I was going to accept that job offer but I decided to go to Russia. Children's Hospital decided to hire another EKG Technician only because I said that I would go to Russia (please, see Attachments 9/1 and 9/2). This is the discrepancy #5 that AHS exhibited.

6) If I were fired for a cause, I would not get an invitation for a job interview from one of the hospitals of the veterans Affairs system. Usually, they invite candidates for a job interview after they fully check the candidate. When I was in Russia, I got an invitation for a job interview from one of the hospitals of the Veterans Affairs system. This is the discrepancy #6 that AHS exhibited.

7) If I were fired for a cause, I would never get a good Letter of Reference from the Assistant manager of Alameda Health System after the incident with the patient. Actually, I got a good Letter of Reference dated August 21st, 2013 (after the incident with the patient) from Assistant manager Mr. Masangkay (please, see Attachment 10). This is the discrepancy #7 that AHS exhibited.

8) If there was really my fault in wrongfully interpreting the patient's EKG, a medical doctor would never agree with my interpretation. When the incident was happening, I showed the patient's EKG to one of the residents of Alameda health System Dr. Rachmani. I explained to him what was going on with the patient and what my EKG interpretation was. Dr. Rachmani agreed with my interpretation. I reported it to the Unit Manager. After the incident, we had three root cause analysis meetings where

Complaint for Damages.

1  we discussed in detail what happened. At every meeting, I said that I had showed the

2  patient's EKG to Dr. Rachmani who agreed with my interpretation. So, Alameda

3  health System can not claim that I exhibited negligence towards the patient. This is

4  the discrepancy #8 that AHS exhibited.

5  Summary.

6  I know that Alameda Health System retaliated and fired me for my desire to become a

7  full-time employee while actually working full time. Alameda Health System lied that I had been

8  fired due to my negligence to the patient. This is not true, and I listed eight reasons why it is not

9  true.

10  I didn't express any negligence to any patient. I showed patient X's EKG to Dr.

11  Rachmani who agreed with my interpretation. I said it at all three RCA meetings, and also I

12  reported it to Mr. Harding.

13  The Department of Industrial Relations believed Alameda Health System and didn't

14  believe me. Ms. Daly wanted me to withdraw my case, and Ms. Healy wanted to dismiss my

15  case. I was informed that I had a right to file a lawsuit which I am doing now. I am fighting for

16  my good name. For all my career working as an EKG/Monitor Technician, I've done the best I

17  could for patients, hospitals and my co-workers. Now, I am in the situation wjen every new

18  potential employer calls Alameda Health System, asks about the reasons of my termination,

19  hears the lie that I expressed negligence toward the patient, anf refuses to hire me. After

20  returning back to the United States from Russia, I already had two job onterviews – with Kaiser

21  Permanente in Modesto and with Veterans Affairs Medical Center in San Francisco. I was not

22  hired in Modesto, and Veterans Affairs Medical Center keeps silence about the hiring decision

23  despite I worked for them in 2012 and 2013 and my Performance Evaluation was outstanding

24  and exceptional.

25  I am asking the court:

26  1) To overturn the decision of Alameda Health System about firing me and reinstate me

27  to work as a Monitor Technician,

28  2) To make me a full-time employee

Complaint for Damages.

3) To pay all salaries and benefits for all the time that I haven't been working as a Monitor Technician at Alameda health System since September 7th, 2013 until the decision of the Court

4) Make Alameda Health System give me written apologies about firing me so I could show this letter to any potential employer and get hired according to my qualifications and experience

5) Make Alameda Health System pay me moral compensation 5 (five) million U.S. dollars – for not working due to retaliation and mixing my good name with dirt, for slandering me in front of other potential employers, for delaying my career, for withdrawing health insurance from me and therefore forcing me to go to Russia to solve my medical issues, for depriving me the opportunitu to have my own house and car, for depriving me the opportunity to study and get an advanced degreek for pushing me into a deep debt to U.S. banks, etc.

6) Make the Department of Industrial Relations pay me moral compensation 3 (three) million U.S. dollars – one million for each year of processing my case, not paying attention to my statements and the attempt to make me withdraw my case.

I am fighting for my good name. Throughout all my career working in U.S. hospitals I've expressed the best effort for patients, hospitals and my co-workers. I want to get hired, and I want to develop my career. Alameda Health System together with the Department of Industrial Relations delayed my development and career. This is why I want them to pay moral compensation that I determined.

I believe in Justice. I believe that the court will make a favorable decision for me.

Respectfully,

Tatyana Drevaleva."

11. On January 10, 2017, Clerk of the U.S. District Court for the Northern District of California Ms. Felicia Reloba issued a Summons (Doc. No. 5, page 1) to Defendants as follows:

1) Alameda Health System, 15400 Foothill Blvd., San Leandro, CA 94578

Complaint for Damages.

2) Department of Industrial Relations: 455 Golden Gate Ave., 10th Floor, San Francisco, CA 94102

12. Please, take a Judicial Notice that in the January 10, 2017 Summons Clerk Ms. Reloba erroneously listed the physical address of the Department of Industrial Relations as follows: 455 Golden Gate Ave., 10th Floor, San Francisco, CA 94102.

13. However, this listed above address belongs to the Division of the Labor Standards Enforcement (the DLSE) of the Department of Industrial Relations (the DIR.)

14. Please, take a Judicial Notice that the physical address of the California Department of Industrial Relations is: Legal Unit, 1515 Clay Street, Suite 701, Oakland, CA 94612.

15. On January 17, 2017, the U.S. Marshals Service acknowledged the receipt of a Summons as to Defendant the Department of Industrial Relations at the following address (Doc. No. 7, page 1): 455 Golden Gate Ave., 10th Floor, San Francisco, CA 94102.

NAME OF INDIVIDUAL, COMPANY, CORPORATION' ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

SERVE AT
Department of Industrial Relations

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

455 Golden Gate Ave., 10th Floor, San Francisco, CA 94102

16. On January 27, 2017, the U.S. Marshals Service returned the Summons executed as to Defendant the Department of Industrial Relations as follows (Doc. No. 12, page 2): Division of Labor Standards Enforcement, 9th Floor

Name and title of individual served *(if not shown above)*
DAVID BALTER

☐ A person of suitable age and discretion then residing in defendant's usual place of abode

Address *(complete only if different than shown above)*
DIVISION OF LABOR STANDARDS ENFORCEMENT
9TH FLOOR

Date
1/20/15

Time
1131
☑ am ☐ pm

Signature of U.S Marshal or Deputy

17. Therefore, please, take a Judicial Notice that Defendant the Department of Industrial Relations whom I listed in my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB (Doc. No. 1, page 1) was never served with a Summons and with an Original December 29,2016 Complaint.

Complaint for Damages.

18. Instead, the Division of Labor Standards Enforcement (the DLSE) of the California Department of Industrial Relations was served with a Summons and with an Original December 29, 2019 Complaint No. 3:16-cv-07414-LB.

19. On February 09, 2017, Attorney Ms. Doris Ng who was directly employed by the California Department of Industrial Relations (not by the Division of Labor Standards Enforcement of the California Department of Industrial Relations) filed a document named "NOTICE OF MOTION AND MOTION OF DEFENDANT DIVISION OF LABOR STANDARDS ENFORCEMENT TO DISMISS COMPLAINT FOR (1) LACK OF JURISDICTION [RULE 12(B)(1)]; (2) ELEVENTH AMENDMENT IMMUNITY; (3) FAILURE TO STATE A CLAIM [RULE 12(b)(6)]; MEMORANDUM OF POINTS & AUTHORITIES" (Doc. No. 16.)

20. Please, notice that, before filing the February 09, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB, Attorney Ms. Ng never filed a Notice of Appearance in violation of the Civil Local Rules of the U.S. District Court for the Northern District of California, Rule 5-1(c)(2)(A), "(A) A Notice of Appearance must be e-filed whenever counsel joins a case."

21. Also, please, take a Judicial Notice that in her February 09, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB Ms. Ng listed the Division of Labor Standards Enforcement as a Defendant, see Doc. No. 16, page 1, lines 13-15, "NOTICE OF MOTION AND MOTION OF DEFENDANT DIVISION OF LABOR STANDARDS ENFORCEMENT TO DISMISS COMPLAINT…"

22. Please, take a Judicial Notice that I never listed the Division of Labor Standards Enforcement (the DLSE) as a Defendant in my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB. Please, take a Judicial Notice that I explicitly listed the Department of Industrial Relations as a Defendant in my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB (Doc. No. 1, page 1.)

Complaint for Damages.

23. Please, take a Judicial Notice of the definition of the California Department of Industrial Relations at the California Labor Code Section 50, "There is in the Labor and Workforce Development Agency the Department of Industrial Relations.

*(Amended by Stats. 2002, Ch. 859, Sec. 11. Effective January 1, 2003.)"*

24. Please, take a Judicial Notice of the definition of the Division of Labor Standards Enforcement of the California Department of Industrial Relations at the California Labor Code Section 79, "There is in the Department of Industrial Relations the Division of Labor Standards Enforcement. The Division of Labor Standards Enforcement shall be under the direction of an executive officer known as the Chief, Division of Labor Standards Enforcement, who shall be appointed by the Governor, subject to confirmation of the Senate, and shall hold office at the pleasure of the Director of Industrial Relations. The annual salary of the chief shall be determined by the Department of Finance.

*(Repealed and added by Stats. 1976, Ch. 746.)"*

25. Please, take a Judicial Notice of the California Labor Code Section 82(b) that explains that a Labor Commissioner is a Chief of the Division of Labor Standards Enforcement. "(b) All powers, duties, purposes, and responsibilities of the Labor Commissioner, who is Chief of the Division of Labor Law Enforcement, are hereby transferred to the Labor Commissioner who is the Chief of the Division of Labor Standards Enforcement."

26. Also, please, see Labor Code Section 21,

" "Labor Commissioner" means Chief of the Division of Labor Standards Enforcement.

*(Amended by Stats. 1976, Ch. 746.)*

27. Please, take a Judicial Notice that the Labor Commissioner at the time when my retaliation and unlawful termination complaint against the Alameda Health System was investigated by the DLSE and at the time when I filed my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB against the DIR was Ms. Julie Su.

Complaint for Damages.

28. Please, take a Judicial Notice of the cover page of Ms. Ng's Motion to Dismiss (Doc. No. 16, page 1, line 7) where she explicitly appeared on behalf of the improper Defendant "LABOR COMMISSIONER OF THE STATE OF CALIFORNIA" despite the former Labor Commissioner of the State of California Ms. Julie Su had never been named as a Defendant in my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB,

"STATE OF CALIFORNIA

Department of Industrial Relations

Division of Labor Standards Enforcement

DORIS NG, State Bar No. 169544

455 Golden Gate Avenue, 9th Floor

San Francisco, California 94102

Tel.: (510) 285-1634

Fax: (415) 703-4807

E-mail: dng@dir.ca.gov

Attorney for Defendant LABOR COMMISSIONER OF THE

STATE OF CALIFORNIA."

29. Please, also take a Judicial Notice that in her Motion to Dismiss Attorney Ms. Ng intentionally, criminally, and maliciously listed her invalid mailing address as (Doc. No. 16, page 1, lines 3-4) "455 Golden Gate Avenue, 9th Floor,  San Francisco, California 94102 "

30. Please, take a Judicial Notice that Attorney Ms. Doris Ng was directly employed by the California Department of Industrial Relations, and Ms. Ng was not directly employed by the Division of Labor Standards Enforcement of the California Department of Industrial Relations. Please, take a Judicial Notice that Attorney Ms. Doris Ng's correct mailing address was 1515 Clay St., Oakland, CA 94612 that was the address of the correct Defendant the California Department of Industrial Relations.

31. Please, also take a Judicial Notice that, despite in her February 09, 2017 Motion to Dismiss (Doc. No. 16) my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB Attorney Ms. Ng listed the mailing address in San Francisco, Ms. Ng nevertheless wrote her

Complaint for Damages.

1    phone number in Oakland, CA with the area code 510, see Doc. No. 16, page 1, line 4, "Tel.:
2    (510) 285-1634."

3        32. Please, take a Judicial Notice that the California Department of Industrial Relations is
4    a *State* Public Entity within the meaning of the California Government Code Section 900.6, "
5    "State" means the State and any office, officer, *department*, division, bureau, board, commission
6    or agency of the State claims against which are paid by warrants drawn by the Controller"
7    (emphasis added.)

8        33. Please, take a Judicial Notice that, because the California Department of Industrial
9    relations is a State Pubic Entity, only Attorney General of the State of California had a right to
10   respond to my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB pursuant to the
11   California Government Code Section 11040(a.)

12       34. Read Government Code Section 11040,

13       "(a) It is the intent of the Legislature that overall efficiency and economy in state
14   government be enhanced by employment of the Attorney General as counsel for the
15   representation of state agencies and employees in judicial and administrative adjudicative
16   proceedings.

17       The Legislature finds that it is in the best interests of the people of the State of California
18   that the Attorney General be provided with the resources needed to develop and maintain the
19   Attorney General's capability to provide competent legal representation of state agencies and
20   employees in any judicial or administrative adjudicative proceeding.

21       (b) As used in this article:

22       (1) "In-house counsel" means an attorney authorized to practice law in the State of
23   California who is a state employee, including an excluded or exempt employee, other than an
24   employee of the Office of the Attorney General.

25       (2) "Outside counsel" means an attorney authorized to practice law in the State of
26   California who is not a state employee, including an excluded or exempt employee.

27       (c) Except with respect to employment by the state officers and agencies specified by
28   title or name in Section 11041 or when specifically waived by statute other than Section 11041 ,

Complaint for Damages.

a state agency shall obtain the written consent of the Attorney General before doing either of the following:

(1) Employing in-house counsel to represent a state agency or employee in any judicial or administrative adjudicative proceeding.

(2) Contracting with outside counsel.

(d) Except as limited by paragraph (1) of subdivision (c), a state agency may employ in-house counsel for any purpose.  This subdivision shall apply retroactively to the employment of any in-house counsel by any state agency before the operative date of the act adding this subdivision.

(e) This article does not prohibit a state agency from obtaining legal services from the Attorney General for any purpose.

(f) Consistent with subdivision (d), and except as may conflict with contrary authorization by statute, a state agency may employ in-house counsel for advice or other legal work related to bonds or other evidences of indebtedness, but shall engage the Attorney General, alone or with other counsel as may be authorized by statute, for the purpose of delivering any approving legal opinion on bonds or other evidences of indebtedness and advice related to the approving legal opinion.  The Attorney General may waive the requirement under this subdivision."


35. Read Government Code - GOV § 11042

"(a) No state agency shall employ any in-house counsel to act on behalf of the state agency or its employees in any judicial or administrative adjudicative proceeding in which the agency is interested, or is a party as a result of office or official duties, or contract with outside counsel for any purpose, unless the agency has first obtained the written consent of the Attorney General pursuant to Section 11040 .

(b) The Attorney General may provide written consent for a state agency to employ in-house counsel to represent the agency or its employees in any judicial or administrative adjudicative proceeding in whatever manner the Attorney General deems most effective and

Complaint for Damages.

consistent with the intent of this article.   However, a state agency shall obtain written consent for the use of outside counsel for a matter or matters for which the outside counsel is to be engaged before the execution of each contract with the outside counsel for the matter or matters."

36. Read Government Code - GOV § 11041

"(a)   Section 11042 does not apply to … Division of Labor Standards Enforcement of the Department of Industrial Relations, … nor to any other state agency which, by law enacted after Chapter 213 of the Statutes of 1933, is authorized to employ legal counsel.…"

37. Therefore, as I demonstrated above, Government Code Section 11042 prohibits State Agency the California Department of Industrial Relations to employ an In-house Counsel within the meaning of Government Code Section 11040(b)(1) to represent the State Agency the Department of Industrial Relations as a Party in a judicial proceeding without a written Consent of Attorney General of the State of California.

38. However, pursuant to Government Code Section 11041(a), Section 11042 is inapplicable to the Division of Labor Standards Enforcement of the Department of Industrial Relations.

39. Therefore, the appearance of Attorney Ms. Doris Ng on behalf of the "Division of Labor Standards Enforcement" and/or on behalf of the "Labor Commissioner of the State of California" in my Original Complaint No. 3:16-cv-07414-LB was unlawful and fraudulent within the meaning of the F.R.C.P. Rule 60(d)(3),

"(d) Other Powers to Grant Relief. This rule does not limit a court's power to:

(3) set aside a judgment for fraud on the court."

40. Please, read the plain text of Ms. Ng's (as opposed to Defendant the California Department of Industrial Relations') Notice of the Motion to Dismiss my Original December 29, 2016 Complaint, see Doc. No. 16, pages 1-2, "PLEASE TAKE NOTICE that on March 30, 2017, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom C; 15th Floor

Complaint for Damages.

1  of the above-entitled court, Defendant Division of Labor Standards Enforcement (DLSE), of the

2  Department of Industrial Relations (DIR), of the STATE OF CALIFORNIA (hereinafter

3  'DLSE"),[1] will and does hereby move the Court pursuant to Federal Rule of Civil Procedure

4  12(b) for an order dismissing the complaint as to the DLSE, without leave to amend.

5       [1] Plaintiff sued the Department of Industrial Relations (DIR), an agency of the State of

6  California, but served the Division of Labor Standards Enforcement (DLSE), also known as the

7  Labor Commissioner's Office. The DLSE is a division under the department of Industrial

8  Relations, and its chief executive officer is the California Labor Commissioner. *See* California

9  labor Code sections 21, 79, 82. Because California Labor Code section 98.7 vests authority in the

10 DLSE to investigate and issue determinations and demands in retaliation matters under the

11 jurisdiction of the Labor Commissioner, Plaintiff should have named the DLSE in this matter,

12 not DIR. For the purposes of this motion only, Defendant DLSE moves to dismiss and proceeds

13 herein under the assumption that Plaintiff intended to name the DLSE as Defendant."

14      41. Please, take a Judicial Notice that in the February 09, 2017 Motion to Dismiss my

15 Original December 29, 2016 Complaint No. 3:16-cv-07414-LB Attorney Ms. Ng frivolously and

16 fraudulently substituted Defendant the Department of Industrial Relations by Defendant the

17 DLSE within the meaning of the F.R.C.P. Rule 60(d)(3) – fraud on the court, see my citation

18 above.

19      42. Further, in her February 09, 2017 Motion to Dismiss my Original December 29,

20 2016 Complaint, Attorney Ms. Ng wrote (Doc. No. 16, page 16, lines 1-21),

21      **"B. The Court Should Dismiss the Action as to Defendant DLSE Because the**

22 **Eleventh Amendment Bars Suit Against State Entities in Federal Court.**

23      Absent a waiver of sovereign immunity, the Eleventh Amendment to the United States

24 Constitution bars suit against an agency of the State of California, regardless of the type of relief

25 sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89,100-101, 104 S.Ct. 900, 79

26 L.Ed.2d 67 (1984). This bar exists because state sovereignty requires that federal courts step

27 aside in matters alleging a state's violation of laws: "it is difficult to think of a greater intrusion

28 on state sovereignty than when a federal court instructs state officials on how to conform their

Complaint for Damages.

conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106.

Numerous courts have reaffirmed that states are immune from private damage actions in federal court under the Eleventh Amendment. *See, e.g., Jackson v. Hayakawa*, 682 F.2d 1344, 1349-50 (9th Cir. 1982); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-201 (9th Cir. 1989).

Here, Defendant Division of Labor Standards Enforcement is a state agency within the Department of Industrial Relations, State of California. See Labor Code §§ 21 and 79. Defendant DLSE's sovereign immunity has not been waived. Accordingly, Defendant DLSE must be dismissed as a party to this action under the Eleventh Amendment and is immune from the millions in "moral compensation" damages that Plaintiff seeks."

43. Please, notice that, asserting that Defendant the Division of Labor Standards Enforcement is immune from a suit in the Federal Court pursuant to the Eleventh Amendment to the U.S. Constitution, Attorney Ms. Ng committed fraud within the meaning of the F.R.C.P. Rule 60(d)(3) – fraud on the court, see my citation above,

44. The Division of Labor Standards Enforcement is not a separate State Agency within the meaning of the California Government Code Section 900.6, see my citation above. The Eleventh Amendment to the U.S. Constitution immunizes only the State (under certain circumstances) from suits in a Federal Court.

45. Please, take a Judicial Notice of the March 21, 2017 Order of Judge Ms. Beeler that granted Attorney Ms. Ng's (as opposed to Defendant the California Department of Industrial Relations') Motion to Dismiss my Original December 29, 2016 Complaint (Doc. No. 36, page 4, lines 10-19). "Also, the agency is immune from suit. The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237-38 (1985). Eleventh Amendment immunity also extends to suits against a state agency. *See Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity); *see also Allison v. Cal. Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)

(California Adult Authority and San Quentin State Prison not persons within meaning of Civil Rights Act). Liability arises only upon a showing of personal participation by an individual defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)."

46. Please, take a Judicial Notice that in her March 21, 2017 Order Judge Ms. Beeler wrote (Doc. No. 36, page 4, line 10), "Also, *the agency* is immune from suit"(emphasis added.) Please, notice that Ms. Beeler failed to specify what "agency" she granted the Eleventh Amendment's protection – the Department of Industrial Relations, the Division of Labor Standards Enforcement, or the Labor Commissioner.

47. I am repeating that:

1) Defendant the California Department of Industrial Relations was never served with a Summons and an Original December 29, 2016 Complaint No. 3:16-cv-07414-LB

2) On February 09, 2017, Attorney Ms. Doris Ng unlawfully filed a Motion to Dismiss my original December 29, 2016 Complaint No. 3:16-cv-07414-LB in violation of the Civil Local Rule of the U.S. District Court for the Northern District of California, Rule 5-1(c)(2)(A)

3) On February 09, 2017, Attorney Ms. Doris Ng unlawfully appeared on behalf of improper Defendants the Division of Labor Standards Enforcement and the California Labor Commissioner instead of on behalf of the proper Defendant the California Department of Industrial Relations

4) Attorney Ms. Doris Ng was directly employed by the California Department of Industrial Relations

5) Attorney Ms. Doris Ng was not directly employed by the Division of labor Standards Enforcement of the California Department of Industrial Relations

6) Pursuant to the California Government Code Section 11040(a), only Attorney General of the State of California had a right to appear on behalf of Defendant the State Agency (the Cal. Gov. C. § 900.6) the California Department of Industrial Relations in the Original Complaint No. 3:16-cv-07414-LB

Complaint for Damages.

7) There was no evidence that Attorney General of the State of California authorized Attorney Ms. Doris Ng in writing to appear on behalf of Defendant the California Department of Industrial Relations, see Government Code Section 11040(c), see my citation above

8) Attorney Ms. Doris Ng was not an in-house Counsel of the Division of Labor Standards Enforcement who had a right to appear on behalf of the Division of Labor Standards Enforcement, see Government Code Sections 11042 and 11041(a), see my citations above.

49. Therefore, the March 21, 2017 Order (Doc. No. 36) that granted the mysterious unnamed "agency" (Doc. No. 36, page 4, line 10) with the Eleventh Amendment's protection is void and should be vacated.

**50. My April 10, 2017 Amended Complaint**. On April 02, 2017, I relocated to Albuquerque, NM, and on April 03, 2017 I was appointed as a Full Time Excepted Service Medical Instrument Technician Electrocardiograph at the New Mexico Veterans Affairs Health Care System also known as the Raymond G. Murphy VAMC.

51. On April 10, 2017, I filed an Amended Complaint No. 3:16-cv-07414-LB from the State of New Mexico (**Doc. No. 40, from ER 07414 Vol. 2, page 263 to Vol. 3, page 616**) against the following Defendants (**ER 07414 Vol. 2, page 264**): 1) Alameda Health System, 2) Officials of Department of Industrial Relations, Division of Labor Standards Enforcement: Ms. Catherine Daly, Ms. Joan Healy, Mr. Bobbit Santos, Mr. Eric Rood.

52. Because I filed my Amended Complaint from the State of New Mexico, I asserted that the U.S. District Court for the Northern District of California has the Diversity of Citizenship jurisdiction over my Amended Complaint along with the federal question jurisdiction, see (**Doc. No. 40, ER Vol. 2, from page 264, line 25 to page 265, line 2**), "1) **Jurisdiction**: This court has jurisdiction over this complaint because: a) it rises under diversity of citizenship (the Plaintiff is a citizen of the Russian Federation currently residing in New

Complaint for Damages.

1   Mexico) and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2), b) it rises

2   under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331."

3       53. Please, read the text of my Amended Complaint (**ER 07414 Vol. 2, from page 265,**

4   **line 17 to page 300, line 3**), "<u>**Why I am filing this amended complaint.**</u>

5       On December 29, 2016, I filed a complaint against both Alameda Health System (AHS)

6   and Department of Industrial Relations (DIR). The nature of my complaint was: retaliation,

7   unlawful termination, slander (DIR slandered me that I exhibited negligence towards the patient),

8   unpaid wages such as shift differentials and unpaid overtime, possibly Title VII of the Civil

9   Rights Act of 1964 (discrimination against my Russian origin), denial of my affiliation to the

10  Union, occupational health issues (not giving me 10 minute breaks as to an employee who

11  constantly observes video display screens according to the internal policy of AHS), not giving

12  me paid 15 minute breaks.

13      Under California Labor Code Section 2699(e)(1), I have a right to file a lawsuit: "For

14  purposes of this part, whenever the Labor and Workforce Development Agency, or any of its

15  departments, divisions, commissions, boards, agencies, or employees, has discretion to assess a

16  civil penalty, a court is authorized to exercise the same discretion, subject to the same limitations

17  and conditions, to assess a civil penalty".

18      Both defendants AHS and DIR filed motions to dismiss my complaint for lack of federal

19  subject-matter jurisdiction and for failure to state a claim (Motions ECF Nos. 16, 19).

20      On March 21st, 2017, Honorable Judge laurel Beeler granted both motions to dismiss on

21  the ground that Plaintiff Drevaleva did not state plausible federal claims. However, Judge Beeler

22  gave me a chance to amend my complaint.

23      **<u>Amended complaint.</u>**

24      I, Plaintiff Tatyana Drevaleva, was hired as a Monitor technician at Alameda County

25  Medical Center starting April 1st, 2013 for 8-hour shifts on a 0.8 FTE (part-time, benefit eligible

26  – only medical, dental, vision, and life insurance) status with applicable shift differentials such as

27  11% for evenings, 15.5% for nights & 5% for weekends (Attachment 1 – Offer letter).

28

Complaint for Damages.

1        During the hiring process, I signed paper in Human resources that I agree to be

2    represented by the Union. After my employment started, I was informed that I had been denied

3    my affiliation to the Union, and the paper with my signature was destroyed. Thus, AHS broke 29

4    U.S. Code § 157 - Right of employees as to organization, collective bargaining, etc.        :

5    "Employees shall have the right to self-organization, to form, join, or assist labor organizations,

6    to bargain collectively through representatives of their own choosing, and to engage in other

7    concerted activities for the purpose of collective bargaining or other mutual aid or protection,

8    and shall also have the right to refrain from any or all of such activities except to the extent that

9    such right may be affected by an agreement requiring membership in a labor organization as a

10   condition of employment as authorized in section 158(a)(3) of this title" Also, 29 U.S. Code §

11   158(a)(2) says: "It shall be an unfair labor practice for an employer to dominate or interfere with

12   the formation or administration of any labor organization or contribute financial or other support

13   to it: Provided, That subject to rules and regulations made and published by the Board pursuant

14   to section 156 of this title, an employer shall not be prohibited from permitting employees to

15   confer with him during working hours without loss of time or pay". The provisions of 29 U.S.

16   Code § 157 do not say that public employees are exempt from this Federal law.

17       AHS attempted to cite the National Labor Relations Act (N.L.R.A.) codified at 29 USC,

18   Sections 141 et seq. and said that the NLRA does not apply to state public entities. 29 U.S.C. §

19   142. This is a libel (Code of Civil Procedure 340 (c)). In fact, see 29 U.S. Code § 141 - Short

20   title; Congressional declaration of purpose and policy. This law is defined as "Labor

21   Management Relations Act, 1947" (part (a)). Part (b) says: "Industrial strife which interferes

22   with the normal flow of commerce and with the full production of articles and commodities for

23   commerce, can be avoided or substantially minimized if employers, employees, and labor

24   organizations each recognize under law one another's legitimate rights in their relations with

25   each other, and above all recognize under law that neither party has any right in its relations with

26   any other to engage in acts or practices which jeopardize the public health, safety, or interest. It

27   is the purpose and policy of this chapter, in order to promote the full flow of commerce, to

28   prescribe the legitimate rights of both employees and employers in their relations affecting

Complaint for Damages.

commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce". Therefore this provision of law doesn't say about the right of an employee to be represented by the Union.  Source: https://www.law.cornell.edu/uscode/text/29/141   Also, 29 U.S.C. § 142 doesn't say even one word about state public entities. It says: "When used in this chapter—

(1) The term "industry affecting commerce" means any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce.

(2) The term "strike" includes any strike or other concerted stoppage of work by employees (including a stoppage by reason of the expiration of a collective-bargaining agreement) and any concerted slowdown or other concerted interruption of operations by employees.

(3) The terms "commerce", "labor disputes", "employer", "employee", "labor organization", "representative", "person", and "supervisor" shall have the same meaning as when used in subchapter II of this chapter".

Source: https://www.law.cornell.edu/uscode/text/29/142

Therefore, the attempt of AHS to claim that the Federal law regarding collective bargaining agreements does not apply to this employer because it is a public employer is a libel (Code of Civil Procedure 340 (c)).

I worked for a few weeks for 8 (eight) hour shifts. Afterwards, I was informed my Management that only 12 (twelve) hour night shifts were available. I was scheduled for three 12 hour shifts per week which is 36 (thirty six) hours per week. According to the internal policy of AHS, working for 36 hours a weeks is considered a full time employment with additional benefits such as retirement, vacation, educational leave, holiday and sick leave. See Attachment

1  2 – Alameda County Medical Center, Human Resources, Policy and Procedure Manual (pages

2  64 and 65 - Wage and hour terms and definitions, Page 67 - Meal and break periods), and

3  Attachment 3 - Memorandum of Understanding between SEIU Local 1021 – General Chapter

4  and the Alameda County Medical Center, January 1, 2012 to March 31, 2014 (page 15 - The

5  definition of a full-time employee, Page 39 - Shift differentials). However, despite working for

6  36 hours a week, I was still considered a part-time employee. I was not getting promised shift

7  differentials. Thus, AHS broke Labor Code Section 1194, Labor Code Section 204.

8       I worked for 12 (twelve) hour shifts, so I was entitled to getting paid overtime one and

9  one-half times the employee's regular rate of pay for all hours worked in excess of eight (8)

10  hours up to and including 12 hours in any workday. However, I did not receive overtime

11  payments. Thus, AHS broke IWC 4-2001, 3(A)(1)(a): "Employment beyond eight (8) hours in

12  any workday … is permissible provided the employee is compensated for such overtime at not

13  less than: (a) One and one-half (1 and 1/2) times the employee's regular rate of pay for all hours

14  worked in excess of eight (8) hours up to and including 12 hours in any workday". Also, AHS

15  broke IWC 4-2001, 3(B)(1): "No employer shall be deemed to have violated the daily overtime

16  provisions".

17       As a Monitor Technician employed by AHS, I was a nonexempt employee because AHS

18  is not a political subdivision of the State of California. According to the Section 218 of the Social

19  Security Act, "A political subdivision is a separate legal entity of a State which usually has

20  specific governmental functions.  The term ordinarily includes a county, city, town, village, or

21  school district, and, in many States, a sanitation, utility, reclamation, drainage, flood control, or

22  similar district. A political subdivision's legal status is governmental".  "Political subdivision"

23  ordinarily includes counties, cities, townships, villages, schools, sanitation, utility, irrigation,

24  drainage and flood-control districts, and similar governmental entities.

25  Source: https://www.ssa.gov/section218training/advanced_course_9.htm#3

26       There were entities who claimed themselves as political subdivisions but the Court

27  determined they were not. In *Seagrave Corporation v. Commissioner 38 T.C. 247 (1962)*, the

28  Court held that the corporations are not political subdivisions, and stated as follows: "They may

Complaint for Damages.

1  be political, in the sense that 'political' is synonymous with 'public,' but they are not
2  subdivisions of the State. It may be conceded the volunteer fire companies perform a public
3  function in the sense that they perform the same function that is generally carried on by
4  municipal fire departments. But the volunteer fire companies here involved are not in any sense
5  subdivisions of the States where they are located. They were not created by any special statutes
6  and they received no delegation of any part of the State's power. It is not enough that they
7  perform a public service. They cannot be called a subdivision of the State unless there has been a
8  delegation to them of some functions of local government".  Alameda County Medical Center
9  which reorganized to Alameda Health System has not been delegated some functions of local
10 government, therefore AHS can not name itself a political subdivision of the State of California.
11 Therefore, I was not an employees directly employed by the **State or any political subdivision**
12 **thereof**, including any city, county or special district (IWC-4), and therefore I am not an exempt
13 from overtime payments.

14      Also, see the definition of political subdivision on the web-site of Internal Revenue
15 Service https://www.irs.gov/irb/2016-10_IRB/ar17.html "The Proposed Regulations clarify and
16 further develop the eligibility requirements for a political subdivision. To qualify as a political
17 subdivision under the Proposed Regulations, an entity must meet three requirements, taking into
18 account all of the facts and circumstances: sovereign powers, governmental purpose, and
19 governmental control. The Proposed Regulations also authorize the Commissioner to set forth in
20 future guidance to be published in the Internal Revenue Bulletin additional circumstances in
21 which an entity qualifies as a political subdivision". Internal Revenue Bulletin, 2016-10, dated
22 March 7, 2016. AHS does not meet all the requirements to be considered as a political
23 subdivision of the State of California because it doesn't have all three requirements such as
24 sovereign powers, governmental purpose and governmental control.

25      While performing my duties as a Monitor Technician for 12 hour shifts, I was entitled for
26 three (3) fifteen (15) minute paid breaks and one (1) thirty (30) minute unpaid meal break. In
27 reality, I got only 30 minute unpaid lunch break and two 15 minute paid breaks when I worked
28 with Charge Nurses Beverly, Kim and Vera. I was not getting one 15 minute break. Thus, AHS

broke Labor Code Section 226.7. Also, AHS broke 29 CFR 785.18. For each not received fifteen minute break, an employee is entitled to get paid for additionally one hour of an hourly pay rate. I did not receive at least one fifteen minute break per shift, and I did not receive the payment for one hour of job for each non-received break. When I worked with Charge Nurse Nidia, I got one 30 minute unpaid lunch break and three 15 minute paid breaks.

Moreover, because I worked with cardiac monitors constantly observing video display screens, I was entitled to 10(ten) minute breaks every hour according to the policy of AHS. However, no one Charge Nurse gave me 10 minute breaks every hour according to written policies of Alameda Health System. Thus, AHS broke The Occupational Safety and Health Act of 1970 (29 U.S.C. 651, et seq.) which is a Federal statute of general application designed to regulate employment conditions relating to occupational safety and health and to achieve safer and healthier workplaces throughout the Nation.

I approached Manager of Step Down Unit Mr. Verrilien Clerve and asked him questions about my part-time employment status while actually working full time, about not received shift differentials and overtime, not received 15 minute breaks and why I was denied my affiliation to the Union. Mr. Clerve promised to think about the situation but I continued to get paychecks without shift differentials, overtime payments, I was not receiving paid 15 minute breaks, and I was still considered a part-time employee while working full time. I started to approach a new appointed Director of Step Down Unit Mr. Gilbert Harding, and I asked him the same questions. Mr. Harding promised to think but nothing changed. I had a verbal conversation with Mr. Harding approximately on August 25th, 2013 but nothing changed.

On September 5, 2013 I sent a letter to Mr. Harding where I listed these questions (Attachment 4 – my letter to Mr. Harding dated September 5th, 2013). Two days later, on September 7, 2013, I was fired in twenty minutes after the beginning of my shift (Attachment 5 – Termination letter). In this letter, Mr. Harding said that my employment had been terminated due to discrepancies between acceptable employment standards and those I exhibited during my employment with AHS. I was totally at a loss. To the best of my knowledge, I did all the best I could for AHS, its patients and staff. When I asked Mr. Harding to give me examples of these

alleged discrepancies, his answer was, "We are not talking about it today". So, he didn't give me any examples of what I did wrong.

By firing me on September 7th, 2013, AHS broke a lot of Federal laws and one State of California law:

1) for firing me for asking the question why I was denied my affiliation to the Union, AHS broke 29 U.S. Code § 158 - Unfair labor practices. 29 U.S. Code § 158(a)(3) says: "It shall be an unfair labor practice for an employer…by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization"

2) for firing me for complaining about not getting my 10 minute breaks, AHS broke 29 CFR Part 1977 - DISCRIMINATION AGAINST EMPLOYEES EXERCISING RIGHTS UNDER THE WILLIAMS-STEIGER OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970. Please, read § 1977.12(a): "…section 11(c) also protects employees from discrimination occurring because of the exercise "of any right afforded by this Act". For filing a complaint under 29 CFR §1977, I don't have to initially file a claim with the Secretary of Labor within 30 days "where the employer has concealed, or misled the employee regarding the grounds for discharge or other adverse action; or where the discrimination is in the nature of a continuing violation". See 29 CFR §1977.15(3). In my case, the employer AHS concealed (never notified) me that I was eligible for 10 minute breaks every hour because I was constantly observing video display screens. AHS claimed that this policy had not been applied since 2011. However, this policy was active on the Intranet while I was working in 2013, and there was no document or written decision of the Committee of AHS that this policy is no longer active. Thus, AHS continuously violated this policy.

1) for firing me for asking questions regarding my employment status, not received shift differentials, overtime, breaks, and for asking about making me a full-time employee and assisting me in my tuition, AHS broke 29 U.S. Code § 158(c) - Expression of views without threat of reprisal or force or promise of benefit. "The expressing of any

Complaint for Damages.

views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit"

2)  for the same purpose, AHS broke 42 U.S. Code § 2000e–3 - Other unlawful employment practices.

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

3)  also, by retaliating and unlawfully terminating me, AHS broke the Californian law - Labor Code section 98.6 for "…complaining orally or in writing about unpaid wages, or for exercising (on behalf of oneself or other employees) any of the rights provided under the Labor Code or Orders of the Industrial Welfare Commission, including, but not limited to, the right to demand payment of wages due, the right to express opinions about, support or oppose an alternative workweek election, or the exercise of any other right protected by the Labor Code"

4)  According to Cal. Lab. Code §§ 201, 202, and 227.3, AHS was obligated to pay me my final paycheck on the day of termination which was September 7, 2013. In fact, I got my last paycheck in mail only on October 5, 2013 (Attachments 6 and 7)

Complaint for Damages.

5) another possible reason of termination was discrimination against my Russian origin. The fact is that I was the second Monitor Technician of the Russian origin who was fired from AHS. The first lady was Svetlana Muzychenko, and she was fired soon after the beginning of her employment. If my suggestion is correct, AHS broke Title VII of the Civil Rights Act of 1964

6) by denying my affiliation to the Union, by retaliating and unlawfully terminating me, by refusing to pay me promised shift differentials and overtime, by refusing to promote me to a full-time position and denying my educational benefits, AHS conducted acts of "Malice" which means "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others", "Oppression" which means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights", and "Fraud" which means "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury". See California Civil Code 3294.

Source:

http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=3294.&lawCode=CIV

I filed a claim with DIR, DLSE in September 2013. My case number is 32741 Drevaleva v Alameda Health System. Deputy of the Labor Commissioner Ms. Catherine Daly was assigned to work on my case. Due to my health issues, I went to Russia in 2014, and I communicated with Ms. Daly via email.

Ms. Daly emailed me a letter dated June 16, 2014 (Attachment 8). She stated that I had been fired from AHS due to negligence that I expressed towards the patient. It was a pure lie and defamation (Code of Civil Procedure 340 (c)). Source:

Complaint for Damages.

1   http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=CCP&sectionNum
2   =340 Ms. Daly's statement that I expressed negligence towards the patient is a libel which is a
3   written defamation. It damages my both personal and professional reputation in the community.
4   In fact, I have not exhibited negligence towards any patient. The incident with the patient
5   happened in the middle of July 2013 (if I remember it correctly). I was observing the patient's
6   electrocardiogram on the monitor. There were some changes on the EKG that I documented. I
7   showed these changes to Medical Doctor Sina Rachmani who read the EKG and agreed with my
8   EKG interpretation. It means that I did not make a mistake reading the patient's EKG, and a
9   Medical Doctor confirmed it. The patient died. I immediately reported to Mr. Harding that I had
10  reported the patient's EKG to Dr. Rachmani who agreed with my interpretation. After the
11  patient's death, I reported at three Root Cause Analysis (RCA) meetings that I had shown the
12  patient's EKG to Dr. Rachmani who agreed with my interpretation. It means that I did not
13  exhibit negligence towards the patient because I accurately documented changes on the patient's
14  EKG (I printed out rhythm strips with the periods of normal EKG and the periods with changes
15  on the EKG), I wrote my EKG interpretation, and the physician agreed with what I wrote.
16  Because I had a lower position (a Medical Technician) and Dr. Rachmani had a higher position
17  (a Medical Doctor), his opinion prevailed. For example, if any Registered Nurse read the EKG
18  differently, the opinion of a Medical Doctor would prevail over RN's interpretation. In my case,
19  my EKG interpretation and Dr. Rachmani's one were the same.
20          After the patient's death and three RCA meetings, I was allowed to continue performing
21  my duties as a Monitor Technician. During my employment with AHS, from the patient's death
22  until the moment of my termination, nobody ever said to me that I had exhibited negligence
23  towards the patient. My Certified Cardiographic Technician (CCT) certificate issued by
24  Cardiovascular Credentialing International (CCI) was not revoked or restricted, and it remained
25  active. I remained a part-time employee while working full-time. Assistant Manager Mr.
26  Masangkay gave me a good Letter of Reference dated August 21st, 2013 (Attachment 9). I did
27  not get any verbal warning, and I was not written up. All cases where healthcare providers really
28  expressed negligence towards the patient are subjects to an investigation. I remember how one

RN at Kaiser Permanente really exhibited negligence towards the patient, and the patient died. I worked during that shift, and I underwent an investigation as well as other employees of Kaiser Permanente who worked on that night. That RN was immediately fired from his job. His license was immediately revoked. After the patient died at AHS, I did not undergo any investigation due to negligence, and nobody started a lawsuit against me for professional negligence.

According to Code of Civil Procedure 340.5 (2), ""Professional negligence" means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital". I did not exhibit a negligent act because I accurately documented the changes on the patient's EKG. I did not exhibit any omission because my EKG reading was confirmed by a Medical Doctor. So, according to the law, I did not exhibit negligence to that patient or any other one.

If I really exhibited negligence (a negligent act or an act of omission), I would have been immediately fired for cause. AHS would revoke my CCT certificate, I would be written up, and it would stay on my personnel record, I would undergo a process of investigation which is different from RCA, probably I would be sued by the patient's relatives or AHS, the word "negligence" would be written in my Termination Letter, I would not get a good Letter of Reference, AHS would report the act of negligence to Employment Development Department (EDD), and I would not get my Unemployment Insurance benefits. In fact, AHS reported to EDD that a reason of my termination was "Probationary release"(Attachment 10), and I was getting Unemployment Insurance benefits (Attachment 11). Also, if I really exhibited negligence, I would not be hired by any healthcare facility. In fact, after being terminated from AHS, I was hired twice by the H.E.L.P agency for the position of an EKG Technician at Children's Hospital in Oakland in 2013 and by Albuquerque Veterans Affairs Medical Center in New Mexico for a full time position of a Medical Instrument Technician (EKG) (Attachment 12). Besides, I was hired by two caregiving agencies: In-Home Supportive Services in November 2016 and California Caregivers in January 2017. Before getting hired, I got my background

checked a few times and got my fingerprints dome three times in 2016 and 2017. If I exhibited medical negligence, it would stay on my permanent record, and I would not be privileged to take care of elderly people with being registered with the State of California (I have my HCA number), and I would not be privileged to serve veterans at the VA hospital.

In my letter to Ms. Daly (Attachment 13) dated June 18, 2014 and August 6, 2016, I listed these reasons why I did not exhibit negligence to the patient. However, Ms. Daly and her Supervisor Ms. Healy did not want to take into their consideration all these facts. They said that my evidence is not sufficient, and they never explained why all these facts that I listed are not sufficient. I asked them to give me written explanations but I got nothing. Ms. Daly even attempted to get me withdraw my case (Attachment 14). She did it not because she wanted to avoid a negative decision that would become a public record. She intentionally committed it because she wanted to support my retaliator AHS. If I withdrew my claim from DIR, I would lose an opportunity to file a lawsuit against AHS and get back what I am entitled to get (unpaid wages, reinstating me back to work and a financial compensation for moral damage).

In her letter dated June 16, 2014, Ms. Daly committed another libel (Code of Civil Procedure, 340 (c)). She said, "Moreover, it asserted you already knew you faced termination when you emailed your September 5, 2013 complaints. Therefore your emailed communication could not have triggered the termination. Finally, it explained why all your complaints lacked merit". This is a pure libel. Prior to sending my letter to Mr. Harding on September 05, 2013, I did not know that I "faced termination". Ms. Daly didn't explain to me how I should have known that I "faced termination".

Moreover, Supervisor Ms. Healy committed another libel (Code of Civil Procedure, 340 (c)). She accused me in missing an appointment with DIR on September 13, 2016 (Attachment 15). To the best of my knowledge, I never had an appointment with DIR on September 13, 2016. I asked Ms. Healy many times to send me proof that I was really scheduled an appointment with DIR on September 13, 2016 (Attachment 16) but I never got an answer.

In her email to me dated December 19, 2016, Ms. Healy notified me about her intention to deny my case (Attachment 15). She notified me that I would have to appeal to Director of

Complaint for Damages.

DIR. Ms. Baker within 10 (ten) days since receiving the Determination letter. I sent a few emails to Ms. Healy, and I provided her with my postal address in Mountain View, CA. I asked to send the Determination Letter to that address. However, I never got the letter. It means that Ms. Healy and Mr. Rood never sent it to me. It means that Ms. Healy and Mr. Rood committed negligence (California Civil Code Section 1714 (a)): "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself". Sources: http://statelaws.findlaw.com/california-law/california-negligence-laws.html  and http://codes.findlaw.com/ca/civil-code/civ-sect-1714.html#sthash.raYzJYCE.dpuf

Without getting the Denial letter, I was unable to appeal to Ms. Baker because I didn't know the date of the letter and I didn't know the text of the letter. I saw the letter only when I read a Motion to dismiss my case filed by Ms. Ng (Attachment 17).

In the Determination letter dated December 29th, 2016, employee of DIR Mr. Eric Rood committed another libel (Code of Civil Procedure, 340 (c)). The letter says, "You claim that your oral and written complaints caused Alameda Health to terminate you on September 7, 2013. However, Alameda Health denied your September 5, 2013 complaints led to your termination. It produced a September 4, 2013 email from your direct supervisor Dana LIttlepage, RN, announcing you would be let go from probation and seeking Human Resource's advice on next steps. This predated your September 5, 2013 letter to Harding". This is a pure libel. I don't know who Ms. Littlepage is. She was never my direct Supervisor. My direct Supervisors were Mr. Clerve and Mr. Harding. I never got any letter from Ms. Littlepage. I view the whole statement as a libel. Even if AHS wanted to terminate me from a probationary period for whatever reason, they would notify me in advance, at least in 10-14 days prior to their planned termination date. They would write in my Termination letter that I was released from a probationary period. In my Termination letter, AHS wrote that I was released from my employment due to discrepancies between acceptable employment standards and those I exhibited during my employment with AHS. I was fired in 20 minutes after the beginning of my shift without any warning. Mr. Harding

Complaint for Damages.

never explained to me what these alleged discrepancies are, and he never advised me to seek advice from Human Resources. Moreover, employees of DIR (Ms. Daly, Ms. Healy, Mr. Rood) never provided me and the Court with a copy of that alleged email from Ms. Littlepage. It means that this alleged email is a fiction and a libel.

In the Determination Letter dated December 29, 2016 Mr. Rood committed another libel (Code of Civil Procedure, 340 (c)). On page 2, Mr. Rood wrote: "On September 7, 2013 Alameda Health dismissed you for "discrepancies between acceptable employment standards and those you exhibited during your employment with us". The evidence established the patient died during your employment". First of all, neither Ms. Daly, nor both Ms. Healy and Mr. Rood together with AHS never specified how I was "guilty" in the patient's death. If Ms. Daly, Ms. Healy or Mr. Rood state that I was guilty in the patient's death, they should give me and the Court a written detailed explanation what were my specific actions that committed a negligent act or an act of omission which led to the patient's death. I never heard these explanations neither from Ms. Daly, Ms. Healy, Mr. Rood nor from AHS.  As I explained many times, I was not guilty in the patient's death. I showed the patient's EKG to Dr. Rachmani who said that I read the EKG correctly. During my employment with AHS, not only one patient died. Ms. Daly, Ms. Healy, Mr. Rood and AHS can't put blame on me for each patient who died in the facility.  I can list a number of omissions that I observed while working with Registered Nurses. I wrote these observations in my letter to Ms. Daly on June 18, 2014. In the case with that particular patient, I observed how the patient's nurse was standing for several minutes in a hallway next to the cardiac monitoring station and saying to the Charge Nurse that the patient was unconscious. To the best of my knowledge, the nurse was not supposed to leave an unconscious patient unattended in his room. If the nurse found the patient unconscious in his room, the nurse was never supposed to leave the room. She was supposed to immediately start performing CPR doing chest compressions and breaths and yelling for help. My observation was that the Registered Nurse: 1) left the unconscious patient alone in his room, 2) spent too much time (a few minutes which is critical for the unconscious patient) in the hallway staying next to the cardiac monitoring station and reporting to the Charge Nurse that the patient was unconscious. As a

Monitor Technician, the scope of my practice was to observe cardiac monitors. I accurately documented changes on the patient's EKG, reported them to Dr. Rachmani, and he said that my EKG reading was correct. That was the only I was legally allowed to do, and I did it. I was not allowed to leave my cardiac monitoring station, go to the patient's room and start performing CPR (Cardio-Pulmonary Resuscitation). So, Ms. Daly's and Mr. Rood's statements that I was fired because the patient had died are libels that puts dirt on my professional and personal reputation (Code of Civil Procedure, 340 (c)).

I can give you another incident of the patient's death during my employment with AHS. I don't exactly remember the date of the incident. I noticed that the patient's electrocardiography leads were off, and I didn't see the patient's electrocardiogram. I reported it to the RN and asked the RN to put the leads back on the patient. The RN ignored my request saying that s/he was busy and didn't have time to go to the patient's room. I repeated my request a few times with intervals of 10-15 minutes. The RN still refused to go to the patient's room and put the leads back. Finally, I heard that the patient was dying. The Code Blue team arrived, and they put the electrodes back on the patient's chest. I observed the patient's EKG which looked as a Normal Sinus Rhythm. In fact, the patient was dead. That discrepancy is called PEA – Pulseless Electrical Activity when the person is dead but the EKG still shows Normal Sinus Rhythm. In this case, like in the first case, I am no way to be considered guilty in the patient's death. In cases with PEA, there is no way for a Cardiac Monitor Technician to report any changes on the Electrocardiogram because there are no changes even if the patient is dead. It is a responsibility of a Registered Nurse to visit the patient's room frequently to make sure that the patient has a pulse and s/he is breathing. It is also the responsibility of the RN to comply with the Monitor Technician's request to put the leads back on the patient's chest in order to observe the patient's EKG. However, it is a problem with many nurses in many facilities.

The Monitor Technician observes cardiac monitors and interprets EKG but s/he doesn't go to the patient's room, checks the patient's pulse and breathing, doesn't have a right to see and evaluate lab results, and doesn't have a right to treat the patient. If the Technician observes changes on the EKG, the Technician is obligated to report these changes to a RN or a physician.

Complaint for Damages.

The RN or the Physician may confirm the EKG interpretation or deny it. The RN and the Physician may have different interpretations of the same Electrocardiogram. The Physician's opinion always prevails over the RN's opinion. Since the moment that the EKG Technician reported the changes, s/he is not liable for the next steps of the process of diagnosing and treatment. The RN or the Physician may still have a wrong interpretation but it is no longer the Technician's responsibility. If the Monitor Technician intentionally of by a fact of an omission does not report the changes, s/he is considered to commit a negligent act or an act of an omission, and s/he is liable for the process of diagnosing and treatment of the patient. Like I said many times before, I acted within my scope of practice. I documented changes on EKG and reported them to a physician. The physician agreed with my EKG interpretation. Therefore, nobody can say that I committed a negligent act or an act of the omission, and I am not liable for all next steps that occurred with the patient.

On the same page 2 of the Determination Letter, Mr. Rood committed a negligent act (California Civil Code Section 1714 (a)). Mr. Rood wrote: "You denied any negligence and noted Alameda Health kept you working as a monitor technician during the ensuing investigation, failed to stop your unemployment, and never reported you to state licensing. While these arguments are compelling, whether or not you performed negligently or others were responsible are issues well outside the Labor Commissioner's jurisdiction". Ms. Daly acted negligently by: 1) failing to ask AHS for a detailed explanation about what were my specific actions that constituted medical negligence (or what exactly was the negligent act or what was the act of omission that constituted medical negligence towards that particular patient. For example, I did not perform CPR, or I didn't inform an RN or an MD about the changes on the EKG, or was it something else?). The statement that "the patient died" is too broad. Ms. Daly must describe in detail my specific actions or acts of omission that led to the death of that particular patient, 2) failing to accept into her consideration all my explanations that I wrote in my letter dated June 18, 2014 and August 6, 2016, for example, my explanation that the Medical Doctor confirmed my correct EKG reading, 3) not meeting with all witnesses whom I listed in my June18, 2014 letter (   a) Mr. Adam Cole who can confirm that the word "medical

Complaint for Damages.

1   negligence" was never mentioned during the process of my termination on September 7, 2013, b)

2   Ms. Doniea Lawson who can confirm that she was also denied her affiliation to the Union and

3   was not paid promised shift differentials, c) Dr. Sina Rachmani who can confirm that I showed

4   the patient's EKG to him and he agreed with my interpretation, d) Ms. Alana Bell who can

5   confirm that after being fired from AHS I was hired by the H.E.L.P. agency to work as an EKG

6   technician at Children's hospital in Oakland, e) Human Resources of AHS who could give Ms.

7   Daly a copy of my Personal Record where I was never written up and where the word

8   "negligence" was never mentioned, f) Employment Development Department who could

9   confirm that I was getting Unemployment Insurance benefits and who could demonstrate that the

10  reason of termination that AHS gave was "Probationary release" and not "Medical Negligence"/)

11  Why did Ms. Daly ask me to provide a list of witnesses if she never attempted to interview

12  them? Why did Ms. Daly assume that AHS told her the truth about the reason of my termination?

13  The fact is that AHS retaliated and unlawfully terminated me for asking questions about unpaid

14  salary, breaks, and my part-status of employment while actually working full time. Of course,

15  AHS lied to the Labor Commissioner by saying that I committed negligence and the patient died.

16  AHS did it in order to avoid civil penalties for retaliation and unlawful termination. Ms. Daly's

17  direct responsibility was to investigate my case and suspect that AHS was lying. Ms. Daly didn't

18  perform her direct duties thus committing acts of negligence and omissions (California Civil

19  Code Section 1714 (a)).

20      On the same page 2 of the Determination Letter, Mr. Rood committed another negligent

21  act (California Civil Code Section 1714 (a)). Mr. Rood wrote: "On September 14, 2013 Alameda

22  Health dismissed your workplace complaints by pointing out public employees did not qualify

23  for daily overtime, you miscalculated the overtime given the employer's 24 hour workday; you

24  needed to, and could have, notified your supervisor about missing breaks; the additional 10

25  minute break ergonomic rule has not been applied since 2011; and your probationary status

26  disqualified you from any Collective bargaining Agreement (CBA) educational benefits. In the

27  claim you filed with the Labor Commissioner's Wage Adjudication unit office these issues were

28  dismissed for lack of jurisdiction". Yes, I got a letter from Mr. Dodson dated September 23, 2013

1    (not September 14, 2013) – see Attachment 18. In this letter, AHS attempted to answer my

2    questions that I asked Mr. Harding on September 5, 2013. However, AHS committed a lot of

3    negligent acts (California Civil Code Section 1714 (a)) and libel (Code of Civil Procedure, 340

4    (c)) in this letter. First of all, AHS was supposed to answer my questions before terminating me –

5    this is an act of negligence. Secondly, AHS committed a lot of libel. Here are examples:

    1)   In an attempt to answer my question about transitioning from a part-time employment

6            status to a full-time, AHS wrote (page 2 of the September 23, 2013 letter): "Full time

7            status is granted when there is a full time position available. Employees who work

8            extra shifts are not automatically made full time unless there is a union contract

9            clause governing such changes in status. The only such clause is in the SEIU General

10           Chapter MOU and requires a six month look back period. While you were employed

11           with AHS you were not represented by SEIU so this clause did not apply to you.

12           Further, if you had been an SEIU member while still employed with AHS, you had

13           not yet worked for the Health System for six months and would not have met the

14           necessary amount of time stipulated by this clause".

15   During my hiring process, I signed paper in Human Resources of AHS that I agreed

16   to be represented by the Union. After my employment started, I was informed that I

17   was not eligible to be represented by the Union, and the paper with my signature was

18   shredded. Thus, AHS broke a Federal law 29 U.S. Code § 157 - Right of employees

19   as to organization, collective bargaining, etc. (see citation above). This law doesn't

20   say that both county and public employees are not eligible for the Union

21   representation as well as specific types of workers such as Monitor Technicians.

22   Please, read Page 53 of Memorandum of Understanding between SEIU Local 1021 –

23   General Chapter and the Alameda County Medical Center, January 1, 2012 to March

24   31, 2014 (Attachment 3). "Conversion of Regular Part-Time Employees to Full-Time

25   Status. Any Part-Time employee who regularly works straight hours over his/her base

26   FTE for a period of 26 consecutive weeks shall, upon request, be converted to higher

27   FTE status provided that the extra hours or shifts are not replacing someone out or on

a leave who will return to the position". So, this document does not say that I must belong to the Union or a full time position must be available at AHS in order to become a full-time employee. So, this is an example of the libel (Code of Civil Procedure, 340 (c)).

2) Answering my questions about not received overtime payments, AHS wrote: "As a public employer, this state provision does not apply to AHS (see IWC 4-2001). We are obligated by law to pay time and a half only after 40 hours worked in any one week. This policy which you cited, HR policy 2.10 – Wage and hour terms and definitions was out of date. The current version is available on our intranet and reads (which was last revised in June, 2011)". In IWC 4-2001, there is no one word about **public employers**. IWC-4 says only about **State or any political subdivision thereof**, including any city, county or special district. I already explained above that this provision does not apply to AHS because it is not the State entity, not a political subdivision, not a city, county or special district. In the HR policy 2.10 – Wage and hour terms and definitions, there is no one word about overtime payments (pages 6 and 7 of Alameda County Medical Center, Human Resources, Policy and Procedure Manual). This document was on the Intranet while I was working at AHS. It means that the document was current. After AHS fired me, I lost access to Intranet. Therefore, everything AHS wrote in this paragraph is a libel (Code of Civil Procedure, 340 (c)).

3) On the same page, AHS wrote: "It does not stipulate that a work day is 8 hours as we employ many employees on a 12 hour shift schedule and our past practice establishes that these employees do not receive overtime unless they cross the 40 hours worked per week threshold. Again, these employees do not receive daily overtime for working more than 8 hours". AHS must follow California overtime law that I cited above. AHS has not demonstrated that it does not have to pay time and a half overtime premiums for working for more than 8 hours. So, this AHS's statement is a libel (Code of Civil Procedure, 340 (c))

Complaint for Damages.

4) When I requested to pay me for 2 hours that I spent at the RCA meeting, AHS said: "You will be paid 2 hours for this time worked". I believe I never got that payment in my final check. I was not also compensated for accrued vacation

5) Responding about shift differentials, AHS wrote: "As an unrepresented employee, the SEIU MOU did not apply to you. Your offer letter does not stipulate that you would receive the shift differentials you listed". Again, by denying my affiliation to the Union after I signed the agreement between SEIU MOU and me, AHS broke 29 U.S. Code § 157 - Right of employees as to organization, collective bargaining, etc. (see citation above). The offer letter did not say anything that only SEIU MOU represented employees are eligible to receive shift differentials. By intentionally denying my affiliation to the Union in order not to pay me promised shift differentials, AHS committed fraud. See California Code of Civil Procedure § 338(d). "An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake".

Also see *Sun'n Sand, Inc. v. United California Bank (1978) 21 Cal.3d 671, 701; Fox v. Ethicon Endo-Surgery, Inc. (2005) 35 Cal.4th 797, 808; Kline v. Turner (2001) 87 Cal.App.4th 1369, 1374*. Source:

http://www.christianattorney.net/statute_of_limitations_fraud_misreprentation_califor nia.html

The false promise (fraud) committed by AHS meets all descriptions of this category of fraud such as:

a) The defendant made a promise

b) The promise was important to the transaction

c) At the time he or she made the promise, the defendant did not intend to perform it

d) The defendant intended the victim to rely upon the promise

e) The victim reasonably relied upon the promise

f) The defendant did not perform the promise

Complaint for Damages.

g) The victim was harmed as a result of defendant not carrying out his or her promise

h) The victim's reliance on the defendant's promise was a substantial factor in causing the victim's harm

Source:

http://www.streetdirectory.com/travel_guide/13711/legal_matters/a_fraud_lawsuit_under_california_law.html

6) In an attempt to answer my question about missing breaks, AHS wrote: "As stated before, the SEIU MOU did not apply to you as an unrepresented employee. Frequently missed breaks are an issue that should have been addressed to your manager as soon as possible. You are entitled to two fifteen minute breaks and a 30 minute lunch break. If you have instances of missed lunch breaks, those should be substantiated and reported so you can be compensated. Missed 15 minute breaks, however, are already compensated". This statement is a libel (Code of Civil Procedure, 340 (c)). As a 12 hour employee, I was entitled to three 15 minute breaks and one 30 minute lunch break. Sometimes, I got three 15 minute breaks but most of the time I got only two. I complained orally to Mr. Clerve and Mr. Harding but nothing changed. After my written complaint, I was fired. These missed 15 minute breaks were supposed to be compensated at a rate of 1 hour of work for each missed break (29 CFR 785.18). Also, AHS broke Labor Code Section 226.7. The statement that these breaks were already compensated is a libel (Code of Civil Procedure, 340 (c)) because they were not. See a copy of my pay stub (Attachments 19 and 20) and a copy of my schedule confirming that I worked for 36 hours a week which is considered full time (Attachment 21).

7) Further, AHS wrote: "You were not a member of SEIU. When you worked for AHS your title was unrepresented. To become represented it needed to be claimed by SEIU, and while SEIU has recently done so, we are still in the negotiating process". Again, this statement is a libel (Code of Civil Procedure, 340 (c)). According to 29

Complaint for Damages.

1    U.S. Code § 157, I had a federal right to be represented by the Union. This law does

2    not say that the Union has to start the process for an employee in order to represent

3    him or her, and the Union has to initially negotiate this process with an employer.

4    8) In an attempt to answer my request to transfer me to a full-time position, AHS wrote:

5    "Given your recent release from employment with AHS these final questions are

6    irrelevant. However, please, be aware that education reimbursement would have

7    required approval from your manager prior to enrollment". The action of AHS firing

8    me in order to avoid transferring me to a full-time position which is eligible for

9    tuition reimbursement is a fraud (California Code of Civil Procedure § 338(d)).

10

11    After I signed my agreement to be represented by the Union, AHS committed fraud

12    (California Code of Civil Procedure § 338(d)) by denting my affiliation to the Union in order to

13    avoid transferring me to a full-time position with extended benefits, avoiding paying me shift

14    differentials and paying for my education. See the description of the fraud above.

15    Employee of DIR, DLSE Mr. Santos denied my wage claim on January 7, 2014

16    (Attachment 22). In his letter, Mr. Santos said that "the Division does not have jurisdiction over

17    claims for overtime, rest period premiums, differential pay, or waiting time penalties for county

18    employees. This case has been closed for lack of jurisdiction." Mr. Santos didn't cite any

19    provision of law that DLSE really doesn't have jurisdiction over claims for overtime, rest period

20    premiums, differential pay, or waiting time penalties for county employees. Thus, Mr. Santos

21    committed a negligent act (California Civil Code Section 1714 (a)). Also, Mr. Santos didn't give

22    me any written advice how I can pursue my rights to get paid promised shift differentials etc. It

23    is another negligent act (California Civil Code Section 1714 (a)). When I was hired by Alameda

24    County Medical Center, I did not sign any paper that I am a county employee, and the law for

25    county employees is different that for other employees. Mr. Santos broke Labor Code 98.6 (b)(1)

26    that says that an employee is entitled to " reimbursement for lost wages and work benefits caused

27    by those acts of the employer". Labor Code 98.6 does not say that the Division of Labor

28    Standards Enforcement does not have jurisdiction over county employees.

Complaint for Damages.

Ms. Daly, Ms. Healy and Mr. Rood are liable for reinstating me back to work at AHS and compensating me with all lost wages and benefits. See Labor Code 98.6 (b)(1): "Any employee who is discharged, threatened with discharge, demoted, suspended, retaliated against, subjected to an adverse action, or in any other manner discriminated against in the terms and conditions of his or her employment because the employee engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee has made a bona fide complaint or claim to the division pursuant to this part, or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the employer". Also, see Labor Code 98.6 (3): "In addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation".

Ms. Daly processed my claim for an enormous amount of time - more than three years and four months (from September 2013 to December 2016). Throughout all this time, I was not employed by AHS thus losing my salary and benefits, also losing my opportunities for advancement. I contacted Ms. Healy but she continued performing negligent acts, omissions and libel that Ms. Daly started. Ms. Healy libeled that I had missed my appointment on September 13, 2016, and she refused to send me proof that I really had that appointment. She also refused to give me a written explanation about why my evidence was not sufficient despite my numerous requests. She failed to send me a Determination letter to my address in Mountain View, CA. I was patiently waiting for a decision for over three years but I got a denial letter signed by Mr. Rood. Also, I got a denial letter from Mr. Santos without any explanations why DLSE doesn't have jurisdiction over public employees and what my next steps should be.

Because of all these actions committed by officials of DLSE, I suffered from:

1) Losing my health and dental insurance that I was getting from AHS. I had some health problems, and I went to Russia to solve these problems because I was uninsured in the USA. For solving my health problems, I stayed in Russia for 2.5

Complaint for Damages.

years. My salary in Russia was significantly less than my salary at AHS. I got into a huge debt to U.S. banks, and now I owe a lot of money to American banks (probably, about $20 thousand U.S. dollars) and my friends from whom I borrowed money (approximately, $25 thousand U.S. dollars) for my stay and medical treatment in Russia

2) Losing my life insurance that I was getting from AHS

3) Not performing my professional duties in the USA as a Monitor Technician, losing my professional reputation in the USA

4) Losing my personal reputation because I was accused in committing negligence towards the patient

5) Not having a chance to study in the United States to obtain a license of, for example, a Registered Nurse or a Physician Assistant. Before getting fired, I contacted with Samuel Merritt College about how I can become a Physician Assistant (PA). I was completing classes at Peralta Colleges in order for me to become a PA. Because I was fired and therefore I was forced to travel to Russia and stay there for 2.5 years, I lost that opportunity. So, I lost potential wages as a PA which are much higher than wages of Monitor Technicians

6) Not having a chance to purchase a house in the USA. While I was working at AHS, I investigated the opportunity to buy my own house. I contacted with the Unity Council in the East Bay, and I was promised to get twenty thousand U.S. dollars for purchasing my own house. I contacted with the Wells Fargo bank, and I was filling out application to get mortgage. I was fully qualified to get twenty thousand U.S. dollars from the Unity Council and the mortgage from the bank. I had no problems with IRS regarding my tax return forms in order for me to buy a house. Now, after being absent from the USA for a long time, not working in the USA and not filing out tax return documents, I am not qualified for purchasing my own home

7) I am in the same situation regarding purchasing my own car. Now, I am in a deep debt to U.S. banks and my friends. Before leaving to Russia, my credit history was

Complaint for Damages.

1    excellent. Now, no one bank will give me a loan to buy a car, a home, and a student

2    loan

3    Now, I am in the situation that I need to work for a few years (I think not less than 5-7

4    years) to pay my debt off to the U.S. banks and my friends, to work for three years to file IRS tax

5    return documents, to fully repair my credit history and get qualified to get a student loan and a

6    mortgage and a car loan. Also, I feel very morally damaged that I was retaliated and unlawfully

7    terminated for asking questions about unpaid wages, breaks, and about my part time employment

8    status while actually working full time.

9    Officials of DIR, DLSE Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood violated my

10    rights that I have pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution.

11    The Fifth Amendment says: "No person shall be held to answer for a capital, or otherwise

12    infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in

13    the land or naval forces, or in the Militia, when in actual service in time of War or public danger;

14    nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb;

15    nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of

16    life, liberty, or property, without due process of law; nor shall private property be taken for

17    public use, without just compensation."

18    Source: http://constitution.findlaw.com/amendments.html

19    The Fourteenth Amendment, Section 1 says: "All persons born or naturalized in the

20    United States and subject to the jurisdiction thereof, are citizens of the United States and of the

21    State wherein they reside. No State shall make or enforce any law which shall abridge the

22    privileges or immunities of citizens of the United States; nor shall any State deprive any person

23    of life, liberty, or property, without due process of law; nor deny to any person within its

24    jurisdiction the equal protection of the laws".

25    Source: http://constitution.findlaw.com/amendments.html

26    Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood deprived me of liberty and property.

27    Although the Eleventh Amendment shields unconsenting states from actions brought by

28    private parties (*Supreme Court: Hans v. Louisiana, 134 U.S. 1, 10, 10S. Ct. 504, 33L, Ed. 842*

Complaint for Damages.

1  (1890)), not all conduct my agents of the state is protected from litigation by the Eleventh

2  Amendment (*Supreme Court: Edelman v. Jordan, 415 U.S. 651, 94, 94 S. Ct. 1347, 39 L. Ed. 2nd*

3  *662 (1974)*).  Whether an action against a state official is barred by the Eleventh Amendment

4  depends largely on whether the action is brought against the official in the official's official or

5  personal capacity and on what type of relief is sought. Actions for money damages against state

6  officials in their official capacity are barred by the Eleventh Amendment (*Supreme Court:*

7  *Alabama v. Pugh, 438 U.S. 781, 98, 98 S. Ct. 3057, 57 L. Ed. 2nd 1114 (1978); Ex parte Ayers,*

8  *123 U.S. 443, 8, 8 S. Ct. 164, 31 L. Ed. 216 (1887); Hagood v. Southern, 117 U.S. 52, 6, 6 S. Ct.*

9  *608, 29 l. Ed. 805 (1886)*), but state officials acting in their official capacities can be subjected to

10 suit in federal court unprotected by Eleventh Amendment immunity when other kinds of relief

11 are sough (*Supreme Court: Kentucky v. Graham, 443 U.S. 159, 105, 105 S. Ct. 3099, 87 L. Ed.*

12 *2nd 114 (1985)* – official capacity actions for prospective relief and personal capacity actions for

13 damages against state official not barred by Eleventh Amendment; *Alabama v. Pugh, 438 U.S.*

14 *781, 98, 98 S. Ct. 3057, 57 L. Ed. 2nd 1114 (1978)* – inmate suit against state agency and state

15 officials in federal court for violation of Eight and Fourteenth Amendments dismissed by

16 Eleventh Amendment against state agency but not dismissed against state officials). On the other

17 hand, officials may be sued in their personal capacities regardless of the type of relief sought

18 (*Ninth Circuit: Demery v. Kupperman, 735 F. 2nd 1139 (9th Cir. 1984)* – action against state

19 officials in personal capacity not barred under 42 U.S. Code §1983 or by Eleventh Amendment).

20 Source: Trial Practice Series. Civil Actions Against State and Local Government, its Divisions,

21 Agencies and Officers. Second edition.

22       I am suing officials of Department of Industrial Relations, Division of Labor Standards

23 Enforcement: Ms. Catherine Daly, Ms. Joan Healy, Mr. Bobbit Santos and Mr. Eric Rood **in**

24 **their personal capacities.**

25       Government Code Section 820 says that:

26 a)       Except as otherwise provided by statute (including Section 820.2), a public

27          employee is liable for injury caused by his act or omission to the same extent

28          as a private person.

Complaint for Damages.

b)    The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person.

Source:

http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=820.&lawCode=GOV

In her Motion to dismiss my first Complaint, Ms. Ng tried to say that DLSE's employees are immune under Government Code Section 820.2 which says: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused".

In *Johnson v. State of California (1968) 69 Cal.2d 782,* the California Supreme Court granted review define the meaning of "discretionary acts" for which governmental entities are immune under Gov. Code §820.2. (the state official chose not to warn potential foster parents about the boy's medical, psychiatric and other institutional records). **This issue presented: Whether there is a duty of care** when government officials are involved, where they fail to warn of dangerous conditions. Or, as the defendants argued, whether the decision not to warn of dangerous conditions was a "discretionary" act, triggering Gov. Code §820.2 immunity. The Supreme Court held that the decision as to whether to advise of latent, dangerous characteristics in the youth did not constitute "the exercise of the discretion". As such, Gov. Code, § 820.2 immunity does not apply.

Johnson went further giving meaning to the term "discretionary" for future litigation.

First, stating that courts should not casually decree governmental immunity; through a literal interpretation of "discretionary" or otherwise, [that] 820.2 should not be made a "catchall section broadly encompassing every judgment exercised at every level.... [That,] to borrow the language of Justice Frankfurter ... [would be] to make the act `self-defeating by covertly imbedding the casuistries' of some of the pre-Muskopf cases." (*Sava v. Fuller, supra, 249 Cal.*

1  *App.2d 281, 291.*) [that the 1963 Tort Claims Act alter the basic teaching of *Muskopf v. Corning*

2  *Hospital Dist., supra,* 55 Cal.2d 211, 219 " (1961), **that when there is negligence, the rule is**

3  **liability, immunity is the exception.**"]

4      Next, stating that "the existence of... alternatives facing the employee does not perforce

5  lead to a holding that the governmental unit thereby attains the status of non-liability under

6  section 820.2. These alternatives may well play a major part in the resolution of the substantive

7  question of negligence; they do not, however, dispose of the threshold question of immunity.

8      Instead, the court distinguished between "planning" and "operational" levels of decision-

9  making (cf. *Dalehite v. United States, supra,* 346 U.S. 15, 35-36 [97 L.Ed. 1427, 1440-1441, 73

10  S.Ct. 956]), the latter not immune. [To maintain a Separation of Powers]

11  AND [furthermore] that "to be entitled to immunity the state must make a showing that such a

12  policy decision, [that] consciously balancing risks and advantages, took place. The fact that an

13  employee normally engages in `discretionary activity' is irrelevant if, in a given case, the

14  employee did not render a considered decision.

15  APPLYING THESE CONCLUSIONS TO THE CASE BEFORE IT, the Johnson Court found

16  the decision to grant parole to be the resolution of policy considerations, entrusted by statute to a

17  coordinate branch of government, that compels immunity from judicial reexamination.

18  However, to the extent that a parole officer consciously considers pros and cons in deciding what

19  information, if any, should be given the foster parents of latent dangers facing them, he makes

20  such a determination at the lowest, ministerial rung of official action, and no immunity applies.

21

22  SUBSEQUENT HISTORY:

23      "In *Barner v. Leeds (2000) 24 Cal.4th 676, 102 Cal.Rptr.2d 97, 13 P.3d 704*, this court

24  rejected a request by 59 California cities and towns that we reconsider and overrule our 1968

25  decision in Johnson, supra, *69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352*. We observed in

26  Barner that the principles set forth in Johnson reflected more than three decades of authoritative

27  precedent, and that the Legislature during that time had made no changes to the governmental

28

Complaint for Damages.

immunity provision of section 820.2 addressed in Johnson. (*Barner v. Leeds, supra, 24 Cal.4th at p. 685, fn. 2, 102 Cal.Rptr.2d 97, 13 P.3d 704.)*"  *Perez-Torres v. State 42 Cal.4th 136 (2007).*

Source: http://cal-tort.blogspot.com/2010/03/year-was-1968.html

I demonstrated all examples how officials of DLSE Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood demonstrated negligence during the investigation of my case. Under Johnson, they are not protected by Gov. Code §820.2, they are liable and not immune.

Statutes of limitations.

For the lawsuit against AHS, the general rules are:

1)  The statute of limitations to bring a suit for wage liabilities created by statute, including Labor Code violations, is three years (California Code of Civil Procedure § 338(a)

2)  The statute of limitations for wrongful termination based on a Labor Code violation is two years (California Code of Civil Procedure § 335.1).

However, the Plaintiff has no guilt that employees of DLSE processed my claim for an enormously long time – for over three years and four months. I was waiting for a decision, and I was hoping that Ms. Daly will take into her consideration all facts that I presented in my June 18, 2014 letter. After I sent this letter to her, Ms. Daly processed my claim for more than two years. I delivered the same letter to her office on August 6, 2016 after I returned back to California. It took five and a half more months for Ms. Daly to process my claim which is a considered a negligent act (California Civil Code Section 1714 (a)). When a case is under an investigation, all statutes of limitations must be tolled.

On July 27, 2016, in *Reginald Mitchell v. California Department of Public Health* *("Mitchell") (Superior Court Case No. BC550911)*, the Court of Appeal for the Second Appellate District held that the one year statute of limitations for filing a California Fair Employment and Housing Action ("FEHA") civil action **was equitably tolled while the** **employee's complaints were investigated**. Under the Court's ruling, an employee may have

Complaint for Damages.

substantially longer than one year to file a civil discrimination case against his or her employer. In Mitchell, the Court held that Plaintiff's Complaint was timely even though it was filed nearly three years after the DFEH issued its "right to sue" letter

In *Mitchell*, plaintiff was a health facilities investigator for the California Department of Health ("Department"). Plaintiff resigned from the Department in 2011 after filing internal complaints for race discrimination. Mitchell subsequently filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC referred the complaint to the California Department of Fair Employment and Housing ("DFEH"). Pursuant to California Government Code section 12965(b), employees must exhaust their administrative remedies with the DFEH and receive permission to sue in the form of a "right to sue" notice before they can file a civil lawsuit. The DFEH issued Mitchell a "right to sue" letter on July 9, 2011. The DFEH's letter stated that Mitchell had one year from July 9, 2011 to bring a civil lawsuit. The letter also stated that "pursuant to [California] Government Code section 12965, subdivision (d)(a), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint.

More than two years after the DFEH issued its "right to sue" letter, the EEOC issued a "letter of determination" stating there was "reasonable cause" to believe Mitchell had suffered racial discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq. (Title VII)). The EEOC was unable to settle the matter, and the United States Department of Justice issued a federal "right to sue" notice on March 21, 2014. Under federal law, an aggrieved employee only has ninety days to file a lawsuit after receiving a federal "right to sue" notice.

Mitchell filed a civil lawsuit for racial discrimination on July 8, 2014. The lawsuit was filed almost three years after the DFEH issued its "right to sue" notice, 11 months after the EEOC issued its "letter of determination" and 107 days after the issuance of the federal "right to sue"

Complaint for Damages.

notice. The Department demurred to Mitchell's Complaint arguing that it was barred by the 90 day federal statute of limitations time period. The trial court sustained the Department's demurrer without leave to amend.

The Court of Appeal reversed the trial court. The Court held that the one year time period triggered by the DFEH's issuance of a "right to sue" notice on September 9, 2011 was "equitably tolled" while the EEOC investigated Mitchell's allegations. The statute of limitations did not begin to run again until the EEOC issued its "letter of determination" on September 30, 2013. Since Mitchell's Complaint was filed less than a year after the issuance of the EEOC's "letter of determination," his Complaint was "timely" even though it was filed several years after the DFEH issued its notice, and 17 days past the expiration of the federal statute of limitations.

The *Mitchell* case is a reminder that employers need to consider more than just the statutory deadlines when calendaring the statute of limitations for employee discrimination lawsuits. As made clear by *Mitchell* and the cases it relies on, equitable factors can frequently extend the time period for filing a civil lawsuit. Thus, while the statutes provide "dates certain" for the period in which an employee must file his or her civil lawsuit, the courts will look carefully at the specific facts of the case and will exercise their equitable powers to permit employees to file claims that might be barred by the black letter of the statutes.

Source: http://www.jdsupra.com/legalnews/eeoc-investigation-can-toll-statute-of-33677/

**Summary**.

1) The District Court has jurisdiction over this Amended Complaint under diversity of citizenship and because it rises under the Constitution, laws and treaties of the United States

2) I am filing an Amended Complaint against AHS. I already listed Federal and State of California's provisions of law that AHS broke. I already demonstrated that applicable statutes of limitations must be tolled because my case was under the investigation

Complaint for Damages.

conducted by DIR, DLSE. I was retaliated and unlawfully terminated for asking questions about my workplace conditions, wages and overtime, breaks, my affiliation to the Union, occupational safety question, and I asked to make me a full time employee. I am asking the Court to get me reinstated back to work. Also, according to Labor Code 98.6 (b)(1), I am also asking the Court to order AHS to pay me all not received wages and benefits from September 7, 2013 to the moment when a Court will make a decision about my case. Also, according to Cal. Lab. Code §§ 201, 202, and 227.3, I am asking the Court to order AHS to pay a penalty for delaying my last pay check for almost one month. Labor Code Section 203(a) says: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days". Source: https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=LAB& sectionNum=203.

Also, I am asking the Court to order AHS to pay me additionally 10 thousand U.S. dollars as a penalty for discriminating and unlawfully terminating me according to Labor Code 98.6 (3). Also, according to California Civil Code 3294(a), I am asking the Court to grant me with a compensation for exemplary damages from AHS as much as 5 (five) million U.S. dollars. California Civil Code 3294(a) says: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant"

There is no maximum dollar amount of punitive damages that a defendant can be ordered to pay. In the case of *Liebeck v. McDonald's Restaurants (1994)*, 79-year-old Stella Liebeck spilled McDonald's coffee in her lap which resulted in second and

third degree burns on her thighs, buttocks, groin and genitals. The burns were severe enough to require skin grafts. Liebeck attempted to have McDonald's pay her $20,000 medical bills as indemnity for the incident. McDonald's refused, and Liebeck sued. During the case's discovery process, internal documents from McDonald's revealed the company had received hundreds of similar complaints from customers claiming McDonald's coffee caused severe burns. At trial, this led the jury to find McDonald's knew their product was dangerous and injuring their customers, and that the company had done nothing to correct the problem. The jury decided on $200,000 in compensatory damages, but attributed 20 percent of the fault to Liebeck, reducing her compensation to $160,000. The jury also awarded Liebeck $2.7 million in punitive damages, which was at the time two days of McDonald's coffee sales revenue. The judge later reduced the punitive damages to $480,000.

Source: https://en.wikipedia.org/wiki/Punitive_damages

3) I am filing this Amended Complaint against officials of DIR, DLSE Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood in their personal capacities. Therefore, these employees are not protected by the Eleventh Amendment to the Constitution and 42 U.S. Code §1983. Officials may be sued in their personal capacities regardless of the type of relief sought (see citation above). Therefore, am asking the Court to grant me with monetary compensations from each official: Ms. Daly - $200 thousand U.S. dollars, Ms. Healy - $200 thousand U.S. dollars, Mr. Santos - $200 thousand U.S. dollars and Mr. Rood - $200 thousand U.S. dollars for committing libel, negligence, and for violating my rights that I have under the Fifth and the Fourteenth Amendments to the U.S. Constitution. I explained in detail all acts of libel and negligence which led to severe financial, professional, personal, moral damages as well as damages of my health.

4) This is an Amended Complaint. When I filed my first Complaint on December 29, 2016, Honorable Judge Laurel Beeler granted my application to proceed *in forma pauperis,* and my first complaint was delivered to defendants AHS and DIR (DLSE)

Complaint for Damages.

by the U.S. Marshals. Because this is an Amended Complaint, and I am suing officials of DIR, DLSE Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood, I am asking the Court to order the U.S. Marshals to deliver the Amended Complaint to Defendants Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood.

**A list of attachments.**

Attachment 1 – Offer letter

Attachment 2 –Alameda County Medical Center, Human Resources, Policy and Procedure Manual

Attachment 3 - Memorandum of Understanding between SEIU Local 1021 – General Chapter and the Alameda County Medical Center, January 1, 2012 to March 31, 2014

Attachment 4 – my letter to Mr. Harding dated September 5th, 2013

Attachment 5 – Termination letter dated September 7, 2013

Attachments 6 – my final pay check

Attachment 7 – the envelope from my final pay check, the date on the envelope is October 4, 2013. I got it in mail on October 5, 2013

Attachment 8 - Ms. Daly's letter to me dated June 16, 2014

Attachment 9 – a Letter of Reference from Mr. Masangkay dated August 21, 2013

Attachment 10 – a letter from Employment Development Department. AHS stated a reason of my termination as "Probationary Release" and not "Negligence"

Attachment 11 – form 1099G from Employment Development Department confirming that I was receiving Unemployment Insurance benefits after being terminated from AHS

Attachment 12 – Letter from Albuquerque Veterans Affairs Medical Center confirming my appointment for a full time position of a Medical Instrument Technician (EKG) starting April 2nd, 2017

Attachment 13 – my letter to Ms. Daly dated June 18, 2014 and August 6, 2016

Attachment 14 - Ms. Daly's withdrawal form

Complaint for Damages.

1     Attachment 15 – Ms. Healy's email dated December 19, 2016 where she accused me in

2   missing an appointment with DIR on September 13, 2016 and where she notified me about her

3   decision to deny my case

4     Attachment 16 – four my emails to Ms. Healy dated December 20, 2016, December 29,

5   2016, again December 29, 2016, January 1, 2017 where I asked to prove me that I really had an

6   appointment on September 13, 2016 and where I asked to explain why my evidence was not

7   sufficient

8     Attachment 17 – Determination letter from DLSE dated December 29, 2016

9     Attachment 18 – a letter from Mr. Dodson dated September 23, 2013

10     Attachments 19 and 20 – a copy of my pay stub

11     Attachment 21 – a copy of my schedule confirming that I worked for 36 hours a week

12     Attachment 22 – a letter from Mr. Santos denying my wage claim without any citation of

13   the law and without any instructions what my other options are."

14

15     54. Please, see my Verification at (**Doc. No. 40-23, ER 07414 Vol. 3, page 616, lines 25-**

16   **28**), "I, Plaintiff Tatyana Drevaleva, declare under the penalty of perjury that everything I wrote

17   in my Amended Complaint is true and correct.

18     Date: April 10, 2017

19     Tatyana E. Drevaleva."

20

21     55. On May 10, 2017, Clerk of the U.S. District Court for the Northern District of

22   California Ms. Felicia Reloba issued a Summons to Defendants Ms. Daly, Ms. Healy, Mr.

23   Santos, and Mr. Rood as follows (**ER 07414 Vol. 4, page 680**), "**SUMMONS IN A CIVIL**

24   **ACTION**

25     *To: (Defendant's name and address)*

26         Catherine Daly; Joan Healy; Bobbit Santos; Eric Rood

27         Department of Industrial Relations, Division of Labor Standards Enforcement

28         1515 Clay Street, Suite 801

Complaint for Damages.

Oakland, CA 94612."

56. Please, notice that the Clerk Ms. Reloba erroneously listed the same address 1515 Clay Street, Suite 801, Oakland, CA 94612 for all four Defendants Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood.

57. Please, notice that on May 10, 2017 Clerk Ms. Reloba requested the U.S. Marshals Service to serve a Summons to Defendant Ms. Catherine Daly to the following address see (**ER 07414 Vol. 4, page 682**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

58. Please, notice that on May 10, 2017 Clerk Ms. Reloba requested the U.S. Marshals Service to serve a Summons to Defendant Ms. Joan Healy to the following address see (**ER 07414 Vol. 4, page 684**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

59. Please, notice that on May 10, 2017 Clerk Ms. Reloba requested the U.S. Marshals Service to serve a Summons to Defendant Mr. Eric Rood to the following address see (**ER 07414 Vol. 4, page 686**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

60. Please, notice that on May 10, 2017 Clerk Ms. Reloba requested the U.S. Marshals Service to serve a Summons to Defendant Mr. Bobbit Santos to the following address see (**ER 07414 Vol. 4, page 688**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

61. Please, notice that on May 15, 2017 the U.S. Marshals Service acknowledged a receipt of the Summons to Ms. Catherine Daly to the following address see (**ER 07414 Vol. 4, page 706**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

62. Please, notice that on May 10, 2017 the U.S. Marshals Service acknowledged a receipt of the Summons to Ms. Joan Healy to the following address see (**ER 07414 Vol. 4, page 704**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

Complaint for Damages.

63. Please, notice that on May 10, 2017 the U.S. Marshals Service acknowledged a receipt of the Summons to Mr. Eric Rood to the following address see (**ER 07414 Vol. 4, page 705**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

64. Please, notice that on May 10, 2017 the U.S. Marshals Service acknowledged a receipt of the Summons to Mr. Bobbit Santos to the following address see (**ER 07414 Vol. 4, page 703**): Department of Industrial Relations, 1515 Clay Street, Suite 801, Oakland, CA 94612,

65. Please, notice that on May 16, 2017 Attorney Ms. Ng issued a Case Management Statement on behalf of Defendant (**ER 07414 Vol. 4, page 712, lines 22-23**) "the Department of Labor Standards Enforcement (DLSE) of the California Department of Industrial Relations (DIR)" and on behalf of Defendant (**ER 07414 vol. 4, page 715, lines 19-20**) "LABOR COMMISSIONER OF THE STATE OF CALIFORNIA" despite I explicitly excluded Defendant the Department of Industrial Relations from the list of Defendants in my April 10, 2017 Amended Complaint, despite I never named the Division of Labor Standards Enforcement and the Labor Commissioner Ms. Julie Su as Defendants in my Original December 29, 2016 Complaint (**ER 07414 Vol. 1, page 2**), and despite I named Defendants Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood in my April 10, 2017 Amended Complaint, see (**ER 07414 Vol. 2, page 264.**)

66. Please, read Ms. Ng's May 16, 2017 Case Management Statement (**ER 07414 Vol. 4, pages 711-715**), "

STATE OF CALIFORNIA

Department of Industrial Relations

Division of Labor Standards Enforcement

DORIS NG, State Bar No. 169544

455 Golden Gate Avenue, 9th Floor

San Francisco, California 94102

Tel.: (510) 285-1634

Fax: (415) 703-4807

E-mail: dng@dir.ca.gov

Complaint for Damages.

1    Attorneys for Defendant LABOR COMMISSIONER OF THE

2    STATE OF CALIFORNIA

3

4    TATYANA EUGENIVNA DREVALEVA,

5    Plaintiff,

6    vs.

7    ALAMEDA HEALTH SYSTEM;

8    DEPARTMENT OF INDUSTRIAL RELATIONS,

9    Defendants.

10

11   CASE MANAGEMENT STATEMENT

12       DATE: May 25, 2017

13       Time: 11:00 a.m.

14       Courtroom: C; 15th Floor

15       Judge: Magistrate Judge Laurel Beeler

16       Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the

17   Standing Order for all Judges of the Northern District of California, the Department of Labor

18   Standards Enforcement (DLSE) of the California Department of Industrial Relations (DIR)

19   hereby submits this Case Management Statement.

20                          **1. JURISDICTION AND SERVICE**

21       Defendant DLSE/DIR asserts that this Court lacks subject matter jurisdiction. Defendant

22   DLSE/DIR filed a motion to dismiss, which was granted on March 21, 2017. <u>Plaintiff filed an</u>

23   <u>Amended Complaint, but that Complaint does not name the DLSE or the DIR.[1] Accordingly,</u>

24   <u>Defendant DLSE/DIR requests that the Court order DLSE and DIR dismissed from this action.</u>

25       [1] The Amended Complaint names several individuals who work for the DLSE, in their

26   individual capacity. It appears that these newly named Defendants have not been personally

27   served.

28                                **2. FACTS**

Complaint for Damages.

Ms. Drevaleva's Complaint alleges that she was terminated from her employment with Defendant Alameda Health System. She filed a retaliation claim with the DLSE, alleging that she was fired for having complained about various wage-related and health and safety-related issues. The DLSE investigated the claim and found against Ms. Drevaleva. She filed the instant action in federal court against the DLSE and her former employer.

### 3. LEGAL ISSUES

The Court found that Ms. Drevaleva "does not state plausible federal claims, and the court thus dismissed her complaint for lack of federal subject-matter jurisdiction." ECF No. 36 at p. 1 (Order dated 3/21/17). The Court dismissed the complaint with leave to amend. The Plaintiff has since amended her complaint (ECF No. 40) such that the DLSE and DIR are no longer named as Defendants; accordingly, the DLSE and DIR hereby request an order dismissing them from the action.

### 4. MOTIONS

Defendant Alameda Health Systems filed a motion to dismiss the Amended Complaint. This motion will be heard on June 1, 2017.

### 5. AMENDMENT OF PLEADINGS

Plaintiff Drevaleva filed an Amended Complaint against Defendant Alameda Health System (ECF No. 40), and several individuals who are employed at the DLSE/DIR, in their individual capacity, but she has yet to personally serve these individuals.

### 6. EVIDENCE PRESERVATION

The DLSE has taken positive steps to preserve evidence related to the issues presented in this case.

### 7. DISCLOSURES

The parties have not yet exchanged Initial Disclosures in compliance with Federal Rule of Civil Procedure 26, as set forth in the Court's Order dated March 20, 2017 (ECF No. 35), which stayed compliance until the stay is lifted.

### 8. DISCOVERY

Complaint for Damages.

The parties have not discussed or engaged in discovery, as set forth in the Court's Order dated March 20, 2017 (ECF No. 35), which stayed meet and confer regarding a discovery plan until the stay is lifted.

## 9. CLASS ACTIONS

Not applicable.

## 10. RELATED CASES

To the DLSE/DIR's knowledge, there are no related cases currently pending before any court or administrative body.

## 11. RELIEF SOUGHT

Plaintiff's original complaint sought monetary and other relief from the Defendants. Defendant DLSE/DIR is not named in the Amended Complaint, so no relief is sought in the Amended Complaint against Defendant DLSE/DIR.

## 12. SETTLEMENT AND ADR

The parties have not discussed ADR and settlement, as set forth in the Court's Order dated March 20, 2017 (ECF No. 35), which stayed ADR deadlines until the stay is lifted.

## 13. CONSENT TO A MAGISRATE

All parties have consented to a magistrate judge for trial and entry of judgment.

## 14. OTHER REFERENCES

Not applicable.

## 15. NARROWING OF ISSUES

Not applicable.

## 16. EXPEDITED TRIAL PROCEDURE

Not applicable.

## 17. SCHEDULING

Not applicable.

## 18. TRIAL

Not applicable.

## 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Complaint for Damages.

None.

## 20. OTHER MATTERS

None.

DATED: May 16, 2017     Respectfully submitted,

By: /s/ Doris Ng

DORIS NG

Attorneys for Defendant LABOR COMMISSIONER OF THE STATE OF CALIFORNIA."


67. On June 02, 2017, Attorney Ms. Ng conspired with Attorneys Mr. Travelstead and Ms. Julie Cho who falsely represented Defendant the Alameda Health System, and both Ms. Ng issued a document named (**ER 07414 Vol. 4, pages 721-724**), "**DEFENDANTS' STIPULATED REQUEST FOR CONTINUANCE OF CASE MANAGEMENT CONFERENCE AND CASE MANAGEMENT STATEMENT DEADLINE (LOCAL RULE 16-2(D))**

     Courtroom: C, 15th Floor

     Judge: Magistrate Judge Beeler

     Pursuant to Civil Local Rule 16-2(D), the Defendants hereby stipulate and respectfully request that the Court continue the Case Management Conference currently scheduled for July 27, 2017 on the grounds that counsel for Defendant Division of Labor Standards Enforcement (DLSE) has a previously scheduled engagement in Los Angeles on that date.

The Defendants declare in support of this request:

1. On May 16, 2017, the Court continued the previously scheduled Case Management Conference to July 27, 2017 at 11:00 a.m.

2. On May 17th, counsel for the DLSE asked Counsel for Defendant Alameda Health System and the Plaintiff, in pro per, whether they would agree to continue the Case Management Conference from July 27th to August 10, 2017 because counsel for DLSE was scheduled to be in

Complaint for Damages.

Los Angeles on July 27th. Counsel for Defendant Alameda Health System agreed to continue the CMC until August 10th to accommodate counsel's scheduling conflict. Plaintiff indicated that she was unsure. A week later, counsel for DLSE again inquired of Plaintiff, but received the same response.

**IT IS SO STIPULATED AND AGREED BY DEFENDANTS**

DATED: June 2, 2017              Respectfully submitted,

By: /s/ Doris Ng

DORIS NG Attorney for Defendant California Division of Labor Standards Enforcement (DLSE)

DATED: June 2, 2017

By: __/s/ Timothy Travelstead_____

TIMOTHY C. TRAVELSTEAD

JULIE CHO

Attorneys for Defendant ALAMEDA HEALTH SYSTEM

**ATTESTATION**

I, Doris Ng, am the ECF User whose identification and password are being used to file DEFENDANTS' STIPULATED REQUEST FOR CONTINUANCE OF CASE MANAGEMENT CONFERENCE AND CASE MANAGEMENT STATEMENT DEADLINE (LOCAL RULE 16-2(D)). In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that I have obtained concurrence regarding the filing of this document from the above indicated signatories.

DATED: June 2, 2017

By: __/s/ Doris Ng_____

Doris Ng

Attorney for Defendant Division of Labor Standards Enforcement."

Complaint for Damages.

1    68. On June 07, 2017, Magistrate Judge Ms. Laurel Beeler issued a document named (**ER**

2    **07414 Vol. 4, pages 725-737**) "ORDER ON [Granting the Alameda Health System's] MOTION

3    TO DISMISS." Please, read this Order (**ER 07414, Vol. 4, from page 726, line 17 to page 727,**

4    **line 16**), "INTRODUCTION

5        **1.**

6        This is an employment dispute. Plaintiff Tatyana Drevaleva is an electrocardiogram

7    technician who was fired from her position with defendant Alameda Health Systems (AHS) for

8    alleged negligence. She sues AHS mainly for retaliatory discharge; she claims that AHS fired her

9    after she asked about overtime pay, work breaks, and whether she would be transferred to the

10   status of a full-time employee.[1] Her initial complaint also sued the California Department of

11   Industrial Relations – Division of Labor Standards Enforcement ("DIR" or the "Department"),

12   based on that agency's investigation of her termination. The Department found insufficient

13   evidence that AHS had fired Ms. Drevaleva wrongfully.[2]

14       [1] *See generally* Am. Compl. – ECF No. 40. Record citations refer to material in the

15   Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the

16   top of documents.

17       [2] The Department treats the DIR and the DLSE as distinct entities. See ECF No. 52 at 2

18   (¶ 1). That is undoubtedly correct. For present purposes, though, it is unimportant to distinguish

19   between them. This order thus speaks of the two as the unitary "Department" or "DIR" and

20   intends its reasoning and conclusions to apply equally to both.

21       **2.**

22       In March 2017, this court dismissed the plaintiff's initial complaint under Rules 12(b)(1)

23   and (6).[3] The court held that there was no federal subject-matter jurisdiction and that the plaintiff

24   had failed to state a viable claim against the defendants. It also held that the Department was

25   immune from suit under the Eleventh Amendment to the U.S. Constitution.[4] The court gave the

26   plaintiff leave to amend her complaint. She has since done so.5

27       [3] Order – ECF No. 36 at 3–5.

28       [4] Id. at 4.

Complaint for Damages.

[5] Am. Compl. – ECF No. 40. References to the —complaint are to the operative amended complaint unless otherwise noted.

**3.**

The new complaint makes only the following significant changes. First, the plaintiff alleges that she has moved from California to New Mexico. Second, she appears not to name the DIR itself.[6] Third, she has added five employees of DIR as new, individual defendants. (This, presumably in response to the court's observation that the Department could be liable despite Eleventh Amendment immunity "only upon a showing of personal participation by an individual defendant."[7]) These new defendants have not been served.[8]

[6] *See id.* at 1–2.

[7] *See* Order – ECF No. 36 at 4 (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

[8] The court has authorized service on the individual defendants; the U.S. Marshals Service is in the process of executing service. See ECF Nos. 48, 55. The court returns to this point later in the order."

69. Read the June 07, 2017 Order (**ER 07414 Vol. 4, from page 728, line 23 to page 729, line 1**), "Defendant DIR has not so moved; but, in a case-management statement, it suggests that the new complaint does not name the Department itself as a defendant, and asks that it be "dismissed from this case."[14]

[14] ECF No. 52 at 2 (¶ 1). "

70. Read the June 07, 2017 Order (**ER 07414 Vol. 4, page 729, line 6-22**), "Turning to the DIR defendants: The new complaint indeed seems not to name the Department itself as a defendant. Both the complaint's caption and its narrative description of the litigants names the individual "officials" of the DIR, but not the Department itself.[15] Furthermore, the plaintiff has not shown that DIR itself can be liable in the face of Eleventh Amendment immunity. Even if the

Complaint for Damages.

1   Department itself is a target of the amended complaint, then, any claims against it remain

2   dismissed under the court's previous order.

3       The plaintiff's recent move to New Mexico means that she apparently has diversity

4   jurisdiction over the individual DIR-employee defendants. See infra, Analysis, Part 2. As noted

5   above (supra, note 8), the court has ordered service on the individual defendants, but the U.S.

6   Marshals Service has not yet effected that service. Normally in such cases, the pro se plaintiff

7   provides the marshals with service addresses for the defendants. The plaintiff here seems to have

8   provided the address of the DLSE's Oakland office.[16] The court is not certain that this qualifies

9   as an adequate service address. The court will, in any case, follow up with the Marshals Service

10  on the status of serving the new defendants. The court is not prepared to address whether the

11  plaintiff alleges a viable claim against the new defendants without their responsive input. With

12  respect to the individual DIR–DLSE defendants, the court asks the Department for the

13  clarification described at the end of this order.

14      [15] *Compare Compl.* – ECF No. 1 at 1 *with* Am. Compl. – ECF No. 40 at 1–2.

15      [16] See ECF No. 55."

16

17      71. Read the June 07, 2017 Order (**ER 07414 Vol. 4, page 733, line 14 to page 734, line**

18  **2**), "**1.6 Due Process — 14th Amendment**

19      The federal-question discussion now switches from AHS to the individual DIR

20  defendants. The plaintiff claims that, in how they investigated her grievance against AHS, the

21  DIR-employee defendants violated her right to due process under the Fourteenth Amendment to

22  the U.S. Constitution.[26] This claim is lodged against the new individual defendants only —in

23  their personal capacities.[27] The plaintiff does not raise a due-process claim against AHS or the

24  DIR itself.[28]

25      In connection with this claim the plaintiff cites 28 U.S.C. §§ 1343 and 1357. Neither

26  statute relates to anything going on in this case. If her due-process claim rests only on these

27  statutes, there is no merit to it.

28

Complaint for Damages.

1   On the basis of the material before it, though, the court thinks that a response from the

2   individual defendants is necessary before it addresses whether Ms. Drevaleva has a minimally

3   viable due-process claim against any of the DIR–DLSE employees. As of this writing, again,

4   although the court has ordered service of process, these defendants have not yet been served.

5       [26] *See* Am. Compl. – ECF No. 40 at 27.

6       [27] *Id.* at 27–29.

7       [28] See *id.*"

8

9   72. Read the June 07, 2017 Order (**ER 07414 Vol. 4, from page 734, line 8 to page 735,**

10  **line 21**), "**2. Diversity Jurisdiction — Individual DIR–DLSE Employees**

11      Diversity jurisdiction presents a more nuanced issue. The court did not have diversity

12  jurisdiction over the original defendants (AHS and DIR) and would not have it over those

13  entities now. By contrast, the court apparently can exercise diversity jurisdiction over the newly

14  added defendants.

15      In opposing the motion to dismiss, the plaintiff writes: "I was a resident of California

16  since 2004 to April 2nd, 2017 . . . . When I filed my first complaint, I was not diverse from

17  defendants AHS and DIR who both resided in California. When I moved to New Mexico on

18  April 2nd, 2017, I became fully diverse from defendants AHS and officers of DIR."[29]

19      This statement correctly recognizes that the plaintiff was not diverse from the defendants

20  when she filed her original complaint, so that there was no federal jurisdiction under 28 U.S.C. §

21  1332. In suggesting that her April 2017 move to New Mexico cured that jurisdictional defect,

22  however, the plaintiff errs.

23      Diversity jurisdiction depends on the —state of things‖ when the initial complaint is filed.

24  *E.g., Grupo Dataflux v. Atlas Global Group LP*, 541 U.S. 567, 574–75 (2004); *Morongo Band of*

25  *Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). That the

26  plaintiff changed her residence before filing an amended complaint does not change this —time

27  of filing‖ rule; diversity jurisdiction still depends on the facts that existed when the plaintiff filed

28  her original complaint. *See, e.g., Grupo Dataflux*, 541 U.S. at 574–75.

Complaint for Damages.

The only relevant deviation from this rule concerns the newly added defendants. With respect to the individual DIR employees that the plaintiff has added in her amended complaint, diversity jurisdiction depends on the facts as they stood when the amended complaint was filed. *China Basin Props., Ltd. v. Allendale Mut. Ins. Co.*, 818 F. Supp. 1301, 1302 (N.D. Cal. 1992); *see Lewis v. Lewis*, 358 F.2d 495, 502 (9th Cir. 1966) (no jurisdiction over new defendants where plaintiff's pre-amendment change of residence destroyed complete diversity). With respect to the continuing defendant, AHS, then, there is not complete diversity. There is not complete diversity despite the plaintiff's move to New Mexico. *See Grupo Dataflux*, 541 U.S. at 574–75. With respect to the new defendants, however, there is complete diversity. The plaintiff's New Mexico residence at the time of the amendment here controls — and obviously makes her diverse from the California-based individual defendants.[30] A leading treatise, citing the Ninth Circuit's decision in Lewis, supra, explains the matter in terms that apply exactly here:

> [A]lthough a party's post-filing change of citizenship is irrelevant with respect to the diversity of the original parties, it is relevant with respect to new parties. For example, *if a plaintiff changes citizenship and then amends the complaint to add a new defendant* against whom no claims were made in the original complaint, diversity between the plaintiff and the new defendant will be based on the *plaintiff's citizenship at the time of the amendment.*

15 D. Coquillette *et al., Moore's Federal Practice* § 102.16[2][b][ii] (2015 ed.) (citing *Lewis*, 358 F.2d at 502) (emphases added).[31]

The amount in controversy is alleged to be greater than $75,000. Thus, there is apparent diversity jurisdiction over any viable claim that the plaintiff brings against the new defendants. *See China Basin Properties*, 818 F. Supp. at 1302; *Lewis*, 358 F.2d at 502.

[29] ECF No. 47 at 11 (emphasis removed).

[30] For now, the court assumes that the individual defendants are California residents. Subject-matter jurisdiction can be tested at any stage in a lawsuit, of course, so if this assumption proves wrong, there will be opportunities to revisit the jurisdictional holding.

[31] Cases have mostly dealt with the roughly converse situation: Where the post-filing addition of a party destroys diversity jurisdiction. The implication for this discussion being that,

Complaint for Damages.

in such cases, diversity (at least for claims against the new party) is tested at the time of amendment. *See, e.g., Owen Equip. Erection Co. v. Kroger*, 437 U.S. 365 (1978); *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 140–41 (1st Cir. 2004)."

73. Read the June 07, 2017 Order (**ER 07414 Vol. 4, page 736, lines 1-14**), "**3. State-Law Claims**

.....

With respect to the DIR–DLSE itself, again, the plaintiff appears not to name it in her new complaint and thus to have dropped the Department from this lawsuit.

The plaintiff has established diversity (and possibly federal-question) jurisdiction for her claims against the newly added DIR-employee defendants. To the extent that her state-law claims are lodged against the individual DIR defendants, some further thoughts might guide future proceedings in this case.

The Department's status as a governmental entity has several important effects on the plaintiff's claims. First, a damages suit cannot be maintained against a public entity or its employees unless the complainant has first filed a timely written claim with the defendant and the latter has rejected this claim. *See generally* Cal. Gov't Code §§ 900.4, 905. The plaintiff does not allege that she presented her claims to the DIR before suing it or its employees."

74. Read the June 07, 2017 Order (**ER 07414 Vol. 4, from page 736, line 24 to page 737, line 7**), "**CONCLUSION**

This court does not have subject-matter jurisdiction of the claims against defendant AHS. The claims against AHS are therefore dismissed without prejudice. The plaintiff does not seem to name the DIR–DLSE itself in her new complaint. Under the court's previous order, then, there are no remaining claims in this lawsuit against the DIR itself. The court cannot now say whether the plaintiff states viable due-process and state-law claims against the newly added, individual DIR-employee defendants. Those questions are better addressed after the new defendants have responded to the amended complaint — including making any argument on diversity

Complaint for Damages.

jurisdiction. In these circumstances, the court asks the Department to do the following: Within 14 days of the date of this order, file a short status update explaining whether: (1) DIR's counsel will also be representing the individual defendants; and, if DIR's attorneys will represent the new defendants, (2) whether those defendants will consent to magistrate jurisdiction."

75. On June 07, 2017, Attorney Ms. Ng issued a document named (**ER 07414 Vol. 4, pages 738-740**) "DIVISION OF LABOR STANDARDS ENFORCEMENT'S STATUS UPDATE PURSUANT TO COURT REQUEST,

Pursuant to the Court's Request (ECF #58 at p. 12), the California Division of Labor Standards Enforcement (DLSE) submits the following status update:

1. The DLSE intends to assign the same DLSE counsel to represent the four individual DLSE employees who have been named in Plaintiff's Amended Complaint;

2. The four individual DLSE employees named by Plaintiff, Bobit Santos, Catherine Daly, Joan Healy and Eric Rood, consent to magistrate jurisdiction;

3. As of today's date, only Mr. Santos has been served, however, in the interest of efficiency and judicial economy, the DLSE intends to file a joint Motion to Dismiss or similar motion on behalf of all four DLSE Defendants.

DATED: June 7, 2017                    Respectfully submitted,

By: /s/ Doris Ng

DORIS    NG    Attorney    for    Defendant California    Division    of    Labor    Standards Enforcement (DLSE)."

76. I am reminding that Attorney Ms. Ng was directly employed by the Department of Industrial Relations, and Ms. Ng was not directly employed by the Division of Labor Standards Enforcement of the Department of Industrial Relations. I am reminding that Attorney Ms. Ng was not an in-house Counsel within the meaning of the California Government Code Section

Complaint for Damages.

11040(b)(1.) I am reminding that Attorney Ms. Ng didn't have any right to represent employees of the Division of Labor Standards Enforcement (the DLSE) Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood in a judicial proceeding, see the California Government Code, Section 11042(a) and 11041. Regardless, Attorney Ms. Ng criminally appeared on behalf of Defendants employees of the DLSE Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood in my Amended Complaint.

77. Moreover, there was no evidence that employees of the DLSE Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood *themselves* consented to be represented by Attorney Ms. Ng in my Amended Complaint No. 3:16-cv-07414-LB. Regardless, Attorney Ms. Ng criminally appeared on behalf of employees of the DLSE Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood in my Amended Complaint No. 3:16-cv-07414-LB without obtaining Consents of Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood for legal representation.

78. Please, notice that only Defendant Mr. Bobit Santos was served with a Summons and with my Amended Complaint (Doc. No. 74, **ER 07414 Vol. 5, page 817**.) Please, notice that three other Defendants Ms. Daly, Ms. Healy, and Mr. Rood were never served with a Summons and with my Amended Complaint No. 3:16-cv-07414-LB (Doc. No. 73, **ER 07414 Vol. 5, pages 812-815**.) Please, notice that Defendants Ms. Daly, Ms. Healy, and Mr. Rood never waived a service of the Summons.

79. Regardless, Attorney Ms. Ng claimed that Defendants Ms. Daly, Ms. Healy, and Mr. Rood waived a service of the Summons.

80. Please, notice that all four Defendants Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood never consented themselves for Magistrate jurisdiction. Regardless, Attorney Ms. Ng criminally and frivolously put her signature on a Consent form, and Ms. Ng criminally and maliciously asserted that all four Defendants Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood had consented for Magistrate jurisdiction (Doc. No. 71, **ER .07414 Vol. 5, page 811**.)

81. On June 15, 2017, Attorney Ms. Ng filed a document named "NOTICE OF MOTION AND MOTION OF DEFENDANTS BOBIT SANTOS, CATHERINE DALY, JOAN HEALY, ERIC ROOD, TO DISMISS AMENDED COMPLAINT FOR (1) FAILURE TO STATE A

Complaint for Damages.

1  CLAIM   [RULE   12(b)(6)];   AND   (2)   FAILURE   TO   COMPLY   WITH   CLAIMS

2  PRESENTATION REQUIREMENTS; MEMORANDUM OF POINTS & AUTHORITIE"

3  (Doc. No. 63, **ER 07414 Vol. 4, pages 752-762**),

4         "TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:

5         PLEASE TAKE NOTICE that on July 20, 2017 at 9:30 a.m., or as soon thereafter as the

6  matter may be heard in Courtroom C; 15th Floor of the above-entitled court, Defendants Bobit

7  Santos, Catherine Daly, Joan Healy, and Eric Rood (hereinafter "DLSE Defendants"), four

8  employees of the California Division of Labor Standards Enforcement (DLSE), of the

9  Department of Industrial Relations (DIR), of the STATE OF CALIFORNIA,[1] will and do hereby

10 move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing

11 the Amended Complaint, without leave to amend.

12        The DLSE Defendants move for an Order dismissing the Amended Complaint because:

13 (1) Plaintiff fails to state claims, and fails to allege facts that would give rise to claims, upon

14 which relief can be granted; and (2) Plaintiff fails to plead compliance with the claims

15 presentation requirements of California Government Code sections 905, et seq. and 950.2.

16        The motion is based on this Notice of Motion and the attached Memorandum of Points

17 and Authorities, the pleadings, papers, and records on file herein, and upon such other matters as

18 may be presented to the Court prior to or at the time of the hearing on the motion.[2] DATED: June

19 15, 2017

20        Respectfully submitted,

21                                By: /s/ *Doris Ng*

22                                DORIS NG Attorney for Defendants Bobit

23                                Santos, Catherine Daly, Joan Healy, and Eric Rood,

24                                employees of the CALIFORNIA DIVISION OF

25                                LABOR STANDARDS ENFORCEMENT

26

27        [1] Plaintiff filed an amended complaint on April 10, 2017 that does not name DIR or

28 DLSE, but instead names four DLSE employees "in their personal capacity [sic]." (ECF No. 40

Complaint for Damages.

at 2.) Plaintiff misspells Mr. Santos's first name, which is Bobit, not Bobbitt. Although Plaintiff has thus far completed service of the Amended Complaint only on Mr. Santos, in the interest of judicial efficiency, the remaining DLSE Defendants (Catherine Daly, Joan Healy, and Eric Rood) hereby join in this motion to dismiss.

[2] Counsel notes that Plaintiff has filed a "Motion for Peremptory Challenge" seeking to recuse Magistrate Judge Beeler (ECF No. 62.), however, her only citation is to Cal. Code of Civil Procedure section 170.6 and her request relies solely her unsupported statement that Magistrate Judge Beeler is "prejudiced against the Plaintiff." Defendant DLSE opposes Plaintiff's motion because it is procedurally improper, untimely, and baseless. Moreover, Plaintiff previously consented to Magistrate Judge Beeler's jurisdiction.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. **INTRODUCTION**

Plaintiff Tatyana Drevaleva (hereinafter "Plaintiff") alleged that her former employer (AHS) fired her because she asserted her rights under the California Labor Code. She filed an administrative complaint with the California Division of Labor Standards Enforcement (DLSE). The DLSE investigated Plaintiff's retaliation claim and found insufficient evidence to support that she had been retaliated against in violation of the law, and issued a Determination pursuant to California Labor Code section 98.7.

Plaintiff initially sued her former employer and the DLSE in this federal action. The Court granted DLSE's motion to dismiss on March 21, 2017:

> Ms. Drevaleva does not state a plausible claim against the Department . . . . Disagreeing with an agency's conclusion does not state a claim. Her allegations against the agency do not establish any failure to investigate. . . . Also, the agency is immune from suit.

(ECF No. 36 at 4.) Plaintiff filed an Amended Complaint that is essentially the same as the initial complaint,[3] except instead of naming the DLSE, she names four DLSE employees "in their personal capacity [sic]": Bobit Santos, Catherine Daly, Joan Healy, and Eric Rood. (ECF

Complaint for Damages.

1   No. 40 at 2.) The factual allegations remain the same: She does not agree with the DLSE

2   decisions in connection with her retaliation and wage claims.

3       This Court should dismiss the Amended Complaint because Plaintiff fails to allege

4   nonconclusory facts that would support a cognizable claim against the four DLSE Defendants,

5   who acted reasonably, consistent with the DLSE's legislative mandates.

6       Moreover, the Court should dismiss the Amended Complaint because Plaintiff fails to

7   allege compliance with claims presentation requirements.

8       This Court should dismiss without leave to amend, and stop further expenditure of

9   limited state agency resources opposing Plaintiff's frivolous lawsuit.

10      [3] The Court previously identified the significant changes in Plaintiff's Amended

11  Complaint. (ECF No. 59 at 2.)

12  **II. STATUTORY SCHEME**

13      In its first motion to dismiss (ECF No. 16 at 2-3), Defendant DLSE set forth the statutory

14  scheme for investigation and determination of retaliation matters under the DLSE jurisdiction.

15      At any time during the pendency of an administrative investigation pursuant to the Labor

16  Code, the complainant may file an action against her employer for retaliation and/or wage

17  violations. Where the DLSE has found insufficient evidence of retaliation, the complainant's

18  only remedy is to file a lawsuit against the employer. See Labor Code § 98.7(d)(1).

19  **III. FACTUAL AND PROCEDURAL BACKGROUND**

20      Defendant DLSE previously summarized the factual background. (ECF No. 16 at 4-7.)

21      In addition to disagreeing with the determination of her retaliation claim, in her Amended

22  Complaint, Plaintiff appears to contest the DLSE dismissal of her wage claim and names

23  Defendant Bobit Santos--the DLSE employee who dismissed her wage claim on the grounds that

24  AHS is a public entity not subject to the wage and hours laws that Plaintiff alleged AHS violated.

25  The DLSE dismissed Plaintiff's wage claim on January 7, 2014—three and a half years ago.

26  (ECF No. 40-22.)

27      Although Plaintiff's Amended Complaint names four DLSE Defendants in their personal

28  capacities, including two supervisory employees ("Supervisor" Joan Healy and Assistant Chief

Complaint for Damages.

1    Eric Rood, who signed the Determination letter), she alleges no additional conduct on the part of

2    any of the DLSE Defendants that was not previously alleged and dismissed by this Court.[4]

3          As far as counsel can discern, in connection with the DLSE Defendants, Plaintiff's

4    Amended Complaint refers to tort claims for libel, fraud, and negligence, and violations of her

5    right to liberty and property under the 5th and 14th Amendments to the Constitution.[5] Plaintiff's

6    causes of action based on labor and employment laws do not apply to the DLSE Defendants

7    who, indisputably, did not employ Plaintiff.

8          [4] Although Plaintiff named them in their personal capacities, the only acts she alleges that

9    the DLSE Defendants engaged in were investigation and determination of her claims within the

10   scope of their employment and pursuant to statutory authority, which by their nature constitute

11   actions of the DLSE. Thus, the real party in interest remains the DLSE, which this Court

12   previously concluded enjoys 11th Amendment immunity from suit in federal court. (ECF No. 36

13   at 4.) *See Brunius v. Parrish* (2005) 132 Cal. App. 4th 838, 859. To the extent that the real party

14   remains the DLSE, Plaintiff's attempt at establishing diversity jurisdiction must fail because the

15   DLSE Defendants do not constitute "new" defendants.

16         [5] Plaintiff requests punitive damages against Defendant AHS only. (ECF No. 40 at 34.)

17   Although Plaintiff mentioned "due process" in her initial complaint, which DLSE briefed in its

18   first motion to dismiss, it appears that Plaintiff now abandons that claim, instead mentioning

19   violation of her right to liberty and property. (ECF No. 40 at 26-27.)

20   **IV. ARGUMENT**

21         **A. The Court Should Dismiss For Failure To State A Claim Upon Which Relief Can**

22   **Be Granted; Leave To Amend Would Be Futile Because Defendants Have Absolute and**

23   **Qualified Immunity**

24         Defendants and the Court have previously set forth the legal standards applicable to a

25   motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Most relevant here, is

26   the requirement that "a complaint must contain sufficient factual matter, accepted as true, to state

27   a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff

28   pleads factual content that allows the court to draw a reasonable inference that the defendant is

Complaint for Damages.

1   liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct 1937, 1949 (2009)

2   (internal quotation and citation omitted).

3       Here, Plaintiff cannot prevail on any theory based on the alleged facts that the DLSE did

4   not decide in her favor on her administrative claims. No law requires that the DLSE find in

5   Plaintiff's favor. Plaintiff was free to file a court action against AHS at any time.

6       Plaintiff's Amended Complaint repeats allegations against the DLSE Defendants that

7   consist of conclusory allegations and unreasonable inferences, that even if true (which they are

8   not), would not entitle Plaintiff to relief under any plausible theory. For example, she

9   unreasonably concludes that Deputy Labor Commissioner Daly and her supervisor, Joan Healy,

10  "did not want to take into their consideration all these facts . . . ."[6] (ECF No. 40 at 13.) Upon

11  reading the email exchange attached to Plaintiff's Amended Complaint, it is apparent that

12  Deputy Daly reviewed Plaintiff's statements, but found them not persuasive and found the

13  employer's reason for termination more credible.

14      Even a pro se plaintiff must allege sufficient facts that give rise to a viable cause of action

15  for the alleged injury. *See Gaskins v. Dickhaut*, 962 F. Supp. 2d 336, 339 (2013) (dismissing pro

16  se plaintiff's complaint under FRCP 12(b)(6) with prejudice; "court must refrain from conjuring

17  up unpled allegations to give life to a phantom cause of action."). Plaintiff's complaint fails to

18  allege that any of the actions taken by the DLSE Defendants actually impeded any legitimate

19  legal claim or right. Her Amended Complaint is devoid of any facts that support her legal

20  conclusion that the DLSE Defendants impeded her liberty. Similarly, at no time did Plaintiff

21  possess a property right to reinstatement, and certainly the DLSE Defendants did not deprive her

22  of any property right to her former job at AHS. She cites no law that the DLSE Defendants

23  allegedly violated in the course of processing, investigating, and determining her claims.

24      Here, leave to amend would be futile because the DLSE Defendants are entitled to

25  absolute and qualified immunity from suit.

26      The DLSE Defendants are absolutely immune from a suit for damages on the grounds of

27  (1) governmental immunity for discretionary acts; and (2) because the alleged facts consist of the

28  DLSE Defendants' privileged statements.

Complaint for Damages.

1    First, the DLSE Defendants were performing discretionary tasks within the scope of their

2    employment. Government Code section 820.2 provides:

> Except as otherwise provided by statute, a public employee is not liable
> for an injury resulting from his act or omission where the act or omission
> was the result of the exercise of the discretion vested in him, whether or
> not such discretion is abused.

6    In *Kim v. Walker*, 208 Cal.App.3d 375, 382-383 (1989), a case involving allegations that

7    the plaintiff's parole officer defamed him and took actions that led to revocation of his parole,

8    the court held:

> Under Government Code section 820.2, absolute immunity is created for
> injury resulting from a public employee's exercise of discretion "whether
> or not such discretion be abused." All of the acts complained of were done
> in the exercise of . . . discretion . . . . As such, no viable cause of action
> could be stated . . . .

13    Here, even if Plaintiff's conclusory allegations of negligence, libel, and fraud are true,

14    which they are not, discretionary conduct that is incorrect, negligent, or an abuse of discretion is

15    protected. *See Caldwell v. Montoyah*, 10 Cal4th 972, 983-84 (1995) ("claims of improper

16    evaluation cannot divest a discretionary policy decision of its immunity").

17    Plaintiff's Amended Complaint cites *Johnson v. State of California*, 69 Cal.2d 782 (1968)

18    as authority that the DLSE Defendants do not enjoy immunity for the alleged acts. To the

19    contrary, the *Johnson* case is entirely distinguishable. In *Johnson*, the court addressed

20    defendant's failure to warn plaintiff of a child's known homicidal tendencies before placing the

21    child in plaintiff's foster care. The plaintiff sued the Youth Authority defendants for injuries after

22    the child assaulted her. In that context, the court reasoned that not all nonministerial actions of

23    public employees constitute "discretionary" acts that would render them immune from suit.

24    Instead, the compelling policy considerations present in that case, and that the plaintiff had no

25    recourse other than to sue the agency that failed to warn her persuaded the court not to shield the

26    agency's actions from judicial review.

27    Here, Plaintiff does not allege a failure to warn of foreseeable harm; she has an avenue of

28    recourse to sue her former employer in the proper court; and no extenuating policy

Complaint for Damages.

1    considerations operate in Plaintiff's favor. To the contrary, an important policy consideration

2    present here—that complainants should not be allowed to disrupt the important governmental

3    functions of the DLSE by suing the agency and its employees each time they do not agree with

4    the agency's determinations—overwhelmingly favors application of government immunity.

5         Even under the *Johnson* holding, the DLSE Defendants' conduct in investigating, making

6    determinations as to whether or not to prosecute claims, and resolving policy considerations

7    consistent with applicable substantive and procedural laws, constitute discretionary acts that the

8    legislature entrusted to the DLSE. Such acts warrant absolute immunity. See Johnson, 69 Cal.2d

9    782, 795-96; see, also, Caldwell, 10 Cal.4th at 983.[7]

10        Second, the DLSE Defendants cannot be sued based on statements made in connection

11   with performing their duties pursuant to an official proceeding, i.e., the DLSE claims

12   proceedings set forth in the Labor Code. Plaintiff's allegations that Defendants' written

13   statements (that denied and explained why they denied her claims) constitute libel, negligence or

14   fraud are absolutely privileged pursuant to Cal. Civil Code section 47.8 *See, e.g., Braun v.*

15   *Bureau of State Audits*, 67 Cal. App. 4th 1382, 1388-89 (state audit and investigatory report

16   contain statements made in an "official proceeding authorized by law" and are therefore

17   absolutely privileged).

18        Additionally, the DLSE Defendants are entitled to qualified immunity and are therefore

19   protected from liability because none of them violated any law, much less any clearly established

20   law. *See, generally, Harlow v, Fitzgerald*, 457 U.S. 800 (1982) (most government officials have

21   qualified immunity from civil rights actions insofar as their conduct does not violate clearly

22   established statutory or constitutional law). For example, in *Todd v. United States*, 849 F.2d 365

23   (9th Cir. 1988), the Ninth Circuit held that IRS officials who incorrectly assessed a penalty

24   against a taxpayer who had complained on her tax form about paying taxes did not violate a

25   clearly established right. Thus, the IRS officials were entitled to qualified immunity.

26        The facts here present an even stronger argument for qualified immunity. No clearly

27   established right exists to a Determination in Plaintiff's favor. No clearly established right exists

28   to receive a copy of the Determination at an address different from the one that Plaintiff

Complaint for Damages.

1    previously provided to the DLSE and that she provided after the Determination had already been

2    mailed. (ECF No. 25-1 at 2-3.) None of the actions Plaintiff alleges supports a claim that any of

3    the DLSE Defendants violated any statutory or constitutional law, much less one that was clearly

4    established.

5         Concerning Defendant Santos, even if Plaintiff had a viable claim against him, which she

6    does not as discussed above, the statute of limitation on any possible tort or constitutional claim

7    based on the January 2014 dismissal of her wage claim has expired.

8         Thus, the Court should dismiss the DLSE Defendants without leave to amend.

9         [6] Supervisory employees are not vicariously liable for the acts of lower level employees.

10   Plaintiff alleges no significant personal participation by the two supervisors she names. Thus, the

11   Court should dismiss Defendants Healy and Rood for this reason as well. *See , e.g., Taylor v.*

12   *List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Hill v. San Diego Sheriff's Dept.*, 2015 WL 10013013

13   *4 (S.D. Cal.; December 30, 2015).

14        [7] Gov. Code section 821.6, which bestows absolute immunity upon government

15   employees who perform acts relating to any judicial or administrative proceeding, further

16   evinces the legislature's intent to shield government employees from liability for acts performed

17   in the scope of their employment. The DLSE Defendants are absolutely immune under this

18   provision as well.

19        [8] Cal. Civil Code section 47 provides:

20        "A privileged publication or broadcast is one made:

21             (a) In the proper discharge of an official duty.

22             (b) In any . . . other official proceeding authorized by law . . . ."

23

24   **B. The Court Should Dismiss The Action Because Plaintiff Fails To Allege**

25   **Compliance With The Claims Presentation Requirements**

26        As this Court acknowledged in its Order dismissing AHS from this action, an action for

27   damages cannot be maintained against a public agency or its employees unless the Plaintiff has

28   complied with the claims presentation requirements of Government Code sections 905 and

Complaint for Damages.

1    950.2. Plaintiff fails to plead such compliance. *See State of California v. Superior Court*, 32

2    Cal.4th 1234, 1239 (2004). Thus, the Court must dismiss the Amended Complaint.

3    **V. CONCLUSION**

4         For the foregoing reasons, the four DLSE Defendants, Bobit Santos, Catherine Daly, Joan

5    Healy, and Eric Rood, respectfully request that this court grant the instant motion and enter an

6    order that dismisses the Amended Complaint without leave to amend.

7         DATED: June 15, 2017                    Respectfully submitted,

8                                                 By: /s/*Doris Ng*

9                                                 DORIS   NG   Attorney   for   the   DLSE

10                                                Defendants: Bobit Santos, Catherine Daly,

11                                                Joan Healy, and Eric Rood."

12

13        82. Please, notice that Ms. Ng's Motion to Dismiss my Amended Complaint was not

14   accompanied by a Declaration that was signed by Defendants Ms. Daly, Ms. Healy, Mr. Santos,

15   and Mr. Rood who would declare under the penalty of perjury and under the Federal laws that:

16        1)  Ms. Daly, Ms. Healy, and Mr. Rood were ever served with a Summons and with my

17            Amended Complaint No. 3:16-cv-07414-LB

18        2)  Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood explicitly consented to be

19            represented by Attorney Ms. Ng in my Amended Complaint No. 3:16-cv-07414-LB

20        3)  Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood explicitly consented to Magistrate

21            Jurisdiction in my Amended Complaint No. 3:16-cv-07414-LB

22        4)  Everything Ms. Ng write in her Motion to Dismiss my Amended Complaint was a

23            true a genuine point of view of Defendants Ms. Daly, Ms. Healy, Mr. Santos, and Mr.

24            Rood

25        5)  Everything Ms. Ng write in her Motion to Dismiss my Amended Complaint was

26            based on the truthful material facts of the case and on the genuine documents from

27            both the Alameda Health System and the Department of Industrial Relations, the

28            Division of Labor Standards Enforcement

Complaint for Damages.

6) Everything Ms. Ng wrote in her Motion to Dismiss my Amended Complaint was true and correct.

83. Please, notice that Ms. Ng's Motion to Dismiss my Amended Complaint violated both 28 U.S.C. § 1746 and the F.R.C.P. Rule 11(b) in addition to violating the California Government Code Sections 11040(b)(1), 11042(a), and 11041. Therefore, Ms. Ng's Motion to Dismiss my Amended Complaint was hearsay that was not supposed to be reviewed.

84. On June 20, 2017, I filed a document named (**ER 07414 Vol. 4, pages 763-766**) "Request to deliver a copy of the Summons of my Amended Complaint by the U.S. Marshals Service to defendants Ms. Catherine Daly, Ms. Joan Healy, and Mr. Eric Rood.

I, Tatyana Drevaleva, request Honorable Judge Laurel Beeler's order to deliver a copy of the Summons of my Amended Complaint to defendants Ms. Catherine Daly, Ms. Joan Healy and Mr. Eric Rood.

On June 20, 2017, I called the United States Marshals Service of Northern District of California on a publically stated phone number (415) 436-7677 and spoke to Supervisor Mr. Christian Hanson. I asked if a copy of the Summons of my Amended Complaint was delivered to defendants Mr. Bobit Santos, Ms. Catherine Daly, Ms. Joan Healy, and Mr. Eric Rood.

Mr. Hanson told me that the U.S. Marshals Service had initially tried to deliver a copy of the Summons of my Amended Complaint to all four defendants on May 17, 2017. The Department of Industrial Relations didn't accept the Summons and told the U.S. Marshals Service to come back later when legal services are there. The US Marshals made the second attempt to deliver a copy of the Summons on May 31st, 2017. On that day, only Mr. Santos was served in person with a copy of the Summons. The Department of Industrial Relations refused to provide the U.S. Marshals Service with any information that would assist the U.S. Marshals Service to serve defendants Ms. Daly, Ms. Healy and Mr. Rood. Therefore, the U.S. Marshals Service returned the request to the District Court as unexecuted. Ms. Hanson told me that I needed to make the second request to the Court to deliver a copy of the Summons to defendants Ms. Daly, Ms. Healy and Mr. Rood.

Complaint for Damages.

1    I am making a second request to the Court to order the U.S. Marshals Service to serve

2  defendants Ms. Catherine Daly, Ms. Joan Healy, and Mr. Eric Rood with a copy of the Summons

3  of my Amended Complaint. I am providing the Court with the addresses of these defendants:

4    1)  Ms. Catherine Daly, Deputy Labor Commissioner

5       Retaliation Unit

6       455 Golden Gate Avenue 9th East

7       San Francisco, CA 94102

8       (415) 703-4841

9       cdaly@dir.ca.gov

10   2)  Ms. Joan Healy, RCI Regional Manager

11      100 Paseo de San Antonio, Room 120

12      San Jose, CA 95113 408-277-1303

13      JHealy@dir.ca.gov

14   3)  Ms. Eric Rood, Assistant Chief

15      Department of Industrial Relations

16      Division of Labor Standards Enforcement

17      2031 Howe Ave., Suite 100

18      Sacramento, CA 95825

19      (916) 263-2991.

20      Please, notice that the Department of Industrial Relations actively opposed the attempts

21  of the U.S. Marshals Service to deliver a copy of the Summons of my Amended Complaint to all

22  four defendants.

23      Enclosed is a Right to Sue Letter issued by the Department of General Services.

24      Respectfully submitted,

25  Tatyana Drevaleva          [original signature]          June 20, 2017."

26

27      85. With my document named "Request to deliver a copy of the Summons of my

28  Amended Complaint by the U.S. Marshals Service to Defendants Ms. Catherine Daly, Ms. Joan

Complaint for Damages.

1    Healy, and Mr. Eric Rood", I included a Right to Sue Letter from the Department of General

2    Services, see (**ER 07414 Vol. 4, pages 767-768**.)

3        86. Please, notice that only one Defendant Mr. Bobit Santos was served with a Summons

4    and with my Amended Complaint on May 31, 2017 (**ER 07414 Vol. 5, pages 816-817**.)

5        87. Please, notice that three other Defendants Ms. Daly, Ms. Healy, and Mr. Rood were

6    never served with a Summons and with my Amended Complaint, see (**ER 07414 Vol. 5, pages**

7    **812-815**.)

8        88. Please, notice that, despite three Defendants Ms. Daly, Ms. Healy, and Mr. Rood

9    were never served with a Summons and with my Amended Complaint, despite these Defendants

10   never waived a service of the Summons, and despite there was no evidence that Ms. Daly, Ms.

11   Healy, Mr. Santos, and Mr. Rood *themselves* consented to Magistrate Jurisdiction, on July 03,

12   2017 Attorney Ms. Ng filed a Consent for Magistrate Jurisdiction on behalf of all four

13   Defendants Ms. Daly, Ms, Healy, Mr. Santos, and Mr. Rood, see (**ER 07414 Vol. 5, pages 810-**

14   **811**),

15       "☒**Consent to Magistrate Judge Jurisdiction**

16       DATE: July 3, 2017          NAME: DORIS NG, Staff Counsel

17                                            LABOR    COMMISSIONER    OF    THE

18                                            STATE OF CALIFORNIA

19                                            Counsel    for    Defendants    Catherine   Daly,

20                                            Joan Healy, Eric Rood, and Bobit Santos

21                                            */s/Doris Ng* ."

22

23        89. Please, notice that Ms. Ng filed her Motion to Dismiss my Amended Complaint on

24   June 15, 2017 (**ER 07414 Vol. 4, pages 754 and 762**) that was one day outside of the deadline

25   for filing a response to an Amended Complaint, see the F.R.C.P. Rule 15(a)(3), "(3) *Time to*

26   *Respond.* Unless the court orders otherwise, any required response to an amended pleading must

27   be made within the time remaining to respond to the original pleading or within 14 days after

28   service of the amended pleading, whichever is later."

Complaint for Damages.

1    90. On June 28, 2017, I filed the First Request for Entry of Default against Defendant Mr.

2    Bobit Santos, see (**ER 07414 Vol. 4, pages 772-775**.)

3    91. On June 30, 2017, Clerk Ms. Felicia Reloba declined to enter default against

4    Defendant Mr. Bobit Santos (**ER 07414 Vol. 5, pages 806-807**.)

5    92. On June 29, 2017, I filed a document named (**ER 07414 Vol. 5, pages 781-797**)

6    "Opposition to the Motion to Dismiss Amended Complaint filed by an attorney of DIR on behalf

7    of defendants Mr. Bobit Santos, Ms. Catherine Daly, Ms. Joan Healy and Mr. Eric Rood.

8    On June 15, 2017, attorney of Department of Industrial Relations Ms. Ng filed a Motion

9    to Dismiss my Amended Complaint on behalf of four defendants – officers of DIR/DLSE whom

10    I am suing in their personal capacity: Mr. Bobit Santos, Ms. Catherine Daly, Ms. Joan Healy and

11    Mr. Eric Rood. I, Plaintiff Tatyana Drevaleva, am filing an Opposition to this Motion.

12    I have a Right to Sue Letter issued by the Department of General Services. Therefore, I

13    have a right to sue Department of Industrial Relations and its officers.

14    As of June 29, 2017, only defendant Mr. Bobit Santos was served with a copy of the

15    Summons. He was served on May 31st, 2017 – see an Attachment which is a document from the

16    U.S. Marshals Service demonstrating that Mr. Santos was served on May 31st, 2017. Three other

17    defendants, Ms. Daly, Ms. Healy and Mr. Rood were not served with a copy of the Summons.

18    According to the information that I received from the U.S. Marshals Service, DIR refused to

19    provide the addresses of Ms. Daly, Ms. Healy and Mr. Rood to the U.S. Marshals Service.

20    Therefore, Ms. Daly, Ms. Healy and Mr. Rood or their attorney legally can't file a Motion to

21    Dismiss my Amended Complaint because as of June 29, 2017 these people are not considered as

22    defendants. Therefore, this Motion must be dismissed.

23    Attorney of DIR Ms. Ng filed a Motion to Dismiss my Amended Complaint on June

24    15th, 2017 – one day later the deadline which was June 14th, 2017. According to FRCP Rule

25    15(a)(3), a defendant who was served with a copy of the Summons must file a response within

26    14 (fourteen) days after being served with the Amended Complaint. Mr. Santos was served with

27    the Amended Complaint on May 31st, 2017. The deadline for Mr. Santos to file a response was

28    June 14th, 2017 which was Wednesday. Mr. Santos had no justification to miss his deadline. He

Complaint for Damages.

is neither minor nor incompetent. He had a chance to use services of the Attorney at Law. The deadline was Wednesday, not Saturday, not Sunday and not any holiday which could allow to extend the deadline according to Code of Civil Procedure, sections 12-12c. I assume that Mr. Santos was not in the military. Therefore, I filed a Request for Entry of Default. Moreover, the Motion to Dismiss my Amended Complaint was signed only by Attorney Ms. Ng and not co-signed by Mr. Santos. Because the Motion to Dismiss doesn't have defendants's Mr. Santos's, Ms. Daly's, Ms. Healy's and Mr. Rood's signatures, it is invalid and therefore it must be dismissed.

Moreover, defendant Mr. Santos didn't file a Consent Form consenting to Magistrate Judge's jurisdiction. He didn't file this form, he didn't sign it and he didn't submit this form through ECF. Three other defendants, Ms. Daly, Ms. Healy and Mr. Rood were not served with a copy of the Summons, didn't file Consent forms, didn't sign them and didn't file them through ECF or with the Clerk. Therefore, Honorable Judge Laurel Beeler can't confirm that all four defendants – officers of DIR/DLSE whom I am suing in their personal capacities consent to magistrate judge jurisdiction.

As for my Motion for Preemptory Challenge. According to Code of Civil Procedure Section 170.6, I was allowed to file a request to change the judge without explanations why I want to do this. Specifically, I filed this Motion because Honorable Judge Laurel Beeler said in her Denial Order that I exhibited negligence towards the patient. Throughout all correspondence with the Court, I provided evidence that I didn't express negligence to any patient. My former employer AHS and DIR didn't provide the Court with any explanation and evidence that I really expressed negligence to the patient – what exactly I did, what was the process of investigation, and how I was punished (a verbal warning, a record in my personnel file, etc.) I addressed this motion to Honorable Judge Phyllis J. Hamilton, not to Honorable Judge Laurel Beeler. After talking to an attorney at a Free Legal Help Desk, I realized that this Motion was valid if my case went to a trial. My case still hasn't gone to the trial. I didn't withdraw my Motion for Preemptory Challenge because I wanted to wait and see if my case goes to a trial. I understood that I had a right to file a Motion for Preemptory Challenge only one time. I was afraid that if I withdrew my

Complaint for Damages.

1    Motion, I would lose the right to file it again. I received a denial signed by Honorable Judge

2    Laurel Beeler, not by Honorable Judge Phyllis J. Hamilton. I oppose the denial for two reasons:

3    1) because the decision was made before my case went to a trial, 2) because the denial letter was

4    signed by Judge Laurel Beeler and not by Supervising Judge Phyllis J. Hamilton whom I

5    addressed this Motion.

6        It is still obvious that Honorable Judge Laurel Beeler is prejudiced to me. She didn't

7    allow me to file a Motion for Reconsideration. In her order to grant AHS's Motion to Dismiss,

8    she stated very clearly that I was fired for negligence. Later, she said that the Court has no

9    opinion whether I expressed negligence towards the patient or I didn't do it despite all my

10   evidence that I didn't do it and despite of the absence of any argument and evidence from my

11   employer AHS. Neither AHS, nor DIR ever clarified what kind of "negligence" I did. AHS never

12   mentioned the word "medical negligence" throughout all correspondence with the Court. Even

13   DIR/DLSE in its Motions to Dismiss my Complaint and my Amended Complaint never provided

14   the Court with any explanation and evidence that according to the investigation conducted by

15   DIR/DLSE I expressed negligence towards the patient. Because there have not been any

16   explanation about what I did to the patient and no documental evidence, Judge Beeler was

17   supposed to make a decision that I didn't do any negligence. Judge Beeler decided the opposite.

18   Even the phrase that "the Court doesn't have an opinion" whether I expressed negligence to the

19   patient or I did not do it is insufficient because the Court doesn't have any information what kind

20   of alleged negligence I performed and what evidence AHS and DIR are ready to provide.

21       The Court has diversity of citizenship jurisdiction over defendants Mr. Santos, Ms. Daly,

22   Ms. Healy and Mr. Rood. Therefore, the Court has supplemental jurisdiction over the State of

23   California's issues under 28 U.S. Code § 1367.

24       According to Government Code §820(a), "Except as otherwise provided by statute

25   (including Section 820.2), a public employee is liable for injury caused by his act or omission to

26   the same extent as a private person."

27       Defendants Ms. Daly, Ms. Healy and Mr. Rood accused me in performing negligence

28   towards the patient and claimed that it was a reason for my termination from AHS. The

Complaint for Damages.

1   mentioned above defendants never explained to me what kind of negligence I did, what exactly

2   was my wrong conduct towards the patient, what kind of omission I performed, and how it

3   influenced the patient's condition. They said that the patient died. How was my professional

4   performance related to his death? I provided Ms. Healy with a detailed explanation that I had

5   acted within my scope of practice, I documented the changes on the patient's EKG, and I

6   reported the patient's EKG to a Medical Doctor who agreed with my interpretation. There was

7   nothing else I could have done for that patient. See my letter to Ms. Daly dated June 18, 2014. Or

8   maybe the mentioned above defendants mean another patient? They never specified what patient

9   it was. I listed witnesses including Dr. Rachmani who reviewed the patient's EKG. Did Ms. Daly

10  interview Dr. Rachmani? I provided all evidence that I hadn't performed negligence to any

11  patient. Ms. Healy and Mr. Rood denied my case saying that my evidence was insufficient, but

12  they never explained why it was insufficient. This is why I am conducting a lawsuit.

13      Throughout all correspondence with the Court, defendant AHS never said that the reason

14  of my termination was medical negligence. If I really exhibited negligence, AHS for sure would

15  give detailed explanations and supporting documentation – evidence that I was really guilty in

16  the patient's death because of the act of omission or of my intentional harm. AHS filed two

17  Motions to Dismiss my complaints and two Replies. In all four documents, there is no

18  explanation about the alleged negligence. Therefore, I am insisting that the word "negligence"

19  was invented by Ms. Daly (libel, Code of Civil Procedure, 340 (c)), and both Ms. Healy and Mr.

20  Rood actively supported this libel. There was no discretionary act conducted by officers of

21  DLSE to determine why I was fired from AHS. A discretionary act means conduct involving the

22  exercise of reasoned judgment.

23  Source: https://www.quimbee.com/keyterms/discretionary-act     There was no any reasoned

24  judgment conducted by Ms. Daly, Ms. Healy and Mr. Rood, therefore the Gov. Code §820.2

25  immunity doesn't apply to them.

26      Officers of DLSE had **over three years** to investigate my complaint. If I really

27  performed medical negligence towards the patient, officers of DLSE would have detailed

28  information and evidence of every fact of the alleged negligence, and they would explain it to me

Complaint for Damages.

1  as well as give a full explanation to the Court. The explanation hasn't happened. Despite my
2  multiple requests to give me information what wrong I did, I haven't received any answer. In my
3  Opposition to the Motion to Dismiss my original Complaint and in my Amended Complaint, I
4  requested DLSE to give me answers: 1) what wrong did I do to the patient? 2) why is my
5  explanation that I didn't perform negligence to anybody insufficient? DLSE never responded.
6  See DLSE's Reply to my Opposition to the Motion to Dismiss my Original Complaint and the
7  Motion to Dismiss my Amended Complaint.
8      I am suing officers of DLSE Ms. Daly, Ms. Healy and Mr. Rood for their professional
9  negligence (California Civil Code Section 1714 (a)): "Everyone is responsible, not only for the
10 result of his or her willful acts, but also for an injury occasioned to another by his or her want of
11 ordinary care or skill in the management of his or her property or person, except so far as the
12 latter has, willfully or by want of ordinary care, brought the injury upon himself or herself". My
13 citation of *Johnson* was proper because the Court determined that an officer was liable for the act
14 of negligence. See also *Muskopf v. Corning Hospital Dist., supra, 55 Cal.2d 211, 219 " (1961*:
15 "when there is negligence, the rule is liability, immunity is the exception." Source:
16 http://scocal.stanford.edu/opinion/muskopf-v-corning-hospital-dist-32826
17     In Johnson, the Court distinguished between "planning" and "operational" levels of
18 decision-making, the latter is not immune. Ms. Daly, Ms. Healy and Mr. Rood failed to fully
19 exercise the operational level of decision making. I assume that Ms. Daly never questioned Dr.
20 Rachmani and other witnesses whom I listed in my June 18, 2014 letter. Moreover, despite the
21 fact that I mentioned Dr. Rachmani's name multiple time because he is the main witness, neither
22 AHS nor DLSE never mentioned his name is all correspondence with me and with the Court
23 starting with the Determination Letter dated December 29, 2016. Both AHS and DLSE
24 completely ignored this main piece of evidence. Therefore, both AHS and officers of DLSE Ms.
25 Daly, Ms. Healy and Mr. Rood performed negligence (California Civil Code Section 1714 (a))
26 and fraud (California Code of Civil Procedure § 338(d)) and libel (Code of Civil Procedure, 340
27 (c)) because they ignored the main piece of evidence and said that this piece of evidence was
28 insufficient.

Complaint for Damages.

1    Ms. Daly, Ms. Healy and Mr. Rood intentionally prolonged the investigation of my claim
2    for over three years. They waited until the three year Statute of Limitations to sue AHS will
3    expire. After the expiration of the Statute of Limitations, they issued a denial of my claim
4    without applying any reasonable facts. They said that I could sue AHS according to Labor Code
5    § 98.7(d)(1). In the Motion to Dismiss my original Complaint, Ms. Ng said that "the employee
6    may file the court action instead of filing an administrative one. There is no requirement that she
7    exhaust her administrative remedies by filing with the DLSE first. See Labor Code section
8    98.7(f)". However, AHS never said that I exhibited negligence towards the patient. See Mr.
9    Dodson's letter dated September 23, 2013, see Termination letter dated September 07, 2013, and
10   see all documents that Mr. Travelstead filed. I can't sue AHS for libel if AHS never said that I
11   was fired for negligence. Therefore, I waited for the determination letter of DLSE because I was
12   hoping that Ms. Daly would accept my explanations that I didn't perform negligence to the
13   patient. She didn't do it, and it was the reason why I filed a lawsuit against both DIR and AHS.
14   In my Amended Complaint, I named four individuals as defendants because DIR is immune
15   under 11th Amendment to the Constitution.

16   Ms. Ng argued that the statutes of limitations over the issues that I listed against Mr.
17   Santos have passed. This is not true. In my Amended Complaint, I listed negligence (California
18   Civil Code Section 1714 (a)) because Mr. Santos failed to cite any provision of law that DLSE
19   really doesn't have jurisdiction over claims for overtime, rest period premiums, differential pay,
20   or waiting time penalties for county employees. Also, I said that Mr. Santos broke Labor Code
21   98.6 (b)(1) that says that an employee is entitled to " reimbursement for lost wages and work
22   benefits caused by those acts of the employer". Labor Code 98.6 does not say that the Division
23   of Labor Standards Enforcement does not have jurisdiction over county employees. See my
24   Amended Complaint, page 24, lines 3-16.

25   There is no known Statute of Limitations in California for professional negligence which
26   is other than medical, legal or veterinarian negligence. Ms. Ng mentioned a Statute of
27   Limitations as Mr. Santos's defense but she didn't cite any provision of law that specifies this
28   Statute. There are Statutes of Limitations for professional medical negligence 1-3 years (Civ.

Complaint for Damages.

1   Proc. §340.5), there is a legal malpractice Statute of Limitations 1-4 years (Civ. Proc. §340.6),

2   and there is a veterinarian malpractice Statute of Limitations 1 year (Civ. Prop. §340(c)). Source:

3   http://statelaws.findlaw.com/california-law/california-civil-statute-of-limitations-laws.html

4          Mr. Santos doesn't qualify for all three of them. Moreover, after Mr. Santos's denial

5   letter which was signed on January 07th, 2014, my case was still under the investigation

6   conducted by DIR/DLSE. If DLSE approved my case, I would anyway get a compensation for

7   all lost wages. When the case is under the investigation, the statute of limitations is tolled. In my

8   Amended Complaint, I already cited *Reginald Mitchell v. California Department of Public*

9   *Health ("Mitchell") (Superior Court Case No. BC550911)*. See my Amended Complaint, pages

10  31-33. **The Statute of Limitations was equitably tolled while the employee's complaints**

11  **were investigated**. I think that in her Order granting a Motion to Dismiss my Amended

12  Complaint filed by AHS Honorable Judge Laurel Beeler acted against the decision of the Court

13  of Appeal for the Second Appellate District in *Mitchell* (2016) by saying that the Statutes of

14  Limitations against AHS expired.

15         In her motion to Dismiss my Amended Complaint, Ms. Ng intentionally misrepresented

16  the facts. The original facts are: I was fired from AHS after raising complaints regarding my

17  affiliation to the Union, not receiving overtime payments and shift differentials, not receiving 10

18  and 15 minute breaks, and requesting to transfer me to a full-time employment position while

19  actually working full time. I filed a complaint with DLSE. Deputy Ms. Daly said that I was fired

20  for negligence towards the patient. See Ms. Daly's letter dated June 16, 2014. I provided Ms.

21  Daly with explanation and evidence that I didn't perform negligence to that or any other patient.

22  Ms. Daly announced that my evidence was insufficient. I asked Ms. Daly and her Supervisor Ms.

23  Healy to give me detailed explanations why my evidence was not sufficient. Despite my multiple

24  requests, I didn't get any explanation up to today. In my Opposition to the Motion to Dismiss my

25  original complaint filed by DIR, I made a written request to Judge Beeler to order defendant DIR

26  to give me a written explanation about why my evidence was not sufficient but the Judge never

27  made that order. Also, I gave detailed explanations that I didn't perform any negligence in my

28  Amended Complaint. I even provided the Court with a piece of evidence – a letter from

Complaint for Damages.

1  Employment Development Department saying that I was released from a probationary period
2  and I received unemployment insurance benefits. I would never receive unemployment insurance
3  money if I performed negligence to anybody. Up to today, I have no idea what negligence I
4  performed, what wrong I did, and I haven't seen any documentation confirming that I really
5  performed negligence. Judge Beeler seems to ignore all my explanations. This is why I think that
6  she is prejudiced to me.

7      In her Motion to Dismiss my Amended Complaint, Ms. Ng wrote: "The DLSE
8  investigated Plaintiff's retaliation claim and **found insufficient evidence to support that she**
9  **had been retaliated against in violation of the law**, and issued a Determination pursuant to
10 California Labor Code section 98.7." In the Determination Letter, the word "**insufficient**" relates
11 to my evidence that I didn't perform negligence. The evidence that I provided was: I showed the
12 EKG to a doctor who agreed with my interpretation; I got a Federal job at Albuquerque VAMC,
13 I got unemployment insurance compensation, I was allowed to perform my duties as a Monitor
14 Technician after the patient's death, I reported the incident with the patient at three RCA
15 meetings, I got a good Letter of Reference from the Assistant Manager, I was never reported to
16 licensing, and my certificates were never revoked. In Ms. Ng's June 15, 2017 statement, the
17 word "insufficient" relates to the evidence that I had been retaliated against in violation of the
18 law. This is clear fraud and misrepresentation, and therefore Judge Beeler must dismiss the
19 mentioned above Motion.

20     Notice that in her Motion to Dismiss my Amended Complaint Ms. Ng never says that I
21 exhibited negligence towards the patient. Ms. Daly accused me in performing negligence, and
22 Ms. Healy and Mr. Rood supported Ms. Daly's decision. I assume that Ms. Daly never spoke to
23 Dr. Rachmani. This is why I filed a lawsuit against DIR/DLSE, and now I am suing employees
24 of DLSE in their personal capacity.

25     Ms. Ng wrote that I do "…not agree with the DLSE decisions in connection with (my)
26 **retaliation and wage claims**." This is not true. DLSE denied my claim because it had accused
27 me in negligence and said that my evidence that I didn't perform negligence was not sufficient.
28 Notice that throughout all correspondence with the Court my former employer AHS never said

Complaint for Damages.

that I committed negligence towards the patient and never provided the Court with the evidence regarding the alleged negligence. People who accused me in performing negligence were officers of DLSE – Ms. Daly, Ms. Healy and Mr. Rood. This is a pure lie and defamation (Code of Civil Procedure 340 (c)). Also, Ms. Daly and Mr. Rood accused me that prior to sending my September 5, 2013 letter to Mr. Harding I **knew** that I was going to be fired. This is another libel (Code of Civil Procedure 340 (c)). Mr. Rood mentioned "my direct Supervisor" Ms. Littlepage who allegedly sent an email saying that I would be fired. I have no idea who Ms. Littlepage is. She was never my Supervisor. I have no idea what letter Mr. Rood is talking about. He never provided a copy of this letter to me, and Ms. Ng never submitted a copy of this letter to the Court.

Taking into consideration the facts that:1) Ms. Daly, Ms. Healy, Mr. Rood and Ms. Ng never mentioned the name of Dr. Rachmani in all correspondence with me and with the Court and never indicated that they interviewed Dr. Rachmani regarding the alleged medical negligence, 2) AHS itself never claimed that I was fired for negligence, 3) officers of DLSE and their attorney never provided me and the Court with any details and evidence of the alleged medical negligence, 4) Mr. Rood and Ms. Ng never provided me and the Court with a copyof the alleged letter from alleged Ms. Littlepage, -- I am making the conclusion that officers of DLSE Ms. Daly, Ms. Healy and Mr. Rood acted with actual **malice**, i.e., knowing that the statements were false or recklessly disregarding their falsity. Malice is described in California Civil Code 3294. Ms. Daly, Ms. Healy and Mr. Rood **knew** that I didn't perform any negligence to any patient. However, they **recklessly disregarded all pieces of my evidence** that I provided multiple times starting my letter dated June 18, 2014.

Ms. Ng conducted a lot of misrepresentation in her Motion to Dismiss. On page 2, lines 17-18 she said that Mr. Santos "… dismissed (my) wage claim on the grounds that **AHS is a public entity** not subject to the wage and hours laws that Plaintiff alleged AHS violated." In his denial letter, Mr. Santos didn't say that AHS was a public entity. He said that "the Division does not have jurisdiction over claims for overtime, rest period premiums, differential pay, or waiting time penalties **for county employees**." Mr. Santos didn't say anything about AHS's alleged

Complaint for Damages.

1  public entity status during the time when I was employed by AHS. Mr. Santos didn't provide me

2  with any provision of the law confirming that DLSE doesn't have jurisdiction over claims for

3  overtime, rest period premiums, differential pay, or waiting time penalties for county employees.

4  Therefore, I consider Mr. Santos's denial as negligence (California Civil Code Section 1714 (a))

5  which caused me harm.

6       Another Ms. Ng's misrepresentation is written on pages 2-3. She wrote that "the only acts

7  she alleges that the DLSE Defendants engaged in were **investigation and determination of her**

8  **claims within the scope of their employment** and pursuant to statutory authority, which by

9  their nature constitute actions of the DLSE." This is not true. I am suing officers of DLSE

10  because they committed negligence, libel, malice, fraud and oppression. They said that I

11  exhibited negligence to the patient even though they knew that I didn't do it. They failed to

12  interview the main witness Dr. Rachmani and provide me with the results of the interview. The

13  11th Amendment does not extend to officers of the public entity who are sued in their personal

14  capacity.  Therefore, they are considered as new defendants, and the diversity of citizenship

15  jurisdiction applies to them.

16       On page 3, Ms. Ng wrote: "Plaintiff requests punitive damages against Defendant AHS

17  only. (ECF No. 40 at 34.) Although Plaintiff mentioned "due process" in her initial complaint,

18  which DLSE briefed in its first motion to dismiss, it appears that Plaintiff now abandons that

19  claim, instead mentioning violation of her right to liberty and property." This is not true. In my

20  both Complaints, I requested punitive damages against AHS and DIR (in my Complaint) and

21  four officers of DIR (in my Amended Complaint). I mentioned violation of my liberty and

22  property in both Opposition to two Motions to Dismiss my original Complaint and in the

23  Opposition to the Motion to Dismiss my Amended Complaint filed by AHS. I am insisting that

24  my liberty and property rights were violated. I already listed all damages that I suffered from in

25  the previous correspondence with the Court (no job, no money, a lot of debts, no health

26  insurance, damaged reputation, no house, no car, no opportunity to study, no better paid

27  profession). Both AHS and officers f DLSE violated the 5th and 14th Amendments to the

28  Constitution.

Complaint for Damages.

Ms. Ng said that "Plaintiff's causes of action based on labor and employment laws do not apply to the DLSE Defendants who, indisputably, did not employ Plaintiff." I said that Mr. Santos broke Labor Code 98.6 because this provision of law doesn't say that DLSE has no jurisdiction over county employees. I request the Court to move my case to a jury trial against four defendants of DLSE for libel, fraud, negligence, malice, oppression and violations of my right to liberty and property under the 5th and 14th Amendments to the Constitution.

Gov. Code §818 says: "Notwithstanding any other provision of law, a **public entity** is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." This provision of law doesn't say that **officers of public entities** are immune. Also Gov. Code §818 provides immunity for public entities for damages imposed **for the sake of example and by way of punishing the defendant**. Nothing applies to me. There is no provision of law that provides immunity for a public employee for libel. Therefore, four officers of DLSE are liable for libel,, fraud, malice, and oppression.

Cal Civil Code 44 says that "Defamation is effected by either of the following:

(a) Libel.

(b) Slander."

Cal Civil Code 45 says that "Libel, what. Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or **which has a tendency to injure him in his occupation**.' Ms. Daly's libel that I performed negligence to the patient could seriously injure me in my occupation as an EKG/Monitor Technician.

Cal Civil Code 46 says: "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:

1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;

Complaint for Damages.

2.  Imputes in him the present existence of an infectious, contagious, or loathsome disease;

3.  Tends directly to injure him in respect to his office, **profession,** trade or business, **either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires,** or by imputing something with reference to his office, **profession**, trade, or business that has a natural tendency to lessen its profits;

4.  Imputes to him impotence or a want of chastity;  or

5.  Which, by natural consequence, **causes actual damage**."

Ms. Daly's slander that I conducted negligence to the patient disqualified me as an EKG Technician and caused actual financial and moral damage.

Ms. Ng misled the Court by saying that "DLSE did not decide in her favor on her administrative claims" (page 4, lines 1-2). DLSE accused me in conducting medical negligence and refused to provide me with any evidence that I conducted it. I tried to prove that I didn't do negligence but Ms. Healy and Mr. Rood disregarded all my explanations and said that my evidence was not sufficient. It was a base for issuing a determination denial letter on December 29, 2016. Ms. Healy and Mr. Rood are liable for accusing me in medical negligence. I had an email correspondence with Ms. Healy where I asked too assign another Deputy to investigate my case. Ms. Healy refused to do it. Despite my numerous requests, she never provided me with explanation why my pieces of evidence that I didn't do medical negligence were not sufficient. She knew that I didn't do medical negligence but she maliciously referred my claim to a denial. Mr. Rood never checked the facts and signed the denial letter. I disagree with Ms. Ng that supervisory employees are not vicariously liable for the acts of lower level employees.  Ms. Healy personally communicated with me via email. She intentionally didn't give me the answer what negligent act I did and why my evidence was insufficient.

Four defendants of DLSE deprived me liberty to be reinstated at work at AHS, enjoy full time employment with salary and benefits, enjoy educational opportunities, enjoy achieving a higher paying job, enjoy purchasing my home and car and the opportunity to go to a doctor in the USA.

Complaint for Damages.

1    I disagree Ms. Ng's statement that "the DLSE Defendants are absolutely immune from a

2    suit for damages on the grounds of (1) governmental immunity for discretionary acts; and (2)

3    because the alleged facts consist of the DLSE Defendants' privileged statements."

4    The public entity must demonstrate that its employee in fact consciously exercised

5    discretion in connection with the negligent acts and omissions alleged in the complaint. *Johnson*

6    *v. State, (1968) 69 Cal.2d 782, 794 n.8.*

7    Source: https://www.cozen.com/admin/files/publications/2208943.pdf?embed

8    Ms. Ng never demonstrated that officers of DLSE exercised any discretion. They never

9    explained to me what kind of medical negligence I performed, never provided me with any

10    evidence or the alleged negligence, and said that my pieces of evidence that I did not do

11    negligence were insufficient. They never questioned Dr. Rachmani, and they never mentioned

12    his name as a main witness.

13

14    I already proved that Ms. Daly, Ms. Healy and Mr. Rood didn't exercise any discretion

15    (reasoned judgment). Citing *Caldwell v. Montoyah, 10 Cal4th 972, 983-84 (1995)* is improper

16    because officers of DLSE didn't perform any discretionary act. "This "discretionary act"

17    immunity extends to "basic" governmental policy decisions entrusted to broad official

18    judgment." Officers of DLSE maliciously accused me in medical negligence which was not

19    discretion. Therefore, they are not immune.

20    Ms. Ng said that "(I had an avenue of recourse to sue (my) former employer in the proper

21    court;" Again, AHS never stated that I was fired for medical negligence. Officers of DLSE stated

22    it, therefore I am suing them.

23    Ms. Ng cited Gov. Code §821.6 that says: "A public employee is not liable for injury

24    caused by his instituting or prosecuting any judicial or administrative proceeding within the

25    scope of his employment, even if he acts maliciously and without probable cause." I am citing

26    Gov. Code § 822.2 that says that a public employee could be "...**guilty of actual fraud,**

27    **corruption or actual malice.**"

28

Complaint for Damages.

1    Citing Cal Civil Code §47 is improper because officers of DLSE didn't proper discharge

2   their official duties. The law doesn't authorize officers of DLSE to conduct libel, negligence,

3   malice, fraud and oppression.

4    Citing *Todd v. United States, 849 F.2d 365 (9th Cir. 1988)* is improper because the

5   defendant is the United States and not a local public entity. In the citation of *Harlow v.*

6   *Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*, the Supreme Court held that

7   "government officials performing discretionary functions, generally are shielded from liability

8   for civil damages insofar as **their conduct does not violate clearly established statutory or**

9   **constitutional rights of which a reasonable person would have known.**" DLSE officers'

10  actions clearly violated statutory and constitutional rights of which all four officers would have

11  known. Also, the actions of DLSE officers were not discretionary.

12    I never received a Determination Letter by mail. Therefore, I lost a right to submit an

13  appeal to Ms. Baker even though I already prepared it. Ms. Ng lies to the Court by saying that I

14  provided my new address to DLSE *after* the Determination had already been mailed. See page 7,

15  lines 22-23. I already provided the Court with a copy of my email exchange with Ms. Healy. I

16  provided Ms. Healy with my new address in Mountain View, CA on the following dates:

17  December 20, 2016 and December 29, 2016. The determination Letter was signed on December

18  29, 2016. DLSE never stated to what address it mailed this letter to me. For sure, DLSE had my

19  new address before signing the Determination letter. DLSE never sent this letter to me and never

20  provided the Court with proof that this letter was ever mailed to any address. I requested a copy

21  of a certified mail receipt or a similar piece of evidence but DLSE failed to send it to me.

22    **Conclusion**.

23  1)  Ms. Daly, Ms. Healy and Mr. Rood were not served with a copy of the Summons, so

24      they are not considered defendants. They or their attorney doesn't have a right to file

25      a response or a Motion to my Amended Complaint. Therefore, the Motion to Dismiss

26      is invalid

27

28

Complaint for Damages.

2)  The mentioned above officers including Mr. Santos didn't file and didn't sign Consent forms to magistrate judge jurisdiction. Therefore, the magistrate judge doesn't have a right to enter a decision on the Motion to Dismiss

3)  The four mentioned above officers didn't sign the Motion to Dismiss, therefore this Motion is invalid

4)  Officers of DLSE didn't conduct any discretionary act, therefore they are not immune

5)  Mr. Santos can't apply any known statute of limitations for professional negligence which is other than medical, legal and veterinarian negligence

6)  Officers of DLSE are liable for libel, fraud, malice, oppression, and negligence.

Therefore, I am asking the Court to dismiss the mentioned above Motion.

Respectfully submitted,

Tatyana E. Drevaleva          Date: June 29, 2017."

93. On July 04, 2017, I filed a document named (**ER 07414 Vol. 5, pages 818-821**) "Administrative Motion for Entry of Default Against Defendant Mr. Santos." Please, notice that Magistrate Judge Ms. Laurel Beeler never granted this Motion.

94. On July 06, 2017, Attorney Ms. Ng filed a document named (**ER 07414 Vol. 5, pages 832-836**) "REPLY BRIEF OF DEFENDANTS BOBIT SANTOS, CATHERINE DALY, JOAN HEALY, ERIC ROOD, IN SUPPORT OF MOTION TO DISMISS.

Defendants Bobit Santos, Catherine Daly, Joan Healy, and Eric Rood (hereinafter "DLSE Defendants"),[1] submit the instant Reply in support of their motion to dismiss Plaintiff's Amended Complaint.

**I. INTRODUCTION**

In her 15-page Opposition, Plaintiff first details why default should be entered against Defendant Santos[2] and why this Court is "prejudiced against" her. She then appears to unreasonably argue that the DLSE decision denying her wage claim in 2014 and the separate retaliation claim that she subsequently filed and that was determined against her in 2016,

Complaint for Damages.

1  constitute one claim, that was not finally decided until 2016. Lastly, Plaintiff's Opposition

2  repeats her many disagreements with the DLSE's determination, making the same arguments she

3  previously made,[3] which this Court correctly rejected when it granted DLSE's motion to dismiss:

> Ms. Drevaleva does not state a plausible claim against the Department . . .
> . Disagreeing with an agency's conclusion does not state a claim. Her
> allegations against the agency do not establish any failure to investigate. . .
> . Also, the agency is immune from suit.

7  (ECF No. 36 at 4.) Nothing substantive has changed since the Court's previous ruling.

8      In parts unintelligible, the Opposition hurls numerous baseless accusations against the

9  DLSE Defendants and their legal counsel,[4] but the Opposition fails to set forth any meritorious

10  reason why the Court should allow this litigation to continue. Plaintiff fails to state any plausible

11  cause of action. Any possible cause of action is barred by governmental and other immunities.

12      The Court should dismiss without leave to amend and end the enormous waste of state

13  resources expended thus far defending against Plaintiff's numerous and frivolous filings.

14      [1] Plaintiff has filed a number of documents concerning service of her summons and

15  amended complaint. (See, e.g., ECF No. 64.) Contrary to her statements (some of which

16  constitute hearsay), Defendants have not "actively opposed" valid service and in no way have

17  obstructed service. In fact, as indicated by Defendants previously (ECF No. 63, p.2, n.1), in the

18  interest of judicial efficiency, all four DLSE Defendants waive further service of the summons

19  and amended complaint only in this instance. By doing so, Defendants do not waive any right to

20  proper service of any other documents, if any, in the future.

21      [2] Counsel notes that Plaintiff has filed documents with the Court seeking entry of default

22  against one or more of the DLSE Defendants. (See, e.g., ECF No. 72.) Her filings are baseless

23  because the DLSE Defendants were not parties to the initial complaint; Rule 12(a) applies, as

24  indicated in the summons that was served on Defendant Santos. Plaintiff also complains that

25  Defendants have not consented to the Magistrate Judge's jurisdiction. The summons and

26  amended complaint that was served on Defendant Santos did not contain this information or a

27  consent form. Nevertheless, Defendants have filed such consent. (ECF No. 71.)

28

Complaint for Damages.

[3] Plaintiff reiterates her complaints that DLSE did not conduct its investigation in the way that Plaintiff would have wanted and that she did not receive the Determination letter until after she filed the instant action. As Defendant DLSE previously stated, Labor Code section 98.7 does not require that the DLSE conduct the investigation in any particular manner, but grants the DLSE discretion. Similarly, after Plaintiff provided DLSE with numerous different addresses (including in Russia), in August 2016, DLSE specifically asked Plaintiff which address she wanted DLSE to mail the Determination to, and DLSE mailed the Determination to the address that Plaintiff indicated. (See ECF No. 25, p.2.) That Plaintiff would change her address yet again does not obligate DLSE to continually update its information. Nor is DLSE obligated to ensure that Plaintiff's mail is forwarded to whichever address she happens to be using on a particular day. The DLSE Defendants more than accommodated Plaintiff in her numerous emails, unreasonable demands for further explanations, baseless accusations against DLSE personnel, and demands for a determination in her favor.

[4] Defendants object to the numerous false and unintelligible accusations that Plaintiff makes in her Opposition and other court filings; the multiplicity and lack of factual support for these accusations renders it impossible for Defendants to respond in every instance. Importantly, nothing in Plaintiff's Opposition points to facts that she has alleged that would give rise to a cause of action for which she is entitled to relief.

## II. ARGUMENT

Contrary to the rules of federal civil procedure, Plaintiff's Amended Complaint fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . ." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct 1937, 1949 (2009) (internal quotation and citation omitted). Plaintiff cannot prevail on any theory based on the alleged facts that the DLSE did not decide in her favor on her administrative claims. Just as the Court rejected Plaintiff's opposition to dismissal of Defendant AHS, Plaintiff's former employer, so too, the Court should reject Plaintiff opposition to dismissal of the DLSE Defendants. Plaintiff cites no law, case or argument that would support allowing her to continue this action against the DLSE Defendants.

Complaint for Damages.

1    Specifically, Plaintiff fails to present any cogent argument to counter the DLSE

2    Defendants' position that they enjoy immunity under Gov. Code section 820.2. Investigating and

3    determining claims plainly constitute discretionary acts of government employment. Thus,

4    Plaintiff has no viable cause of action.

5    Moreover, Plaintiff attempts to argue that Gov. Code section 821.6 (which makes

6    government employees performing any acts relating to any judicial or administrative proceeding

7    absolutely immune) does not apply. However, the Amended Complaint alleges no facts that

8    remotely suggest that any of the DLSE Defendants could be "guilty of actual fraud, corruption or

9    actual malice." *See* Gov. Code section 822.2. Plaintiff's conclusory accusations in her

10   Opposition that Defendants committed fraud and malice do not suffice.

11   Plaintiff wholly fails to address that the DLSE Defendants are immune, pursuant to CA

12   Civil Code section 47, based on statements made in connection with performing their duties

13   pursuant to an official proceeding. Likewise, Plaintiff makes no specific argument challenging

14   that DLSE Defendants have qualified immunity and are therefore shielded from liability because

15   none of them violated any law, much less any clearly established law.

16   Thus, the Court should dismiss the DLSE Defendants without leave to amend.[5]

17   [5] Although Plaintiff attaches documents relating to a claim form she filed against "DIR,"

18   it appears that the claim was not timely presented at least as to Defendant Santos, and was not

19   presented against any of the DLSE Defendants here. Moreover, Plaintiff complaint fails to allege

20   timely compliance with the claims presentation requirements.

21

22   **III. CONCLUSION**

23   For the foregoing reasons, the four DLSE Defendants, Bobit Santos, Catherine Daly,

24   Joan Healy, and Eric Rood, respectfully request that this court grant the instant motion and enter

25   an order that dismisses the Amended Complaint without leave to amend.

26   DATED: July 6, 2017                          Respectfully submitted,

27                                                By: /s/ *Doris Ng*

28

Complaint for Damages.

DORIS NG Attorney for the DLSE

Defendants: Bobit Santos, Catherine Daly,

Joan Healy, and Eric Rood."

95. Next day on July 07, 2017, Magistrate Judge Ms. Beeler issued an Order that granted Ms. Ng's Motion to Dismiss my Amended Complaint, see (**ER 07414 Vol. 5, pages 838-845.**) In this Order, Judge Beeler fraudulently, criminally, and maliciously granted the DLSE Defendants Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood with Governmental immunity pursuant to the California Government Code Section 820.2 and with absolute privilege pursuant to the California Civil Code Section 47. For the purpose of tis current Complaint, I will not discuss this Order in detail.

96. On the same day July 07, 2017, Judge Beeler intentionally, criminally, maliciously, and fraudulently entered a Judgment against me (**ER 07414 Vol. 5, page 846-847.**) For the purpose of tis current Complaint, I will not discuss this Judgment in detail. On July 10, 2017, I filed a Notice of Appeal at the 9th Circuit (**ER 07414 Vol. 5, pages 848-849.**)

97. I am a Pro Se Plaintiff, and I don't have a permanent place of living. I am a live-in Caregiver taking care of elderly physically and mentally disabled people. Because I relocated so many times from one place of living to another one, I was unable to find Ms. Ng's filings at the 9th Circuit in Appeal No. 17-16382, and therefore I am unable to present these filings to the attention of the U.S. District Court for the Northern District of California. I will do my best to find Ms. Ng's filings at the 9th Circuit in Appeal No. 17-16382 and to present these filings to the attention of the District Court.

**Legal Standard.**

98. In this current Complaint, I will follow the F.R.C.P. Rule 8(a),

"(a) Claim for Relief. A pleading that states a claim for relief must contain:

Complaint for Damages.

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

99. I will only briefly describe each Cause of Action without getting into the detailed legal theories regarding each Cause of Action.

**100. Count No. 1.** Against the California Department of Industrial Relations and the Division of Labor Standards Enforcement.

Discrimination against my Russian Origin, Title VII of the Civil Rights Act of 1964.

The California Department of Industrial Relations and the Division of Labor Standards Enforcement routinely provided great protection to American, Asian, and other employees but didn't provide a protection to me because I am Russian. The California Department of Industrial Relations failed to initiate a proceeding against Respondent the Alameda Health System because I am Russian. The California Department of Industrial Relations discriminated me against my Russian origin.

**101. Count No. 2.** Against the California Department of Industrial Relations and the Division of Labor Standards Enforcement.

Discrimination against my race, 42 U.S.C. § 1981.

The California Department of Industrial Relations and the Division of Labor Standards Enforcement routinely provided great protection to the African-American and Asian employees but didn't provide any protection to me because I am not an African-American and because I am not Asian. The California Department of Industrial Relations discriminated me against my race.

Complaint for Damages.

1   **102. Count No. 3.** Against the California Department of Industrial Relations and the

2   Division of Labor Standards Enforcement.

3       A violation of the Fourteenth Amendment to the U.S. Constitution, the Equal Protection

4   Clause.

5       The California Department of Industrial Relations and the Division of Labor Standards

6   Enforcement routinely provided great protection to many other employees who were retaliated

7   and unlawfully terminated from their jobs. The California Department of Industrial Relations

8   didn't provide any protection to me in violation of the Fourteenth Amendment to the U.S.

9   Constitution, the Equal Protection Clause.

10

11      **103. Count No. 4.** Against the California Department of Industrial Relations and the

12  Division of Labor Standards Enforcement.

13      A violation of the Fourteenth Amendment to the U.S. Constitution, the Substantive Due

14  Process Clause, deprivation of Liberty and property that I could have purchased if the DIR and

15  the DLSE reinstated me back to work at the Alameda Health System.

16

17      **104. Count No. 5.** Against the California Department of Industrial Relations and the

18  Division of Labor Standards Enforcement.

19      A violation of the Fourteenth Amendment to the U.S. Constitution, the Procedural Due

20  Process Clause, deprivation of Liberty and property  without the Due Process of the law.

21      Failure to investigate my retaliation and unlawful termination claim against the AHS

22  according to the procedures that were established at the California Labor Code Section 98.7(b)

23  such as:

24      1)  To interview claimant Tatyana Drevaleva

25      2)  To interview respondent the Alameda Health System

26      3)  To interview the witnesses whom I listed in my June 18, 2014 letter to Ms. Daly

27      4)  To review the documents from the Alameda Health System that were related to my

28          employment at the AHS from April 01 to September 07, 2013, that were related to

Complaint for Damages.

1    my performance at the AHS, and that were related to the reasons of the termination of

2    my employment from the AHS on September 07, 2013.

3

4    **105. Count No. 6.** Against the California Department of Industrial Relations and the

5    Division of Labor Standards Enforcement.

6    A violation of the Fourteenth Amendment to the U.S. Constitution, the Procedural Due

7    Process Clause, deprivation of Liberty and property without the Due Process of the law.

8    Failure to investigate my wage claim against the AHS according to the procedures that

9    were established at the California Labor Code Section 98(a). Failure to inform claimant Tatyana

10    Drevaleva and respondent the Alameda Health System about whether or not the DIR would

11    conduct a hearing of my wage claim within 30 days from filing this claim.

12

13    **106. Count No. 7.** Against Attorney Ms. Ng, the California Department of Industrial

14    Relations, the Division of Labor Standards Enforcement, Ms. Catherine Daly, Ms. Joan Healy,

15    Mr. Bobit Santos, and Mr. Eric Rood.

16    Conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal

17    laws, 42 U.S.C. § 1985.

18    Responding to my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB,

19    Attorney Ms. Ng criminally appeared on behalf of Defendant the California Department of

20    Industrial Relations despite this Defendant the DIR had not been served with a Summons and

21    with my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB and despite Attorney

22    Ms. Ng didn't have a right to appear on behalf of the Department of Industrial Relations, see the

23    California Government Code Section 11040(a.) Only Attorney General of the State of California

24    had a right to appear on behalf of the Department of Industrial Relations, see the California

25    Government Code Section 11040(a.)

26    Responding to my Amended April 10, 2017 Complaint, Attorney Ms. Ng appeared on

27    behalf of Defendants Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood despite Ms. Daly, Ms.

28    Healy, and Mr. Rood had not been served with a Summons and with my Amended April 10,

Complaint for Damages.

2017 Complaint No. 3:16-cv-07414-LB. Moreover, Attorney Ms. Ng was not an in-house Counsel of the Division of Labor Standards Enforcement within the meaning of the California Government Code Section 11040(b)(1), and she didn't have a right to appear on behalf of employees of the Division of Labor Standards Enforcement Ms., Daly, Ms. Healy, Mr. Santos, and Mr. Rood, see the California Government Code Sections 11042(a) and 11041(a.)

**107. Count No. 8**. Against Attorney Ms. Ng, the California Department of Industrial Relations, the Division of Labor Standards Enforcement, Ms. Catherine Daly, Ms. Joan Healy, Mr. Bobit Santos, and Mr. Eric Rood.

Using the State statutes the California Government Code Section 820.2 and the California Civil Code Section 47 with a goal to prevent me from obtaining relief pursuant to the Fourteenth Amendment to the U.S. Constitution, see 42 U.S.C. § 1983.

In her Motion to Dismiss my Amended Complaint, Attorney Ms. Ng fraudulently asserted that the DLSE employees Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood were immune from liability pursuant to California Government Code Section 820.2 and the California Civil Code Section 47. Therefore, Attorney Ms. Ng, the California Department of Industrial Relations, the Division of Labor Standards Enforcement, Ms. Catherine Daly, Ms. Joan Healy, Mr. Bobit Santos, and Mr. Eric Rood fraudulently prevented me from obtaining relief in a District Court pursuant to the Fourteenth Amendment to the U.S. Constitution. In falls within the scope of 42 U.S.C. § 1983.

**108. Count No. 9.** Against Attorney Ms. Ng, the California Department of Industrial Relations, and the Division of Labor Standards Enforcement.

Fraud, the California Penal Code, § 484; Civ. C. § 1572

Attorney Ms. Ng fraudulently appeared on behalf of Defendant the Department of Industrial Relations despite this Defendant had not been served with a Summons and with my Original December 29, 2016 Complaint and despite Ms. Ng didn't have any right to appear on

Complaint for Damages.

1    behalf of Defendant the California Department of Industrial Relations, see the California

2    Government Code Section 11040(b)(1.)

3        Attorney Ms. Ng fraudulently appeared on behalf of Defendants the Division of labor

4    Standards Enforcement and the Labor Commissioner of the State of California despite these

5    entities had not been named as Defendants in my Original December 29, 2016 Complaint

6    No.3:16-cv-07414-LB.

7        Attorney Ms. Ng fraudulently appeared on behalf of the DLSE Defendants Ms. Daly, Ms.

8    Healy, Mr. Santos, and Mr. Rood despite Ms. Ng was not an in-house Counsel of the DLSE and

9    despite Ms. Ng didn't have a right to appear on behalf of the DLSE employees, see the

10    California Government Code Sections 11041(a) and 11042(a.)

11

12        **109. Count No. 10.** Against Attorney Ms. Ng, the California Department of Industrial

13    Relations, and the Division of Labor Standards Enforcement.

14        Harassment, the California C.C.P. § 527.6

15        Attorney Ms. Ng harassed me because she asserted that the Department of Industrial

16    relations was immune pursuant to the Eleventh Amendment to the U.S. Constitution.

17        Attorney Ms. Ng harassed me because she asserted that the DLSE employees Ms. Daly,

18    Ms. Healy, Mr. Santos, and Mr. Rood were immune pursuant to the California Government Code

19    Section 820.2, and Ms. Ng asserted the privilege pursuant to the California Civil Code Section

20    47.

21

22        **110. Count No. 11**. Against Attorney Ms. Ng, the California Department of Industrial

23    Relations, and the Division of Labor Standards Enforcement.

24        Intentional Infliction of Emotional Distress.

25        Despite the California Department of Industrial Relations, the Division of Labor

26    Standards Enforcement failed to process my retaliation and unlawful termination claim and my

27    wage claim, Attorney Ms. Ng asserted that the Department of Industrial Relations was immune

28    pursuant to the Eleventh Amendment to the U.S. Constitution, and Ms. Ng asserted that the

Complaint for Damages.

1    DLSE employees Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood were immune pursuant to the

2    California Government Code Section 820.2, and Ms. Ng asserted privilege pursuant to the

3    California Civil Code Section 47. As a result, Magistrate Judge Ms. Beeler dismissed my both

4    Original and Amended Complaints No. 3:16-cv-07414-LB and didn't provide me with relief in a

5    form of getting reinstated back to work at the Alameda Health System and awarding me with a

6    full amount of my lost salary and benefits as a result of retaliation and unlawful termination of

7    my employment from the Alameda Health System on September 07, 2013.

8

9    **111. Count No. 12**. Against Attorney Ms. Ng, the California Department of Industrial

10   Relations, and the Division of Labor Standards Enforcement.

11   The Intentional Interference with a Prospective Economic Advantage

12   Despite the California Department of Industrial Relations, the Division of Labor

13   Standards Enforcement failed to process my retaliation and unlawful termination claim and my

14   wage claim, Attorney Ms. Ng asserted that the Department of Industrial Relations was immune

15   pursuant to the Eleventh Amendment to the U.S. Constitution, and Ms. Ng asserted that the

16   DLSE employees Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood were immune pursuant to the

17   California Government Code Section 820.2, and Ms. Ng asserted privilege pursuant to the

18   California Civil Code Section 47. As a result, Magistrate Judge Ms. Beeler dismissed my both

19   Original and Amended Complaints No. 3:16-cv-07414-LB and didn't provide me with relief in a

20   form of getting reinstated back to work at the Alameda Health System and awarding me with a

21   full amount of my lost salary and benefits as a result of retaliation and unlawful termination of

22   my employment from the Alameda Health System on September 07, 2013.

23   Therefore, Attorney Ms. Ng, the California Department of Industrial relations, and the

24   Division of Labor Standards Enforcement of the California Department of Industrial Relations

25   intentionally interfered with my prospective economic advantage.

26

27   **112. Count No. 13**. Against Attorney Ms. Ng, the California Department of Industrial

28   Relations, and the Division of Labor Standards Enforcement.

Complaint for Damages.

1    Loss of Consortium.

2    Despite the California Department of Industrial Relations, the Division of Labor

3    Standards Enforcement failed to process my retaliation and unlawful termination claim and my

4    wage claim, Attorney Ms. Ng asserted that the Department of Industrial Relations was immune

5    pursuant to the Eleventh Amendment to the U.S. Constitution, and Ms. Ng asserted that the

6    DLSE employees Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood were immune pursuant to the

7    California Government Code Section 820.2, and Ms. Ng asserted privilege pursuant to the

8    California Civil Code Section 47. As a result, Magistrate Judge Ms. Beeler dismissed my both

9    Original and Amended Complaints No. 3:16-cv-07414-LB and didn't provide me with relief in a

10   form of getting reinstated back to work at the Alameda Health System and awarding me with a

11   full amount of my lost salary and benefits as a result of retaliation and unlawful termination of

12   my employment from the Alameda Health System on September 07, 2013.

13   Therefore, I lost my normal lifestyle, and I was unable to go to work at the Alameda

14   Health System, I was unable to study, to get a degree in the United States, and to get a better paid

15   job in the United States. I was unable to create a family, to have my own place of living, to have

16   children, to get married, to have a car, and to maintain a normal lifestyle.

17

18   **113. Count No. 14**. Against Attorney Ms. Ng, the California Department of Industrial

19   Relations, and the Division of Labor Standards Enforcement.

20   Racketeering activity within the meaning of the R.I.C.O. or 18 U.S.C. § 1962(a) because

21   Ms. Ng, the Department of Industrial Relations, and the Division of Labor Standards

22   Enforcement unlawfully prevented me from obtaining relief in a Federal Court in my both

23   Original December 29, 2016 and Amended April 10, 2017 Complaints.

24   I suspect that Ms. Ng, the Department of Industrial Relations, and the Division of Labor

25   Standards Enforcement prevented me from being awarded with a monetary relief in the lawsuit

26   No. 3:16-cv-07414-LB.

27

28

Complaint for Damages.

1    **114. Count No. 15**. Against Attorney Ms. Ng, the California Department of Industrial

2    Relations, and the Division of Labor Standards Enforcement.

3        Slavery and involuntary servitude in violation of the Thirteenth Amendment to the U.S.

4    Constitution.

5        Because I was fired from the AHS, I was coerced to work as a Caregiver taking care of

6    elderly physically and mentally disabled people. This is slavery and involuntary servitude in

7    violation of the Thirteenth Amendment to the U.S. Constitution.

8

9        **115. Count No. 16.** Against Attorney Ms. Ng, the California Department of Industrial

10   Relations, and the Division of Labor Standards Enforcement.

11       Cruel and unusual punishment in violation of the Eighth Amendment to the U.S.

12   Constitution.

13       I was fired from the AHS for asking questions about unpaid wages, unsafe working

14   conditions, missed breaks, the denial of my affiliation to the Union, and for asking to transfer me

15   to a full time job because I was actually working full time.

16       The DIR/DLSE failed to reinstate me back to work at the AHS and accused me in

17   committing medical negligence towards the patient.

18       Attorney Ms. Ng criminally and maliciously prevented me from obtaining relief in a

19   District Court in my both Original December 29, 2016 and Amended April 10, 2017 Complaints

20   No. 3:16-cv-07414-LB.

21       This is a cruel and unusual punishment in violation of the Eighth Amendment to the U.S.

22   Constitution.

23

24       116. In this Complaint, I am not asserting claims against Defendants Ms. Daly, Ms.

25   Healy, Mr. Santos, and Mr. Rood because I don't have the material facts of the case about

26   whether or not these individuals played any role in Ms. Ng's criminal and malicious filings in

27   my both Original December 29, 2016 and Amended April 10, 2017 Complaints No. 3:16-cv-

28   07414-LB.

1

**Prayer for Relief.**

2      117. I am demanding a Jury trial.

3      118. I am demanding to be reinstated back to work at the Alameda Health System and to

4   receive all my lost salary and benefits as a result of retaliation and unlawful termination of my

5   employment from the AHS in 2013.

6      119. The AHS terminated my employment in 2013 that is over 8.5 years ago. For all this

7   time, I've been deprived of the basic needs. I was unemployed and underemployed. I was

8   subjected to slavery and involuntary servitude, I was subjected to a cruel and unusual

9   punishment, I didn't have a permanent place of living, I didn't have health insurance, I didn't

10  have a car, I didn't have an opportunity to get a better paid job, and I didn't have an opportunity

11  to study.

12     120. For the purpose of this pleading, I will not describe a full range of the damages that I

13  am demanding. I will only cite the case law *Juarez v. AutoZone Stores, Inc.,* Case No. 08-CV-

14  00417-WVG (S.D. Cal. Nov. 17, 2014) that was a court case in the United States District Court

15  for the Southern District of California which is believed to be the largest single-plaintiff

16  employment verdict in United States history at $185,872,719.52.

17     121. Because Attorney Ms. Ng, the California Department of Industrial relations, and the

18  Division of Labor Standards Enforcement criminally and maliciously prevented me from relief in

19  the lawsuit No. 3:16-cv-07414-LB for 8.5 years from September 16, 2013 to today that is March

20  28, 2022, I am demanding two hundred and fifty million dollars from Attorney Ms. Ng, two

21  hundred and fifty million dollars from the Department of Industrial Relations, and two hundred

22  and fifty million dollars from the Division of Labor Standards Enforcement of the Department of

23  Industrial Relations.

24     122. I am not demanding yet any monetary relief from the DLSE employees Ms. Daly,

25  Ms. Healy, Mr. Santos, and Mr. Rood because I don't know about their roles in Ms. Ng's filings

26  in my Amended April 10, 2017 Complaint No. 3:16-cv-07414-LB. I reserve the right to amend

27  this Complaint and to request a monetary relief from the DLSE employees Ms. Daly, Ms. Healy,

28  Mr. Santos, and Mr. Rood.

Complaint for Damages.

1  **Verification.**

2      I, a Pro Se Plaintiff Tatyana Drevaleva, am a Party to this action. I have prepared and

3  read the foregoing pleading and know its contents. The facts alleged in the pleading are within

4  my own knowledge and I know these facts to be true.

5      I declare under penalty of perjury and under the Federal laws that the foregoing is true

6  and correct and that this verification was executed on this 28th day of March 2022 at San

7  Francisco, California. Respectfully submitted,

8          Date: March 28, 2022                Sign Name:

9

10                                    *Tatyana E. Drevaleva*

11                              Print Name:  Tatyana E. Drevaleva

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages.